IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROWENA WAGNER,                          )
                                        )
                    Plaintiff,          )
                                        )    No. 04-264E
        vs.                             )
                                        )    Bench Trial Requested
CRAWFORD CENTRAL SCHOOL DISTRICT        )
CRAWFORD CENTRAL SCHOOL BOARD,          )
                                        )
                    Defendants,         )
                                        )
MICHAEL E. DOLECKI, SUPERINTENDENT,     )
                                        )    Judge Sean J. McLaughlin
                    Defendant,          )
                                        )
CHARLES E. HELLER III, ASSISTANT        )
SUPERINTENDENT,                         )
                                        )
                    Defendant,          )
                                        )
CRAWFORD CENTRAL EDUCATION              )    Electronically Filed
ASSOCIATION,                            )
                                        )
                    Defendant.          )


BRIEF IN SUPPORT OF
RESPONSE OF CRAWFORD CENTRAL EDUCATION ASSOCIATION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND
FIRST AMENDED COMPLAINT


        Plaintiff Rowena Wagner has submitted a Motion for Leave to File Second Amended

Complaint.  The proposed Second Amended Complaint submitted with the Motion contains

numerous, wide-ranging factual allegations, reiterates earlier allegations of violations of Section

1981 and Section 1983, and includes an additional claim for breach of contract against not only

original Defendant the Crawford Central Education Association but also additional Defendants

the Pennsylvania State Education Association and the National Education Association.[1]

The decision whether to grant or deny a motion for leave to amend is within the sound

discretion of the district court.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321,

330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1434 (3d Cir. 1997).  Factors that militate against granting leave to amend are "undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [and] futility of amendment...." Foman v. Davis, 371 U.S. 178,

182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), Freedom Intern. Trucks, Inc. of New Jersey v. Eagle

Enterprises, Inc., 182 F.R.D. 172, 178 (E.D. Pa., 1998).

The amendments proposed by the Plaintiff in this case are both unduly prejudicial and

futile.  Consequently, Plaintiff's Motion for Leave to Amend should be denied as to Defendants

CCEA, PSEA, and NEA and all counts against them should be dismissed.

1.     **THE PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON GROUNDS OF FUTILITY.**

A court may justify the denial of a motion to amend if the amendment is found to be

futile.  Foman, 371 U.S. at 182.  An amendment is considered futile "if the amendment will not

cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a

motion to dismiss."  Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3rd Cir.

1988).  In determining futility, the court "applies the same standard of legal sufficiency as

---

[1]      The undersigned counsel represents both the Crawford Central Education Association and the Pennsylvania State Education Association.  Although counsel does not formally represent the National Education Association, any purported liability alleged in the complaint is derivative to actions of the CCEA or PSEA and the reasons for dismissal described in this brief apply with equal force to NEA.

applies under Rule 12(b)(6)." In re: Burlington Coat Factory Sec. Litig., 114 F3d 1410, 1434 (3rd Cir.1997). Therefore, a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. Id.; Richter ex rel. Tate v. School Dist. of City of Erie, 2002 WL 655674, 7 (W.D.Pa. 2002). A court, however, need not accept as true legal conclusions or unwarranted factual inferences. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Welch Foods Inc. v. Borough of North East, 2001 WL 311204, 2 (W.D. Pa. 2001).

### A.    The Plaintiff was Ineligible for the Benefits She Allegedly Was Denied.

The factual basis for the Plaintiff's Complaint as to the Crawford Central School District involves alleged discrimination arising from the District's decision to replace her during a temporary substitute teacher assignment in December 2002 and its subsequent failure to hire her for vacant full-time positions. In both the existing and the proposed Amended Complaints, the Plaintiff's factual basis for her claims against CCEA, PSEA and/or NEA is more difficult to decipher. Generally, the Plaintiff asserts a theory of liability based on any or all of the named unions' purported failure to provide her with legal services such as filing a grievance on her behalf protesting her removal from the temporary assignment, or assisting her in investigating and prosecuting her civil rights claims.

