IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROWENA WAGNER ) <br> ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> CRAWFORD CENTRAL SCHOOL DISTRICT ) <br> CRAWFORD CENTRAL SCHOOL BOARD ) <br> ) <br> Defendants, ) <br> MICHAEL E DOLECKI, SUPERINTENDENT ) <br> Defendant, ) <br> CHARLES E HELLER, III, ASSISTANT ) <br> SUPERINTENDENT ) <br> Defendant, ) <br> ) <br> and, ) <br> ) <br> THE CRAWFORD CENTRAL EDUCATION ASSOCIATION ) <br> PENNSYLVANIA STATE EDUCATION ASSOCIATION ) <br> NATIONAL EDUCATION ASSOCIATION ) <br> Defendants ) | No. 04-264 E <br><br><br> Bench Trial Requested <br><br><br> Judge Sean J. McLaughlin |

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT

*Caleb L. Nichols*
Caleb L. Nichols
Attorney for Plaintiff
Rowena Wagner

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROWENA WAGNER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 04-264 E |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | Bench Trial Requested |
| CRAWFORD CENTRAL SCHOOL DISTRICT | ) | |
| CRAWFORD CENTRAL SCHOOL BOARD | ) | |
| | ) | |
| Defendants, | ) | |
| MICHAEL E DOLECKI, SUPERINTENDENT | ) | Judge Sean J. McLaughlin |
| Defendant, | ) | |
| CHARLES E HELLER, III, ASSISTANT SUPERINTENDENT | ) | |
| Defendant, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| THE CRAWFORD CENTRAL EDUCATION ASSOCIATION | ) | |
| PENNSYLVANIA STATE EDUCATION ASSOCIATION | ) | |
| NATIONAL EDUCATION ASSOCIATION | ) | |
| Defendants | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT

The Court directed the Defendants, through their respective counsel, to file a response to Plaintiff Rowena Wagner's Motion to Amend the First Amended Complaint as proposed in the Second Amended Complaint. (Exhibit I). By letter dated December 26, 2005, Defendants Crawford Central School District, Crawford Central School Board, Michael E. Dolecki and Charles Heller, III chose not to file a response to

Plaintiff's Motion to Amend, stating that "...there does not appear to be any appreciable prejudice to ..Defendants in permitting the Amendment."

Therefore, Plaintiff urges the Court to grant the Motion with respect to the First, Second, Third, Fourth, Fifth and Sixth Claims For Relief.

However, the Crawford Central Education Association, through its Counsel, did supply a Response to Plaintiff's Motion For Leave To Amend the First Amended Complaint, and requested the Court to deny Plaintiff's Motion.

In support of the Motion for Leave To Amend the First Amended Complaint, Plaintiff asserts the following:

(1) Plaintiff's CCEA/PSEA/NEA Membership

Paragraph 9 of page 2 of the Association's response is not exactly correct and is possibly misleading. Some of the events and/or decisions involving the Association that are alleged by the Plaintiff in the First Amended Complaint occurred in December 2002. However, other material events occurred in 2003 and 2004 (as alleged in paragraph 15 of the First Amended Complaint), as well as paragraphs 17, 26(h), 26(i), 26(j), 26(k), 26(l), 27, 29 and 31. It is significant that many of the alleged discriminatory acts perpetrated against the Plaintiff and for which the Plaintiff sought professional consultation, guidance and assistance from the Association occurred after February 5, 2004, the date she became a member of the Crawford Central Education Association (CCEA), the Pennsylvania State Education Association (PSEA), and the National Education Association. As Exhibit (2) makes clear, Plaintiff's dues were paid to the PSEA and NEA. The local Association,

