IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROWENA WAGNER,
    Plaintiff

    v.              CIVIL ACTION NO. 04-264 ERIE

CRAWFORD CENTRAL SCHOOL
DISTRICT, et al.,
    Defendants

STATUS CONFERENCE

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, February 8, 2006.

APPEARANCES:
    CALEB L. NICHOLS, Esquire, appearing on behalf
    of the Plaintiff.

    MARK J. KUHAR, Esquire, appearing on behalf of

Defendants Crawford Central School District,
et al.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3           (Whereupon, the proceedings began at 1:20 p.m., on

4   Wednesday, February 8, 2006, in Courtroom C.)

5

6           THE COURT:  This is the time I set for a status

7   conference to discuss some recent correspondence that I

8   received from both sides.  The upshot apparently being, Mr.

9   Nichols, notwithstanding the fact I'm holding in my hand a

10  settlement agreement transcribed by my court reporter, that the

11  plaintiff -- it's your belief or contention that the case is

12  not settled, is that right?

13          MR. NICHOLS:  That is correct, your Honor.

14            THE COURT: Would you be so kind as to come up to

15   the podium. I take it that it would be accurate for me to say

16   that the reasons that you feel the case is not settled would be

17   set forth in your correspondence to me of February 2nd, is that

18   correct?

19            MR. NICHOLS: That is correct, your Honor.

20            THE COURT: All right. Could we perhaps just take a

21   few minutes and look at some of these individual ones, we can

22   discuss them a little bit.

23            MR. NICHOLS: Sure.

24            THE COURT: Bear with me one second. The first

25   issue you raise is that, I'll read directly from your letter,

3

1   "first, to be legally enforceable under Pennsylvania law, the

2   settlement agreement is required to be reduced to a writing and

3   properly signed by the parties." What authority do you have

4   for that proposition?

5            MR. NICHOLS: Statute of frauds, your Honor.

6            THE COURT: Doesn't apply. I'll refer you to

7   Standard_Steel_v._Buckeye_Energy,_Inc., 2005 WL 2403636. This
    _____ _____ __ _____ _____ ____

8  is Judge Conti, "oral settlement agreements are enforceable.

9  The United States Court of Appeals for the Third Circuit has

10  made clear that 'an agreement to settle a lawsuit, voluntarily

11  entered into, is binding on the parties, whether or not made in

12  the presence of the court, and even in the absence of a

13  writing'."

14       Now, in paragraph two you say, "paragraph 2 of page

15  2 of defendants' draft agreement is objectionable because it

16  seeks dismissal of the action with prejudice, a condition which

17  runs counter to the court's declaration found in the last

18  paragraph on page 3 of the transcript of the settlement

19  conference."  With all respect, I don't understand that

20  proposition.  But I'm going to give you an opportunity to

21  explain it to me?

22       MR. NICHOLS:  As I reviewed the draft agreement

23  prepared by the school district, they added that the dismissal

24  of the complaint would be with prejudice.  Now, as I

25  understand, is that once it's dismissed, then they can no

4

1  longer be sued upon, a protective suit cannot be initiated on

2   that?

3           THE COURT:  Not the same cause of action, not for

4   this.

5           MR. NICHOLS:  That's what I'm saying, as I

6   understand from the last paragraph of the transcript of the

7   settlement conference, January 12th, that makes expressly clear

8   in the event of a breach or claimed breach, that certainly the

9   complaining party can return to court.

10          THE COURT:  That's correct.  In fact, I made it

11  clear, I said -- this is from the settlement agreement, this is

12  from the terms that were put on the record.  I said "let me

13  just add that in the event of a claimed breach of the

14  settlement agreement, the plaintiff would, of course, be

15  permitted to return to court here and sue on the settlement

16  agreement if that ever became necessary."  I was specifically,

17  although, I thought technically unnecessary, preserving your

18  right to essentially bring a breach of contract claim to

19  enforce the terms of settlement.  Which you specifically would

20  retain under the terms of the settlement.

21          MR. NICHOLS: The problem with that, your Honor, the

22  problem with that is that if -- you follow the proposal

23  authored by the school district, is that no reference can be

24  made to the complaint, the complaint is completely dismissed,

25  no reference made for future purposes if it's necessary to

5

1  resurrect the lawsuit.  You can't sue upon, as you said, you

2  return to court, plaintiff returns to court upon merely a

3  breach of contract action.  And a breach of contract action,

4  the opposition can simply say then you don't belong in the

5  court, you have simply a breach of contract action.  Where is

6  your discrimination complaint, it's gone.