In attempting to justify her claims, the Plaintiff completely ignores the legal and factual significance of the fact that at all times her employment with the school district has been in the capacity of a per diem, day-to-day substitute teacher. First Amended Complaint and Proposed Second Amended Complaint at Paragraph 3. Under established Pennsylvania public labor law, as a substitute teacher the Plaintiff was not eligible for membership in the certified bargaining unit; therefore, she was not qualified to receive the type of legal services she claims were improperly deprived her.

     *i.        Plaintiff was not qualified, and thus did not belong to the Bargaining Unit.*

Section 401 of PERA grants public employees the right "to organize, form, join, or assist in employee organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice ... ."  43 P.S. §1101.401.  PERA defines public employees simply as "individual(s) employed by a public employer."  43 P.S. §1101.301.

Although the statutory definition of public employees is broad, the PLRB has consistently excluded from the protection of PERA those employees whose relationship with the public employer it found to be "casual".  Community College of Philadelphia v. PLRB, 60 Pa.Cmwlth. 629, 633, 432 A.2d 637, 638 fn. 3 (1981), citing Lancaster County, 11 Pa.P.E.R. 11077 (1980) (judicial law clerks); St. Mary's Borough, 8 Pa.P.E.R. 252 (1977) (on-call parking meter repairman); Richland School Board, 8 Pa.P.E.R. 76 (1977) (one-year replacement teacher); York County Vocational-Technical School, 6 Pa.P.E.R. 198 (1975) (teachers of one-time, ad hoc, evening school courses).  The PLRB has described casual employees as "those who have little likelihood of re-employment and little frequency of re-employment."  Community College of Philadelphia v. PLRB, 60 Pa.Cmwlth. 629, 633-634, 432 A.2d 637, 638-639 (1981); Student Services, Inc. (Edinboro State College), 7 Pa.P.E.R. 73 (1976) rev'd on other grounds sub nom.; Employees of Student Services, Inc., Appeal, 49 Pa.Cmwlth. 220, 411 A.2d 569 (1980).

As far as per diem substitute teachers are concerned, it is well-established that per diem substitutes are casual employees, not entitled to bargaining unit status.  Bristol Twp. Sch. Dist., 12 Pa.P.E.R. 342 (P.D.& O. 1981), *aff'd* 13 Pa.P.E.R. 292 (F.O. 1982) (per diem substitutes averaging 26 days or more out of the semester did not satisfy the employment for a substantial

period of time requirement and thus, were casual employees); <u>West Jefferson Hills Sch. Dist.</u>, 6 Pa.P.E.R. 117 (F.O. 1975); <u>In the Matter of the Employees of Wilkes-Barre Vocational-Technical School</u>, 14 Pa.P.E.R. 080 (1983).

In <u>Bristol Township</u>, an equally divided Board upheld a Hearing Examiner's dismissal of a unit determination petition.  PSEA had attempted to organize Bristol's per diem substitutes; however, the Hearing Examiner determined that the substitute teachers were not employees within the meaning of PERA.  The Board's decision in affirmance concluded that the per diem substitutes of the District are casual employees and thus do not share a community of interest among themselves or with other professional employees for purposes of bargaining over wages, hours, and other terms and conditions of employment.  The Board stated:

> . . . [P]er diem substitute work does not possess the hallmarks of a continuing employment relationship. Collective bargaining envisions this continuing and predictable relationship and not just the mere happenstance of service based on the relative need for a teacher to replace those on day-to-day sick and other leave.

13 PPER ¶ 13292.

Thus, casual employees such as the Plaintiff do not share a sufficient community of interest (as required by Section 604 of PERA) to warrant their inclusion in a bargaining unit whose members enjoy greater permanency and stability of position.  See, e.g., <u>Erie County Area Vocational-Technical School v. Pennsylvania Labor Relations Board</u>, 52 Pa. Cmwlth. 388, 417 A.2d 796 (1980); <u>Northumberland County</u>, 3 Pa.P.E.R. 69 (1973).  Consequently, as a per diem substitute, the Plaintiff was excluded as a matter of law from membership in the bargaining unit.  Because the Plaintiff was not a member of the Crawford Central bargaining unit at the time she was allegedly wrongly dismissed from her substitute teaching assignment, the CCEA had no

legal authority to file a grievance on her behalf.  In Harbor Creek School Dist. v. Harbor Creek Educ. Ass'n, 536 Pa. 574, 577, 640 A.2d 899, 901 (Pa.1994), a case involving the arbitrability of grievances involving extracurricular positions, the Pennsylvania Supreme Court held that teachers who are working in extracurricular capacities are not in fact functioning as "teachers," and, thus, they are not functioning as members of a "professional employee" bargaining unit who can invoke the grievance procedures set forth in the collective bargaining agreement.