CCEA, served as the membership facility through which her membership in PSEA and NEA was attained. Plaintiff's membership in PSEA was renewed in October 2004 and PSEA provided support services to CCEA (see: Exhibit 3, Affidavit, Jeffrey Lewis, 12/17/04). In paragraph 6 of Exhibit 4, CCEA admitted in its Answer to Plaintiff's First Amended Complaint that CCEA is affiliated with PSEA. The Application (2003 Enrollment Form 2004) which Plaintiff completed for membership purposes conspicuously displayed the PSEA/NEA heading (Exhibit 2). Virtually all the membership publications that Plaintiff received including the Legal Services Policy, and the Constitution and Bylaws are presented under the heading of CEA, PSEA and NEA. No meaningful distinction is made between or among these entities for membership purposes. Indeed, the Membership Enrollment instructions for the 2004/2005 Membership Year "Membership At Large" document provide membership status for day-to-day substitute teachers (Exhibit5). Plaintiff was carried as a member on the roster of Pennsylvania State Education Association (Exhibit 6).

Thus, the Court should grant the motion on the basis that Plaintiff became a member of CCEA, PSEA and NEA as of February 5, 2004 when her dues were accepted by the named entities and has remained a member during the relevant period for this proceeding. Further, the Amendment should be further allowed to include PSEA and NEA as named defendants.

(2) <u>Eligibility Standards/Membership</u>

Under the eligibility standards set forth in the PSEA Policy Manual (September 2004, revised July 2005), Plaintiff met the requisite standards to request and receive legal services. Plaintiff was a member in PSEA at the time she wrote and consulted with Dan

Hootman, President of CCEA, in September 2004. she held membership in PSEA during the preceding school year (2003/2004), and she was a member at the time when some of the alleged events which precipitated the filing for professional services. Further, she sought professional assistance and services regarding employment-related matters. (Exhibit 7) In consulting with Messrs. Hootman and Mehow, Association officials, Plaintiff took all reasonable steps to avail herself of those services and benefits that she had been promised by virtue of membership in the CCEA, PSEA and NEA. Deposition testimony shows that Mr. Hootman understood that Plaintiff was seeking the Association's assistance to initiate, investigate and prosecute her discrimination Complaint against the School District.

(3)  <u>Constitutional And Contractual Obligations CCEA/PSEA/NEA Owed Plaintiff But Failed To Discharge Or Perform</u>

It is Plaintiff's position that she was a member of CCEA/PSEA/NEA and that her membership entitled her to the professional services that she sought from the Union, particularly in light of the term "member" as provided in the PSEA Legal Service Policy (Exhibit 8) and the more inclusive rights of <u>Individuals</u> (non-members) embodied in section 5 (c) and (d) of the Constitution and Bylaws of Crawford Central Education Association (effective May 1983, reprinted January 2003) (Exhibit 9).

(4)  <u>Plaintiff states a legally viable claim under section 1981</u>

The Defendant seeks to cast Plaintiff's case against the Association as a breach of contract action. However, the crux of Plaintiff's case is based on paragraphs 27, and 31 of the Second Claim For Relief and paragraph 34 of the Third Claim For Relief of the First Amended Complaint (Exhibit 10). What transformed Plaintiff's claim from a mere breach

of contract action into a plausible and persuasive constitutional claim is the manner and context in which the Association's contractual promises of professional services were discriminatorily provided on the basis of race, national origin and ethnicity. In the Plaintiff's case, neither Mr. Hootman nor Mr. Mehow dealt with Plaintiff's petition for assistance as the law required. The Association (CCEA) officials were simply dismissive of her importunings and inquiries and did virtually nothing to determine how the CCEA/PSEA/NEA were legally obligated to help her. At this juncture, the Association engages in a type of "bait and switch" tactic, i.e., having taken Plaintiff's membership fee, then disavowed its legal obligation to her. At the core of this type of bad faith as practiced on Plaintiff in this instance and others is disparate treatment on the basis of race. That means that the CCEA/PSEA/NEA discriminatorily denied professional services to minority Union members. Nor should the Association be allowed to hide behind the specious assertion that because it was named as a defendant in Plaintiff's lawsuit it was essentially excused from further rendering professional services to Plaintiff. In contesting Plaintiff's claims, the Association largely confirms the wrongness of its position. In Exhibit 11 (enclosed), there is a case that is factually analgous to Plaintiff's case. There, the PSEA readily stepped forward and represented two teachers who were treated as "at will" employees by the Selinsgrove School District. The teachers received only temporary staff wages and no fringe benefits and were considered day-to-day substitutes just as Plaintiff. They were fired when they sought reimbursement for college tuition costs. Without hesitation, PSEA staff and legal personnel came to their rescue. The only material difference in Plaintiff's case and the <u>Selinsgrove</u> case is that Plaintiff is Filipino by national origin and Asian by race.