7         THE COURT:  It is gone.  Let me tell you what

8  bothers me about this.  I'm going to be very blunt about this.

9  I'm reading from the transcript here, sir.  And this is the

10  transcript of the settlement agreement.  This is after all of

11  the terms and conditions were laboriously set forth on the

12  record pursuant to my direction.  I say "then are all the terms

13  and conditions acceptable?"  "Mr. Nichols:  They are acceptable

14  based upon my discussions with my clients, Mr. and Mrs. Wagner"

15  I say "then as far as I'm concerned, the case is settled."

16  So I am, to put it mildly, confused as to what you're doing

17  back here today.

18      MR. NICHOLS:  Allow me to clarify.  May I clarify?

19      THE COURT:  This is your opportunity to tell me

20  anything.  I do not have a petition to enforce a settlement

21  here in front of me right now.  I anticipate I may get one.  My

22  purpose in getting everybody together here today was to see if

23  there was some confusion, the party that was confused could be

24  disabused and we might be able to resolve this.  Yes, you can

25  tell me anything you want to tell me.  It sure looks like

                                    6

1  there's a settlement agreement there to me.  I don't understand

2  what we're doing back here again.

3      MR. NICHOLS:  I can explain, judge, please.

4      THE COURT:  Go ahead.

5      MR. NICHOLS:  Speaking on behalf of my client, I'm

6  here as an advocate for my client.  Their understanding is that

7  no agreement, final agreement was entered into on January 12th,

8  a settlement.  I advocate that now.  I read the transcript, I

9  don't have a point of view on that transcript today, I'm not a

10  witness here, I'm an advocate.  Their position, I have to

11  advocate that today, was this.  The reason I reached that

12  conclusion is this.  This is one from the outset when we

13  presented a demand letter to the school district, a copy of

14  which I have provided to the court.  We made it explicitly

15  clear that these are the parameters within which we were

16  willing to discuss and to entertain some kind of discussion

17  regarding hopefully that would lead to settlement.  One of

18  those was that, it would be these provisions.  The provision

19  dealing with that any agreement must be consummated under the

20  auspices of the court.  That it must be in terms of a consent

21  decree.  The other provisions that are set forth there, none of

22  those are objectionable to the school district.  But yet

23  they're very much a part, set down in writing and have been

24  part of these negotiations.

25          THE COURT:  I'll tell you what I'm going to do --

                                7

1           MR. NICHOLS:  That's all I'm saying.

2           THE COURT:  I hear what you're saying.  I'm going to

3  hear briefly from Mr. Kuhar.  But in order to tee this up

4  appropriately, I have no motion in front of me now, a petition

5  to enforce the settlement.  When a dispute arises between the

6  parties under Pennsylvania law as to whether there was or was

7  not a settlement, it is appropriate under the cases I've

8  reviewed, including the case I just cited from the western

9  district, for the judge, if necessary, to conduct an

10  evidentiary hearing and then make findings of fact and

11  conclusions of law.  And, frankly, upon an appropriate

12  petition, that is what I would intend to do.  To determine

13  whether or not there was in fact a settlement.  Now, I want to

14  hear from Mr. Kuhar, then I'll let you have the last word.

15         MR. NICHOLS:  Okay.

16         THE COURT:  What do you want to tell me, Mr. Kuhar?

17         MR. KUHAR:  Your Honor, we have no doubt that there

18  was a settlement, either.  We are as confused, to put it

19  mildly, as anyone.  We think that our agreement contains only

20  the terms that were listed and approved during the conference,

21  plus some boilerplate, which has now been objected to.  And,

22  essentially, we don't know the cause, why there was issues

23  between the plaintiff and her counsel, I have no idea what the

24  cause is, no one has told me.  But we have a binding settlement

25  agreement, we want nothing more, nothing less than what was in

1  the settlement agreement.  The only other issue I would

2  address, unless prompted through a question, would be this idea

3  that it was somehow made known to us that any settlement would

4  have a consent decree.  These are all apparent, number one, it

5  was not part of the discussions, let alone part of the

6  settlement that was actually reduced to the record.  Number

7  two, the only time a consent decree was ever mentioned to any

8  of my defendants was through this letter, which Mr. Nichols

9  mentioned.  It was his December 29th letter, in which he said

10  he wanted a consent decree, back pay, calculated to several

11  hundred thousand dollars, attorney's fees, uncapped,

12  unspecified.  He did send a demand letter in which he mentioned

13  a consent order, along with a number of other things, which

14  totally fell off the table in the settlement discussions and in

15  the settlement itself.  If the court would accept an oral

16  petition to enforce, I would certainly make one.