Therefore, because the collective bargaining agreement between the CCEA and the district only covers the certified bargaining unit, and the Plaintiff was excluded by operation of law from membership in the bargaining unit by virtue of her employment as a day-to-day substitute teacher, the CBA did not apply to the Plaintiff.  Since the Plaintiff was legally ineligible to avail herself of the CBA's grievance procedure, the Association was powerless to file a grievance on her behalf.

Moreover, under the Public Employe Relations Act, the public employer, here the school district, retains exclusive managerial discretion over the "selection and direction of personnel." 43 P.S. § 1101.702.  Consequently, as a matter of law, the Association has absolutely no authority concerning the District's selection of new teachers.  See School Dist. of City of Erie v. Erie Educ. Ass'n, 873 A.2d 73, (Pa.Cmwlth. 2005) (The District retained its right to make decisions of inherent managerial policy related to the organizational structure and selection and direction of personnel; therefore, an arbitrator's award that ordered the District to reinstate and refill an eliminated teaching position was not rationally derived from the CBA and was vacated.) Therefore, even if the Plaintiff had been eligible to file a grievance, the Association lacked the ability to compel the District to hire her to a full time position, the relief which she seeks.

   *ii.*  *As a non-bargaining unit member substitute teacher, CCEA's Bylaws are inapplicable to the Plaintiff.*

   The Plaintiff's status as a substitute teacher also torpedoes her claim to rights under the Crawford Central Education Association's bylaws.  The Plaintiff alleges that "Section 5 of the Constitution and Bylaws of the Crawford Central Education Association gave Plaintiff the right to request assistance from the Association respecting the investigation and the processing of her discrimination claims against the Crawford Central School District."  Proposed Second Amended Complaint at Paragraph 9, Exhibit 5.  As Exhibit 5 demonstrates, Section 5 is a subsection of Article XV.  Section 2 of Article XV explicitly limits eligibility to the services provided in the Article and sought by the Plaintiff to "all bargaining unit employees."  Because Plaintiff, as a substitute teacher, was not a member of the bargaining unit, she did not qualify for the Association's assistance in investigating and processing her discrimination claims pursuant to the specific terms of the bylaws.  Therefore, any alleged failure to provide services to the Plaintiff does not constitute evidence of discrimination.

   Moreover, because the Plaintiff was never a member of the bargaining unit and because her claims involved hiring decisions which by law were under the exclusive province of the District, the claims that the Plaintiff alleges were not properly pursued by the Association were never viable.  Hence, the Association's actions were completely proper and justifiable. Thus, the allegations in the Second Amended Complaint based upon an alleged refusal to file a grievance on behalf of the Plaintiff fail to demonstrate any discriminatory action on the part of the Association.  The decision was based on the law and her status as a substitute teacher, not on her race or national origin.

   iii. *Plaintiff was not an active member of the Associations and therefore was not*
     *eligible to receive employment related legal services.*

  As Exhibit 1 clearly demonstrates, an employee can join the union under several different membership categories. Here, the Plaintiff belonged to PSEA and NEA as a substitute teacher member. As a substitute teacher member, Plaintiff was granted certain limited rights but was not eligible to receive the full panoply of benefits granted to full-time teachers who were active members. First Amended Complaint at Paragraph 6, Proposed Second Amended Complaint, Exhibit 1.

  Most notably, as specifically detailed in the PSEA Legal Services Policy cited by the Plaintiff, only active members, not substitute members, qualify for employment related legal services such as CBA related grievances and possible assistance with employment discrimination claims. Proposed Second Amended Complaint, Exhibit 4. Active status is a prerequisite for the receipt of any services under the Legal Services Policy. Consequently, once again, the Plaintiff was not discriminated against because of her race and national origin, she merely was ineligible to receive services due to her employment and membership status.