Similarly, the refusal of the Association and PSEA to appeal Claudette deLeon's claim, who happens to be Hispanic, suggests a pattern of disparate treatment.

In the deLeon case, the Association sought intervenor status in a state Court appellate proceeding to stop Ms. deLeon from vindicating her constitutional rights, and changed their position from the position it had taken before the Arbitrator when representng Ms. deLeon. Exhibit 12 illustrates other cases in which PSEA has deployed its professional resources on behalf of white members. At a minimum, the Association's record in providing employment-related legal services to minorities is most troubling, particularly as outlined in the Seventh Claim For Relief of the Second Amended Complaint (proposed)(Exhibit 1).

Significantly, section 1981 applies to private discrimination, Johnson (v) Railway Express Agency 421 U.S. 454 (1975). It prohibits racial discrimination as alleged in the Seventh Amended Complaint and in paragraphs 27, 31 and 34 of the First Amended Complaint. St. Francis College (v) Al-Khazafji 481 U.S. 604 (1987); Shaare Tefila Congregation (v) Cobb 481 U.S. 615 (1987). It prohibits disparate treatment discrimination and is enforceable through private lawsuits. It applies to an at-will employment relationship. Spriggs (v) Diamond Auto Glass 165 F. 3d 1015 (4th Cir. 1999). Notably, the Fourth Circuit, in applying section 1981 in Spriggs, supra, observed that "the 1991 Act amended Section 1981 by adding a new, broad definition of "make and enforce contracts." Unfortunately, Opposition Counsel cited no recent Pennsylvania cases which applied the 1991 Act that amended section 1981 by adding a new, broad on definition of make and enforce contracts. At this juncture, there is a crucial issue whether there is sufficient evidence of record to raise a triable issue of fact that the contractual

relationship between Plaintiff and the Association was affected by purposeful racially discriminatory action on the part of the Defendants CCEA/PSEA/NEA. Query, did the Union provide professional services to white Union members but refuse them to minority Union members?

Since September 2004 when they were requested to help Plaintiff with her discrimination complaint, the CCEA/PSEA/NEA did nothing even though Plaintiff has insured that Association officials receive copies of all teaching positions that she has continuously applied for since September 2004. This treatment is strikingly different than the professional services that the PSEA provided James Born, a white male, who was a member of the PSEA and involved in an arbitration proceeding (Exhibit 13). The point that Plaintiff makes in paragraph 14 of the Second Amended Complaint is that CCEA/PSEA/NEA have discriminated in the provision of professional services as between white members and minority members. Our view is that CCEA/PSEA/NEA's cavalier disregard of Plaintiff's request constituted a denial of professional services to which she was assured on the basis of equality per section 1981 of 1991 Civil Rights Act, as amended. Plaintiff has made out at least a prima facie case which the defendants have failed to rebut. Consequently, the Motion to Dismiss CCEA should be denied and the Motion To name PSEA and NEA as defendants should be granted. Further Rule 15 of the Federal Rules of Civil Procedure provides that Amendments to pleadings should be liberally granted. There exists a triable issue of fact whether CCEA/PSEA/NEA violated Plaintiff's constitutional contractual right to contract and enjoy the full benefits of that contractual relationship without regard to race or national origin.