17          THE COURT:  No, I won't accept an oral petition.

18  You can make one, it's not that I won't accept it.  But if you

19  want to file a petition to enforce the settlement, you file a

20  petition to enforce the settlement setting forth the

21  appropriate legal authority and standard.  And then when I get

22  that, I will give him an opportunity to respond, then I'll set

23  it down for a hearing.  Now, I have one or two other questions,

24  unless you have anything else?

25          MR. KUHAR:  Just to clarify, in my last letter to

9

1  Mr. Nichols, I invited some meaningful dialogue, which hasn't

2  happened prior to today.  If there is an impediment to

3  settlement and I need to file a petition to enforce, let me

4  know and I'll go ahead and do that.  In the absence of any

5  confirmation.

6          THE COURT:  It seems to me since we're here, there's

7  an impediment.

8          MR. KUHAR:  It's very clear to me now, your Honor,

9  thank you.

10         THE COURT:  Mr. Nichols, just one or two other

11 questions, then I'll get some timeframes here for everybody.

12 When you told me on the record that you had reviewed the terms

13 with your clients and they were acceptable "based upon my

14 discussions with your clients," was that an accurate statement

15  at the time you made it to me?

16          MR. NICHOLS:  It was in the context --

17          THE COURT:  Was it an accurate statement at the time

18  that you made it to me?

19          MR. NICHOLS:  To answer you, your Honor, as to the

20  context --

21          THE COURT:  Sir, I want you to listen to my question

22  very carefully.  You represented to me at the settlement

23  conference that you had discussed the terms with your clients

24  and they had indicated their acceptance.  I don't want to hear

25  context?

                               10

1           MR. NICHOLS:  I cannot represent to you that is

2  accurate because my clients said that that was not their

3  understanding and, therefore, I was not authorized to

4  represent, make that representation to you.

5           THE COURT:  What's going on here, and this isn't the

6  day to take testimony, but understand what's coming down the

7  road.  Your clients dispute whether or not the deal you made

8  for them was a deal that they wanted --

9        MR. NICHOLS:  I wouldn't put it that way.

10       THE COURT:  Excuse me, wait until I'm done talking

11  to you.

12       MR. NICHOLS:  I'm sorry, judge.

13       THE COURT:  I want you to tell me what the nature of

14  the problem is with your clients, so I have some advanced

15  knowledge or notice as to what we're going to be doing at this

16  evidentiary hearing?

17       MR. NICHOLS:  My clients were not present when the

18  transcript of the settlement conference on January 12th was

19  transcribed, they had gone.

20       THE COURT:  Your clients were here and your clients

21  agreed in my chambers to the material terms and conditions, did

22  they not?

23       MR. NICHOLS:  They tell me they did not.  I'm their

24  advocate.  I can't be a witness, I'm certainly not going to be

25  a witness against my clients.  That's improper.

                            11

1        THE COURT:  I'll tell you what I'm going to do.  Mr.

2  Kuhar, you've got 20 days to file a petition and supporting

3  brief on this.  Mr. Nichols, you have 15 days within which to

4  respond to that.  Once I get both briefs in, a petition to

5  enforce and, presumably, what I would anticipate would be a

6  brief in opposition or the functional equivalent, then my

7  deputy clerk will set this down for a hearing.  At which point,

8  the way things are shaking out, it's clear to me we're going to

9  have to take some testimony.  In preparing any brief on this, I

10  want attention paid to the doctrine of expressed authority

11  under Pennsylvania law.  It appears, at least to me, that a

12  lawyer cannot necessarily bind his client by apparent

13  authority, there has to be expressed authority.  So I may have

14  to get into that whole issue.  Which, of course, I will do if

15  it becomes legally appropriate.  I also remind you hanging over

16  this, I also remind you and I'm not suggesting this would come

17  to pass, but it's true for every legal dispute, that Rule 11

18  hangs over every legal dispute.  And if a position is unfounded

19  or if it's frivolous and the court finds it's frivolous, the

20  potential for Rule 11 sanctions is always there.  Do you

21  understand that?

22        MR. NICHOLS:  I understand that, judge.

23        THE COURT:  All right, we're adjourned.

24

25     (Whereupon, at 1:35 p.m., the proceedings were

12

1  concluded.)

2

3           - - -

4

5

6

7           C E R T I F I C A T E
            _ _ _ _ _ _ _ _ _ _ _

8

9

10    I, Ronald J. Bench, certify that the foregoing is a

11  correct transcript from the record of proceedings in the

12  above-entitled matter.

13

14

15

16

17  _____

18   Ronald J. Bench

19

20

21

22

23

24

25