  Moreover, the Legal Services Policy clearly does not promise nor guarantee that all members will automatically qualify for legal assistance to pursue discrimination claims. As the questionnaire accompanying the Policy states:

    Does that mean I can get an attorney to handle any case for me?

    No. Your problem must be employment-related and must be approved
    for funding by PSEA's General Counsel.

Exhibit 4. Obviously, even if the Plaintiff could have qualified for services under the Legal Services Policy, which she clearly does not, legal assistance for her discrimination case would still have been contingent upon funding approval by the General Counsel. The Plaintiff never

sought nor received such approval, nor does she allege ever doing so.[2]  On the contrary, the

Plaintiff obtained an attorney and commenced her Complaint against the School District months

before she ever notified the Association.  See Proposed Second Amended Complaint at

Paragraphs 10-11.  Later, while CCEA and PSEA personnel were attempting to determine

whether any viable assistance could be provided to her given that she was only a substitute-

teacher member of PSEA, the Plaintiff filed the instant lawsuit.[3]

Contrary to the Plaintiff's persistent allegations, as clearly demonstrated by the exhibits

submitted in support of the Proposed Second Amended Complaint, she was not denied access to

legal services from either CCEA, PSEA or NEA because of her race or national origin.  The

Plaintiff's failure to receive legal services is premised entirely on the fact that she was not

eligible for such services under Pennsylvania public labor law, the CCEA bylaws, or the PSEA

Legal Services Policy.  Since the facts alleged in the Plaintiff's complaints are insufficient to

demonstrate any claim of discrimination against either CCEA, PSEA or NEA, the Motion for

Leave to Amend should be denied and all counts against the Defendant labor unions should be

dismissed with prejudice.

    **B.**    **Under Pennsylvania Law, No Cause Of Action Exists For Breach Of Contract By A Union**.

The Plaintiff's Proposed Second Amended Complaint contains a new, additional claim of

breach of contract against CCEA, PSEA and NEA.  This claim is defective as a matter of law

---

[2]    Moreover, the Legal Service Policy also contains an appeal procedure if services are denied.  Plaintiff's failure to appeal under this procedure represents a failure to exhaust administrative remedies representing additional grounds to bar the claim.  See Exhibit 4.

[3]    In  Paragraph 12 of the Proposed Second Amended Complaint, Plaintiff suggests that CCEA President Hootman has failed to respond to her since September 2004.  Once this lawsuit was filed and it became clear that both the Plaintiff and the Association were represented by counsel, the Rules of Professional Conduct require that the parties communicate regarding matters subject to the lawsuit through counsel.  Plaintiff's legal counsel has made no request for legal assistance from the Association on behalf of the Plaintiff at any time, particularly since the commencement of this suit.  Consequently, any purported failure to respond by Mr. Hootman since September 2004 cannot form the basis for the Plaintiff's legal claims.

and should be dismissed.  Furthermore, since the breach of contract claim is the sole basis of liability for PSEA and NEA, the Plaintiff should not be granted Leave to Amend for the purpose of adding these additional Defendants.

Under PERA, an aggrieved public employee's sole remedy in the courts, when a union has breached its duty of fair representation by acting in bad faith, is an action in equity to compel arbitration.  Martino v. Transp. Workers Union, Local 234, 505 Pa. 391, 480 A.2d 242, 252 (1984); Waklet-Riker v. Sayre Area Educ. Ass'n, 440 Pa.Super. 494, 656 A.2d 138, 141 (1995); Speer v. Philadelphia Housing Auth., 111 Pa.Cmwlth. 91, 533 A.2d 504, 506 (1987). Accordingly, under Pennsylvania law, there is no cause of action for breach of contract against a union in connection with its representation of an employee.  Waklet-Riker, 656 A.2d at 141 (trial court correctly dismissed claim for breach of contract because such a claim is not cognizable under PERA).  Nor can a union be held liable for negligence in processing or failing to process a grievance.  Id. at 141 ("a public employee's union can be held liable to its members only for acts of bad faith, and not for negligence in processing a grievance").  Thus, Defendants CCEA, PSEA and NEA are entitled to judgment as a matter of law on Plaintiff's breach of contract claims. Dubose v. District 1199C, Nat. Union of Hosp. and Health Care Employees, AFSCME, AFL-CIO, 105 F.Supp.2d 403, 416 (E.D.Pa. 2000).