(5)     <u>Plaintiff states a cognizable Claim under Section 1983.</u>

First, the Defendants' counsel is wrong in asserting that the named Defendants did not act under the color of state law as section 1983 requires. The extent to which it can be shown that CCEA/PSEA/NEA acted in concert or partnership with the School District in perpetrating the deprivation of Plaintiff's Constitutional Rights under color of law, they are liable under section 1983. Isaacs (v) Bd. Of Trustees of Temple University 385 F. Supp. 473 (E.D.Pa. 1974).

Second, since September 2004, the Plaintiff has continuously made known to CCEA her efforts to obtain a full time teaching position. Courtesy copies of her job inquires were made available to Association officials.

Third, by virtue of the Association's 2004 Enrollment Form, it knew or should have known of the racial composition of the elementary teaching staff of the Crawford Central School District. The Plaintiff completed the Enrollment Form by stating her race and ethnicity and that she is a member of the protected class within the purview of section 1981. Magana (v) Commonwealth of Northern Marjana Islands 107 F. 3d 1436 (9th Cir. 1997). Through the Enrollment Form, the Association knew or should have known that during the past fifteen (15) years, the Association and PSEA knew or should have known that the elementary teaching staff of the School District remained almost exclusively white with miniscule number of minorities in teaching, administrative/supervisory positions, (Exhibit 14).

Fourth, in Terrell (vs) United States Pipe & Foundry Co. 644 F. 2d 1112 (1981), the Fifth Circuit declared that unions must take every reasonable step to oppose discrimination employment practices, and the perpetuation of past discrimination of employers with which they bargain.

Based upon the workforce statistical profile of the School District elementary teaching staff, and the fact that the CCEA/PSEA/NEA have been signatories to the collective bargaining agreement with the School District, and have not challenged the longstanding patterns of discriminatory hiring practices, there exists a genuine issue of fact whether the Association and PSEA are implicated in wrongdoing and possibly culpable under section 1983.

<u>International Brotherhood of Teamsters (v) United States</u> 431 U.S. 24 (1977); <u>Frank (v) Bowman Transportation Co.</u> 424 U.S. 747 (1976).

It is precisely this type of institutional discrimination on the part of the Unions that Plaintiff's Third Claim For Relief of the First Amended Complaint and the Fourth Claim for Relief in the Proposed Second Amended Complaint are directed. Did the Association tacitly approve of and acquiesce in patterns of discrimination engendered by the School District? We think so. Section 1983 actions provide the procedural mechanism through which the constitutional equal protection guarantee is effectuated.

(6) <u>Plaintiff was Eligible For The Professional Services She Sought From The CCEA/PSEA/NEA</u>

Opposition counsel argues that Plaintiff was ineligible for the professional services that she sought from the Association because she was not eligible for membership in the certified bargaining unit.

Unfortunately, this is a misconception of the true issue. First, Plaintiff's complaint against the CCEA/PSEA/NEA is based upon her membership in the CCEA/PSEA/NEA by virtue of membership dues she paid for the promised professional services that would be provided her as represented in Association sponsored publications including a Policy

Manual and the constitutional assurance that unions must provide professional services on the basis of racial equality. For reasons asserted in Parts 1, 2 and 3 of this Brief, Plaintiff was a member of CCEA/PSEA/NEA during all relevant periods for purposes of this litigation. The Defendant's basic contention is that Plaintiff was not a member of the bargaining unit as a day-to-day employee, that collective bargaining agreement did not apply to her, and that the Association was powerless to file a grievance on her behalf. However, this contention ignores the basic quid pro quo that she was promised and rightly expected to receive in return for paying union membership dues. It is arguable whether the Plaintiff should be viewed as a member of the Association because she worked approximately 90% of the 2001/2002 school year, although she was viewed as a day-to-day substitute. However, there is no equivocation that Plaintiff was promised certain professional services for which she paid dues and was thereby entitled to receive those services that were promised to her. The contention that the Association was powerless to file a grievance on Plaintiff's behalf is refutable because in the <u>Selinsgrove</u> case the PSEA successfully filed a grievance on behalf of two teachers who were "at-will" (day-to-day employees). The <u>Selinsgrove</u> case also contravenes the Defendants' contention that Plaintiff as a substitute was not an active member of the Association and was therefore not eligible to receive employment related legal services. In paragraph 1 of page 8 of Opposition Counsel's Brief In Support of Response of Crawford Central Education Association, it is acknowledged that Plaintiff belonged to PSEA and NEA as a substitute teacher. Contrary to the Defendants' contention, Plaintiff maintains that her membership entitles her to employment-related services and that it is explicitly provided that PSEA legal services policy include discrimination complaints.