In reality, Plaintiff's breach of contract claims represent nothing more than camouflaged duty of fair representation claims.  Even if the breach of contract count is considered as a duty of fair representation claim, it nevertheless remains untimely and not viable.  In Paragraph 54 of the Proposed Second Amended Complaint, the Plaintiff alleges, "As early [as] January 2003, Plaintiff met with Ms. Mercatoris, a Union Representative, and apprised her of the discriminatory action the School District inflicted on her."  (Emphasis added.)  Thus, by the

Plaintiff's own admission, any claim that the Association violated its duty of fair representation arose no later than January 2003.[4]

The statute of limitations for a claim involving a breach of the duty of fair representation is two years. Casner v. AFSCME, 658 A.2d 865 (Pa Commw. 1995). This two year statute is derived from 42 Pa.C.S.A. §5524(7), which also specifically includes actions founded on trespass (count two), fraud (count three) and any other "negligent, intentional, or otherwise tortious conduct" not specifically enumerated in the law (counts one and four). Whether taken as a whole or individually, it is clear that Plaintiff's claims are all subject to this two year statute of limitations. The Proposed Second Amended Complaint is dated November 23, 2005, which is well beyond the two year limitations period. Because the complaint was untimely filed, it is time-barred and must be dismissed with prejudice.

Furthermore, for the reasons discussed in detail previously, Plaintiff was not eligible for the services she alleges were wrongly denied to her because she was a substitute teacher who was not a member of the bargaining unit. Consequently, neither the CCEA, PSEA, nor NEA possessed any duty to the Plaintiff consistent with the allegations contained in the complaint.

The Supreme Court has made clear that unions enjoy broad discretion in processing and resolving employee grievances. A union may only be held liable for violating its obligation to its members if its conduct is "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967); Ward v. Bechtel Power Corp., 1986 WL 2893, 2 (E.D. Pa. 1986). Similarly, the Supreme Court has rejected the argument that the duty of fair representation requires a union to process every grievance through arbitration: "We do not agree that the individual employee

---

[4]    Contrary to the Plaintiff's averment, Exhibit 1 demonstrates that the Plaintiff was not even a member of the union at the time she was removed from her temporary substitute assignment in December 2002. Plaintiff first applied to be a substitute member of PSEA and NEA in February 2004, over a year later. By this point, even if the CCEA would have been able to file a grievance on her behalf, it would have been untimely.

has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." Vaca, 386 U.S. at 191.  The Court reasoned that imposing such a requirement would frustrate the national policy favoring prompt and inexpensive resolution of employee grievances.

So long as a union's action is not completely irrational, it cannot subject the union to liability on a DFR claim.  See, Findley v. Jones Motor Freight, Division Allegheny Corp., et al., 639 F.2d 953, 958 (1981) ("mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious"); Bazarte v. United Transportation Union, 429 F.2d 868, 872 (3d Cir.1970) ("proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation").  Ward, 1986 WL 2893, 3-4.  Thus, the union's handling of an employee grievance cannot be second-guessed by the courts without evidence of arbitrariness or bad faith.  None of the allegations contained in the Proposed Second Amended Complaint vaguely suggest either.

Moreover, neither PSEA nor NEA has an enforceable duty to the Plaintiff.  The duty of fair representation imposes *on the statutory representative* a duty to serve the interest of all bargaining unit employees without hostility to any.  Steele v. Louisville & Nashville Railroad, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (Emphasis added).  Accordingly, only the employee's statutory representative owes employees a duty of fair representation.  Larry v. Penn Truck Aids, Inc., 94 F.R.D. 708, 721 (D.C. PA., 1982).  See also, Baker v. Newspaper & Graphic Communications Union, 628 F.2d 156, 165 (D.C. Cir. 1980).  The statutorily certified bargaining representative here is the CCEA.  Therefore, to the extent the claims made in the amended complaint against PSEA and NEA suggest that they breached the duty of fair

representation, they owed no such duty to the Plaintiff, and the Second Amended Complaint states a claim to which no relief may be granted.  <u>Larry v. Penn Truck Aids, Inc.</u>, 94 F.R.D. 708, 722.  Consequently, the amendment fails on the grounds of futility.