On pages 8 and 9 of the Defendants' Brief, the Defendants' misconstrued PSEA Legal Services Policy to the extent it is concluded that substitute teachers do not have active membership and therefore are not eligible for PSEA legal assistance. The PSEA Legal Services Policy does not define "active" membership but it does extend eligibility for legal assistance benefits to those who hold reserve or even retired membership. Nowhere does the Policy expressly exclude substitute teachers. If anything, "Active Membership" status probably correlates to payment of dues. If payment of dues triggered active status which was a prerequisite for the services under the PSEA Legal Service Policy, then Plaintiff qualified.

On page 8 of the Defendants' Brief, there is a fallacious and erroneous conclusion <u>that only active members, not substitute members, qualify for employment related legal services.</u> Nothing in the PSEA Legal Service Policy supports this misinterpretation of the Policy by which the Defendants sought to exclude and read substitute teachers out of the coverage of the Policy.

(7) <u>CCEA Makes Dehiberate Decision Not To Support Plaintiff's Lawsuit</u>

The filing of a federal lawsuit by Plaintiff in September 2004 did not relieve or absolve the CCEA/PSEA of their obligations which they owed Plaintiff. It is an undeniable fact that CCEA President Hootman has failed to respond to Plaintiff, as promised, since September 2004. Paragraph 2 of footnote 2 of page 9 of Defendant's Brief is <u>not correct</u>. Plaintiff's Counsel did personally meet with Attorney John Jones, Counsel for CCEA and PSEA after the lawsuit was filed in effort to garner support and assistance from the Association. (see: Exhibit 15). Plaintiff's efforts to elicit the Association's support were rejected.

Further, footnote #4 on page 11 of Defendant's Brief failed to note that Plaintiff became a member of the Association in February 2004 and that she was a member when she filed the federal lawsuit in September 2004 and that she renewed her membership in October 2004. Moreover, some, if not all, of the alleged discriminatory acts precipitating the lawsuit occurred after and during Plaintiff's membership.

Regarding footnote #5 on page 13 of Defendant's Brief, it suffices to state that CCEA, PSEA and NEA are affiliates, that their brochures, logo, Policy Manual and other relevant source materials identify these entities as being virtually indistinguishable. It is an undeniable fact that Plaintiff's dues were paid to PSEA and NEA. Thus, it is appropriate and proper that all be named as Defendants and held jointly and severally liable and accountable. From Plaintiff's vantage point, there is no way of knowing that PSEA/NEA did not direct and control CCEA. Thus, the burden should be placed on the named entities to show otherwise.

(8) <u>Defendants Mischaracterized Paragraphs 30 and 31 of the Second Claim For Relief and Paragraphs 34 and 35 of the Third Claim For Relief of Plaintiff's First Amended Complaint. As well, the Defendant seeks to mischaracterize Plaintiff's Seventh Claim For Relief of Plaintiff's Proposd Second Amended Complaint (Paragraphs 54, 55, 56) and Paragraphs (2) and (6) of Part VI.</u>

As can be seen from the First and Second Amended Complaints, Plaintiff brings claims against CCEA, PSEA and NEA arising out of a contractual relationship that constitutes constitutional violations of section 1981. The claim lodged against CCEA, PSA, NEA are federal constitutional claims—not a breach of contract action, nor fair representation case as the Defendant insists. For that reason, none of the Defendant's Commentary found on

pages 9, 10, 11, 12 and 13 are relevant or detract from Plaintiff's alleged constitutional violations that are asserted against CCEA/PSEA/NEA.