Consequently, Plaintiff's Motion should be denied and all counts dismissed with prejudice against Defendants CCEA, PSEA and NEA.[5]

### C.    <u>Plaintiff Fails to State a Cognizable Claim Under Section 1981.</u>

Plaintiff's Complaint contains an alleged violation of Section 1981. A cause of action in the employment context based upon §1981 must set forth facts tending to establish that any allegedly discriminatory treatment suffered by the Plaintiff was the result of purposeful or intentional discrimination.  <u>Armstrong v. School Dist. of Philadelphia</u>, 597 F.Supp. 1309, 1312 (D.C.Pa. 1984).  Section 1981 "does not extend to facially neutral conduct having the consequence of burdening one race more than the other."  <u>Croker v. Boeing Co.,</u> 662 F.2d 975, 989 (3d Cir.1981) (<i>en banc</i>). The criterion of purposeful or intentional discrimination cannot be satisfied by mere vague and conclusory allegations in the complaint that fail to state the specific facts upon which claims of discrimination are based.  <u>Rotolo v. Borough of Charleroi,</u> 532 F.2d 920, 922-23 (3d Cir.1976).  No such specific allegations are present in the Plaintiff's Complaints.

Furthermore, a crucial element of a claim of discriminatory representation is a factual showing that in similar circumstances white persons were treated differently from other minorities. See e.g., <u>Donaldson v. Taylor Products Div. of Tecumseh</u>, 620 F.2d 155, 159 (7th Cir.1980).  The Plaintiff's Proposed Second Amended Complaint is devoid of any allegation that

---

[5]        It must also be noted that, while the claim is pled against the CCEA, PSEA and NEA, the factual allegations involve only acts or omissions by the CCEA.  Essentially, the Plaintiff attempts to hold the additional defendants liable for acts and omissions of a separate independent, but affiliated, organization whose activities they did not direct.  It is entirely inappropriate to assess liability on this basis, thus a separate ground for dismissal of the Plaintiff's Motion exists.

other white substitute teachers were provided services that she was denied.  Although the

Proposed Second Amended Complaint contains a conclusory allegation that the union

Defendants had discriminated by providing professional services to white union members but

refused them to minority union members (Paragraph 56), other averments in the Complaint

clearly disprove this.

In Paragraph 15 of the Proposed Second Amended Complaint, Plaintiff cites the case of

Claudette deLeon, a tenured Hispanic teacher who was a member of the Association.  While the

averment protests the Association's decision not to seek an appeal of the arbitration award

concerning Ms. deLeon, the fact that the Association chose not to appeal necessarily implies that

the Association provided representation for the Hispanic teacher throughout the grievance

process up to and including arbitration.  If the "mere refusal of a union to take a complaint to

arbitration does not establish a breach of duty, even if the member's claim was meritorious,"

clearly the Association retains the discretion as to whether or not to proceed with a claim

following arbitration. Findley, 639 F.2d at 958.  Krenzelak v. Canon-McMillan School District,

129 Pa.Cmwlth. 490, 566 A.2d 346 (1989).

Therefore, even if the pool of similarly situated teachers is expanded to include minority

female teachers employed on a full-time, regular basis at the Crawford Central School District,

the Plaintiff's own Complaint demonstrates that the union Defendants have indeed provided

employment related legal services to other minority female teachers in the District, i.e., Ms.

deLeon.  Hence, the Plaintiff's conclusory allegation regarding discrimination by the Defendant

unions must be disregarded as it is inconsistent with the Plaintiff's own exposition of the facts.

As it is impossible for the Plaintiff to prove its claim of discriminatory representation, Plaintiff's

Section 1981 claim against Defendant CCEA is insufficient as a matter of law and should be dismissed.