Section 1981 secures equal contracting rights without regard to race. It affords "all persons" in the United States "the same right...to make and enforce contracts...as is enjoyed by white citizens." <u>Brown (v) Philip Morris, Inc.</u> 250 F. 3d 789 (3rd Cir. 2001). By its terms, section 1981 reaches not just employment but a host of contracting relationships. The 1991 Civil Rights Act restored the law as a forceful supplementary vehicle for redressing race discrimination in contracting. The law provides that the right to "make" a contract extends beyond initial formation to include "performance, modification and termination, and ongoing term and conditions of employment. <u>Hawkins (v) 1115 Legal Service Care</u> 163 F. 3d 684 (2d Cir. 1998). Requisite intent may be established inferentially through the burden shifting mechanism enunciated in <u>McDonnell Douglas/Burdine</u> formula as applied in Title VII. <u>St. Mary's Honor Center (v) Hicks</u> 509 U.S. 502 (1993). In federal court, section 1981 claims enjoy the benefit of liberal Federal Rules notice pleading. <u>Swierkiewicz (v) Sorema</u>, N.A. 534 U.S. 506 (2002). Section 1981 contract clause applies to purely private conduct. <u>Runyon (v) McCrary</u> 427 U.S. 160 (1976). Claims under section 1981 are analyzed in the same manner as claims under Title VII.

(9)  <u>Plaintiff's Proposed Second Amended Complaint Will Not Create Undue Delay in the proceedings or unduly prejudice CCEA, PSEA, NEA and its members.</u>

The Defendants' Counsel have appeared and participated in all deposition proceedings and were privy to all discoverable evidence to date. If there has been any delay that the

Association claims, it has been caused by Defendants' non-responsiveness to Plaintiff's efforts to obtain discoverable evidence. In some cases, it was necessary for Plaintiff to send out a Second, Third and Fourth Request For Production, sets of Interrogatories, and Requests For Admissions, under subpoena.

Since the Court graciously enlarged the discovery period until the end of January 2006, all Defendants should be able to accommodate their discovery needs within that allotted time frame.

No bad faith has been shown on the part of Plaintiff, nor should the cause for any delay or prejudice to the Defendants be attributed to the Plaintiff. Further, Plaintiff's recitation regarding James Born, Claudette deLeon and the Selinsgrove case is simply to point out that the Defendants have discriminated against Plaintiff in terms of failing to provide promised professional services on the basis of equality in violation of applicable constitutional mandates.

(10) Plaintiff Should Be Allowed to Amend the Pleadings as set Forth In the Second Amended Complaint Under the Authority of Federal Rules of Civil Procedure, Rule 15.

The proposed Amendment is necessary so as to bring the pleadings in conformity with the evidence obtained through discovery. The Amendment reflects a more specific statement of the merits of Plaintiff's factual recitation and thus serves the ends of justice.

With respect to the Defendant's Commentary, Plaintiff offers the following:

    (a) Paragraphs 8 through 16 of the Proposed Second Amended Complaint are factual and necessary;

(b) To the extent that Paragraph 18 implicates the Second Claim For Relief, it does not prejudice CCEA/PSEA/NEA because they are not a subject of that allegation or claim;

(c) Neither Paragraph 20 nor 21 refer to CCEA/PSEA/NEA;

(d) Paragraph 23 does not apply to CCEA/PSEA;

(e) Paragraphs 25, 26, 28, 29, 31, 32, 34, 35, and 38 do not materially affect CCEA/PSEA/NEA.

It is ironic that CCEA/PSEA/NEA found the subparts of the Proposed Amendment noted above objectionable, but the Crawford Central School District and the Board who are the real subjects of the allegations proffered no objections. Plaintiff believes that the Defendants have no standing to object to the foregoing.

(f) Paragraphs 54, 55, and 56 are necessary to conform the pleadings to the evidence per Fed. R.C.P. 15.

*Caleb Nichols*
*Attorney for*
*Plaintiff Rowena Wagner*
*1/5/06*