### D.    Plaintiff Fails to State a Cognizable Claim Under Section 1983.

Plaintiff's Third Claim for Relief in her First Amended Complaint and her Fourth Claim for Relief in the Proposed Second Amended Complaint made a general allegation that "Defendants" violated her constitutional rights under Section 1983.  Counsel for the Plaintiff has previously indicated that he considers CCEA among the Defendants encompassed by this allegation.  However, since neither CCEA, PSEA nor NEA has the capacity to be a "state actor," the Defendant unions cannot be liable under this theory.

Section 1983 reads, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 does not create substantive rights; instead "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir.1996).  A plaintiff seeking to establish a claim under Section 1983 "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995); Russoli v. Salisbury Twp., 126 F.Supp.2d 821, 838 (E.D.Pa. 2000).

The Defendant unions are all private entities.  None of the Complaints filed by the Plaintiff allege that either the CCEA, PSEA or NEA was acting under color of state law. Therefore, Plaintiff's Section 1983 claim, to the extent that it purports to lie against any of the Defendant unions, must fail since any alleged discrimination by the union does not constitute the state action necessary for Plaintiff to maintain a cause of action under that statute.  See Jackson v. Temple Univ. of Com. Sys. of Higher Ed., 721 F.2d 931, 933 (3d Cir.1983); Armstrong v. School Dist. of Philadelphia, 597 F.Supp. 1309, 1313 (D.C.Pa. 1984).

2.    **AMENDMENT OF PLAINTIFF'S COMPLAINT WOULD CREATE UNDUE DELAY IN THE PROCEEDINGS AND IS UNDULY PREJUDICIAL TO CCEA, PSEA, NEA AND ITS MEMBERS.**

The purpose for giving leave for amendment of complaints is to afford a plaintiff "an opportunity to test his claim on the merits."  Foman v. Davis, 371 U.S. 178 (1962).  There, the Court stated

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Id. at 182 (emphasis added).  It is the position of Defendant Crawford Central Education Association that the Plaintiff is motivated by bad faith and has delayed unduly in amending her complaint, causing undue prejudice and hardship to Court in managing the case and to the Association in defending itself against the Plaintiff's failure to cure the deficiencies in the original and amended Complaints filed herein.

In the Third Circuit, Courts will consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (post-judgment

motion to amend). While delay alone may not be sufficient to deny leave to amend, at some point, that delay becomes "undue" so as to place an unwarranted burden on the court or "prejudicial" by placing an unfair burden on the opposing party. Id. At that point, a court should deny the motion for leave to amend, as the District Court should do in the instant case.

Plaintiff Rowena Wagner filed her Complaint on September 15, 2004, and her Amended Complaint on October 8, 2004. By motion to the Court, Wagner seeks to amend her Complaint a second time to add as defendants the Pennsylvania State Education Association and the National Education Association, as well as to insert, revise and/or augment several allegations in the Amended Complaint. Leave to amend a complaint is completely at the discretion of the district court. Cureton at 272.

Factors to be considered by the Court in denying a motion for leave to file a second amended complaint are: undue delay or bad faith by the Plaintiff in seeking to amend the complaint or prejudice to the defendant if a second amended complaint is allowed. Rolo et al. v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998). In Rolo, the Court rejected the proposed Second Amended Complaint because the plaintiffs sought "to re-plead facts and arguments that could have been pled much earlier in the proceedings" (Id.) especially when a plaintiff "is modifying the allegations in hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings," citing Gasoline Sales, Inc. v. Aero Oil Co., 39 f.3d 70 (3d Cir. 1994).

The Crawford Central Education Association maintains that the parties have already engaged in extensive and thorough discovery based on the allegations in the Complaint and Amended Complaint. Even though the Court has extended the discovery period until the end of January 2006 and amended the Case Management Order accordingly, the Association did not

anticipate that it would be required to conduct additional depositions and re-open other depositions as well as serve additional Interrogatories and/or Requests for Production to defend itself against the Plaintiff's additional allegations. Should leave to amend be granted, Defendant CCEA would at a minimum require additional time for discovery, over and above the current extension. If new Defendants PSEA and NEA are added, they certainly would require significant additional time to digest the extensive discovery that has already occurred and to obtain their own discovery on the new claims. To require these efforts at this point would place an undue and prejudicial burden on the Association in its defense of the wide-ranging and unfounded allegations the Plaintiff has proffered.

Moreover, many of the new factual averments are either incorrect or irrelevant. As discussed in detail in the earlier portions of this brief, Plaintiff makes a number of allegations based on her erroneous belief that she is entitled to rights under PERA, the CCEA CBA, the CCEA Bylaws, and the PSEA Legal Services Policy. Because, as a substitute teacher, she is ineligible for bargaining unit status and for the services she claims, to the extent that these averments assert the contrary, they are incorrect as a matter of law and should be stricken.

Even more troubling are the averments that are merely irrelevant and whose inclusion would be highly prejudicial to the Association and/or its members. For example, Plaintiff inserts a gratuitous averment at paragraph 14, wherein she states, "It is documented that the PSEA represented James Born, a white male teacher involving a proceeding before the Pennsylvania Department of Education in 2002-03, in which the revocation of his teacher certification was challenged." This averment has absolutely no relevance to the Complaint before the Court. James Born is not a member of the Crawford Central Education Association, and has never been employed at Crawford Central. The fact that PSEA provides legal representation to its members

in employment related matters such as teacher certification revocation matters should not be a surprise to anyone.

There is absolutely no allegation that the Plaintiff has ever faced charges seeking revocation of her teacher certification, and the status of her teacher certification has never been an issue in this case. Clearly, teacher certification is totally unrelated to the issue of whether or not the Plaintiff experienced discrimination at Crawford Central. At the same time, Mr. Born, who has absolutely no relationship to this lawsuit, has already suffered the inconvenience of serving as the defendant during a lengthy administrative proceeding, as well as other related proceedings. After many years, these proceedings have finally concluded. It would be highly offensive and prejudicial to Mr. Born personally to be dragged into this matter of which he has absolutely no knowledge and possesses no relevant information that would shed light on the issues here. While this averment is perhaps the most obviously improper, other averments also combine fact with opinion, unfounded legal theories and/or other irrelevancies.

Merely having to parse Plaintiff's sometimes incomprehensible allegations is unduly prejudicial without the additional burden, both to Defendants and to the Court, of entertaining purely irrelevant averments. Consequently, for all the reasons stated above and invoking the support for its position in the decisions of the Third Circuit Court of Appeals, the Association respectfully requests that the Court deny the Plaintiff's Motion for Leave to Amend First Amended Complaint in its entirety, and dismiss all counts against the CCEA, PSEA, and NEA.

**CONCLUSION**

Because Plaintiff Rowena Wagner was employed by the Crawford Central School District as a per diem substitute teacher she was not qualified, as a matter of law, to be part of the certified bargaining unit of the CCEA. Because she was not in the bargaining unit she did not possess rights by virtue of Pennsylvania public labor law, the CBA, the CCEA bylaws, the PSEA Legal Services Policy or her membership in PSEA/NEA to file a grievance or to receive legal assistance in pursuing a discrimination claim. This is the sole reason for the CCEA's response, not any illegal discrimination based on race or national origin.

Moreover, as a substitute member of PSEA/NEA, the Plaintiff was not eligible for employment related legal services. Although breach of contract claims against labor unions are not cognizable under PERA, there are no allegations that the Plaintiff was wrongly deprived of any services for which she was eligible; hence, no breach exists. To the extent that the breach of contract claims are really duty of fair representation claims, they are time barred, legally insufficient and inapplicable to PSEA and NEA.

The Complaint is devoid of any supported allegations of discriminatory intent, arbitrariness or bad faith. Consequently, the proposed complaint fails to state a claim under Section 1981. Similarly, neither CCEA, PSEA or NEA is a state actor as required to state a claim pursuant to Section 1983. "[I]t is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Accordingly, the Motion for Leave to Amend should be denied and all counts against Defendants Crawford Central Education Association, Pennsylvania

State Education Association and National Education Association should be dismissed with

prejudice.

Respectfully submitted,

By:      s/Richard S. McEwen
Richard S. McEwen, Staff Attorney
PSEA
4250 Route 6N
Edinboro, PA  16412
(814) 734-7660
(814) 734-7660 (Fax)
rmcewen@psea.org
I.D. No. PA76659