**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROWENA WAGNER,<br><br>    Plaintiff<br><br>    v.<br><br>CRAWFORD CENTRAL SCHOOL DISTRICT, et al.<br><br>    Defendants | Civil Action No. 04-264 ERIE<br>Judge Sean J. McLaughlin<br><br><br>ELECTRONICALLY FILED |

**BRIEF IN SUPPORT OF DEFENDANTS'**
**PETITION TO ENFORCE SETTLEMENT AGREEMENT**

**I.   BACKGROUND**

On January 12, 2006, during a settlement conference which had been requested by Plaintiff, all of the remaining parties to the above-captioned action agreed upon settlement terms during negotiations mediated by the Court.[1] The transcript of the settlement conference is attached hereto as Exhibit A ("Settlement Transcript"). The undersigned, representing Crawford Central School District, Crawford Central School Board, Michael E. Dolecki, Superintendent and Charles E. Heller, III, Assistant Superintendent ("District Defendants"), enumerated the terms of the agreement into the record, at the request of the Court. The terms were as follows:

    1)    That Ms. Wagner would satisfy a development plan, which would include her attendance at an APL training program, which is a standard requirement of new teachers and current teachers. It would involve four days of training, the cost of which would be paid for by the district;

    2)    She would then immediately thereafter begin approximately two months of teaching employment in our after-school program, for which she would be paid the standard rate, which is approximately $20 per hour. She would

---

[1] The Court had dismissed the Crawford Central Education Association immediately before the other parties reached their settlement.

       work approximately one-and-a-half hours per day, Monday through Friday, consistent with the other people in the program;

3)     Again, after approximately two months of that type of employment, she would then be given the first available long-term substitute position for which she is qualified. Which would be a minimum of 90 days. So she would be paid as a long-term sub as the first step in this contract;

4)     Thereafter, she would be awarded the first position, regular full-time position for which she is qualified;

5)     The district would retain its rights to supervise and direct Ms. Wagner comparable to those that it has regarding any other school employee, consistent with its duties under the school code;

6)     Ms. Wagner would execute a global release in favor of the defendants and the district, effective through the date of its execution. There would be no admission of liability, in fact it would state there is no admission of liability; and

7)     The district's insurer would pay $10,000 towards attorney's fees on behalf of Ms. Wagner.

Settlement Transcript at 2-3.

After asking a clarifying question regarding the duration of the development period, Attorney Nichols, counsel for Ms. Wagner, confirmed that the terms and conditions as stated on the record were "acceptable based upon my discussions with my clients, Mr. and Mrs. Wagner." Settlement Transcript at 4. The Court reminded the parties that should any breach of the settlement agreement occur, Ms. Wagner would be permitted to return to court to enforce the agreement. Settlement Transcript at 3-4. The Court then confirmed that the case had settled. Settlement Transcript at 4. On January 13th, the Court had the case designated settled and administratively closed.

The only contingency in the January 12th settlement agreement was resolved when, on January 23, which was the first occurring meeting of the Crawford Central School Board following the January 12th settlement conference, the Crawford Central School District School Board unanimously approved the settlement. On January 31,

2

2006, the undersigned forwarded a draft settlement agreement, which expressed the terms set forth on the record during the January 12th settlement conference. A true and correct copy of that January 31 letter, and accompanying draft settlement agreement, are attached hereto as Exhibit B.

Also on January 23, 2006, nearly two (2) weeks after the settlement conference, Attorney Nichols sent a draft of a consent decree to the undersigned, stating in a letter that "it embodies, in principle, the terms and conditions of the mutual understanding that the parties reached at the Settlement Conference on January 12, 200[6]." A true and correct copy of the January 23, 2006 letter, with the accompanying draft consent decree, is attached hereto as Exhibit C. Attorney Nichols' letter acknowledges that a settlement had been reached on January 12, but in his letter, Attorney Nichols identifies various changes to the settlement that Ms. Wagner "does insist" be implemented. These changes include the resolution of this suit via consent decree, injunctions against several District Defendants, a provision for immediate employment in a regular, full-time teaching position by no later than September 2006 and that Ms. Wagner "recoup costs and out-of-pocket expenses associated with this lawsuit." Attorney Nichols closed by asking that the undersigned "let us know when you wish to meet for additional discussion and possible negotiations."

On or about January 31, the undersigned counsel for the District Defendants began attempting to contact Attorney Nichols via telephone but learned that his telephone service had been disconnected. Therefore, the undersigned sent a letter via facsimile and mail on February 2, 2006, asking that Attorney Nichols contact him. A true and correct copy of the February 2 letter to Attorney Nichols is attached hereto as Exhibit D.

On the same day, February 2, 2006, Attorney Nichols sent a letter to the Court, claiming that the proposed settlement agreement as drafted by the undersigned was "wildly at variance" with the "incomplete written understanding" of the January 12 conference and asking that the Court reinstate the case. Again, in his letter, Attorney Nichols concedes that an agreement was reached on January 12. A true and correct copy of the February 2 letter composed by Attorney Nichols and forwarded to Judge McLaughlin is attached hereto as Exhibit E. In his letter, Attorney Nichols attributed Plaintiff's refusal to execute the agreement prepared by the District Defendants to the following:

(1) …to be legally enforceable under Pennsylvania law, the Settlement Agreement is required to be reduced to writing and properly signed by the parties…

(2) …Paragraph 2 of Page 2 of Defendants' Draft Agreement is objectionable because it seeks dismissal of the action with prejudice, a condition which runs counter to the Court's declaration found in the last paragraph on page 3 of the transcript of the Settlement Conference held on January 12th.

(3) …the Defendants' Draft Agreement is largely illusory and unenforceable because there exists no definite commitment on the part of the School District as to when the Plaintiff will be employed as a long term substitute or regular full time teacher….Since the January 12th Settlement Conference, Plaintiff has worked only two days, which is totally at odds with her understanding that she would have immediate gainful employment upon reaching a settlement.

(4) …the Defendants' Draft Agreement does not specify the conditions under which Plaintiff would agree to release the Defendants' from asserted claims and it is therefore incomplete.

(5) …Paragraph 5 (B) of the Defendants' Draft Agreement is unconscionable and violative of Pennsylvania public policy to the extent it requires Plaintiff to surrender her rights to sue on the basis of federal anti-discrimination mandates contained in the Amended and Second Amended Complaints.

(6) …the record was incomplete for negotiating purposes because the Court did not yet rule on Plaintiff's Second Amended Complaint with respect to the First, Second, Third, Fourth Fifth and Sixth Claims For Relief.

(7) …from the outset, Plaintiff made it clear to the Defendants that any Settlement Agreement must be consummated under the auspices of the Court in the form of a Consent Decree….Yet, the Defendant Draft Agreement makes no provision for the Court's signature and the execution of a Consent Decree.

(8) …the Defendants have failed to comply with Plaintiff's Fifth Request for Production of Documents, per a subpoena issued more than 30 days ago.

(9) …Plaintiff objects to Paragraph 10 of the Defendants' Draft believing that Plaintiff should be able to recoup costs, and expenses incurred in prosecuting this action.

(10) …Plaintiff objects to Paragraph 11 of Defendants' Draft because it seeks to prohibit Plaintiff from suing on the basis of the underlying Amended and Second Amended Complaints, which contravenes Plaintiff's right to access the Court, upon a breach of the Settlement Agreement (Consent Decree).

The Court then held a status conference on February 8, 2006, during which Mr. Nichols, **for the first time**, raised an issue about whether he had had authority to enter into the January 12 agreement. Attorney Nichols only raised that contention after the Court made it clear that it was not persuaded by the reasons in Plaintiff's February 2nd letter. Attorney Nichols explained that "my clients said that that was not their understanding and, therefore, I was not authorized to represent, make that representation to you." February 8 Status Conference Transcript at 10. When asked whether his clients had agreed in Judge's Chambers to the terms and conditions, Mr. Nichols responded: "They tell me they did not. I'm their advocate. I can't be a witness, I'm certainly not going to be a witness against my clients. That's improper." February 8 Status Conference Transcript at 10. Attorney Nichols essentially was advising the Court that his testimony on the subject would be "adverse" to his clients' current position. In other words, based upon his responses to the Court's questions of February 8th, it would be completely reasonable to infer that Attorney Nichols **did** have Ms. Wagner's express authority to agree to the January 12th settlement.

5

## II. ARGUMENT

Under both federal law and Pennsylvania law, there exists a strong public policy in favor of settlement agreements. Edwards v. Born, Inc., 792 F.2d 387, 390 (3d Cir. 1986); Ballato v. General Electric, 147 F.R.D. 95, 97 (E.D. Pa. 1993); In re Paolino, 78 B.R. 85, 89 (E.D. Pa. 1987). A party may not change her mind about being bound by a settlement agreement after it is reached; once the parties agree to the terms of a settlement, even where not set forth in writing, that agreement is binding. Ballato, 147 F.R.D. at 96; Paolino, 78 B.R. at 89. "The agreement remains binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing." Paolino, 78 B.R. at 89. Unilateral mistake is also not generally a defense to enforcement of the contract. In re. Paolino, 78 B.R. at 91.

If the attorney who entered into the agreement on his or her client's behalf lacked the express authority to enter into the agreement in the first place, the agreement may be unenforcible. Tiernan v. Devoe, 923 F.2d 1024, 1033 (3d Cir. 1991). Express authority must be the result of explicit instructions provided to the attorney by the client regarding settlement. Tiernan, 923 F.2d at 1033; Swift v. Baskin, 1995 WL 296273, *9 (E.D. Pa. 1995). However, "express" authority can also be implied "from the totality of the relationship" between the client and attorney, "including but not limited to the settlement directions" given to the attorney by the client. Edwards, 792 F.2d at 390. Perhaps most importantly, it is Ms. Wagner's burden to prove that her attorney did not have her express authority to enter into the January 12 settlement agreement. Farris v. JCPenney Co., Inc., 176 F.3d 706, 711 (3d Cir. 1999); Edwards, 792 F.2d at 390; Swift, 1995 WL 296273 at *9. Finally, even if her attorney lacked the authority to settle, Ms. Wagner is bound by the agreement if she later ratified it by not repudiating it "promptly

6

upon receiving knowledge that the attorney has exceeded his authority." Tiernan, 923 at 1037.

As in the instant case, the debtor in In re. Paolino, 78 B.R. 85 (E.D. Pa. 1987), attempted to back out of a settlement agreement after it was recorded in court.  There, all of the terms and conditions of the settlement were discussed with the debtors before agreement was reached and counsel for the debtors stated that the terms and conditions as recited accurately represented the agreement reached by the parties.  Id. at 87.  During the negotiations, the debtors had access to their attorney and were free to discuss the terms with him.  Id. at 88.  One debtor later refused to sign the written agreement, claiming that he did not expressly authorize counsel to enter into the settlement agreement, that he did not understand the terms and conditions or their implications and that the agreement should not be enforced due to mutual mistake.

The court "easily rejected" the argument that the debtor did not "objectively manifest his consent to the agreement" because he was "present in the courthouse during the negotiations and, **through his counsel**, actively participated in the discussions."  Id. at 89, [emphasis added].  The court was similarly unpersuaded by the argument that the debtor did not understand the agreement, given the unambiguous terms, the debtor's education and experience and the fact that he had access to his attorney throughout negotiations.  Id. at 90.  As to the argument of mutual mistake, the court found no mutual mistake and concluded that any argument of unilateral mistake would be unavailing as well.  Id. at 91.  Hence, the settlement agreement entered into in open court was binding.

The plaintiff in Swift v. Baskin, 1995 WL 296273 (E.D. Pa. 1995) claimed that his attorney did not have authority to settle and he or she made additional demands after

7

the settlement agreement had been reached.  The plaintiff's attorney had agreed to dismiss the civil rights action in exchange for $45,000 plus $15,000 for attorney's fees after the plaintiff had instructed that he would settle for $35,000 or more.  Following settlement, the plaintiff and his attorney discussed the settlement and form of the release several times and the plaintiff began making new demands.  Although a settlement agreement had already been reached, the plaintiff increased his settlement demand to $50,000 initially, then changed it to $100,000 made payable to a different entity.  Id. at *5.  The plaintiff also claimed that he did not understand that he was also expected to execute a global release including claims for future damages and demanded an additional $5,000 before he would sign such a release.  At the evidentiary hearing, the plaintiff claimed that there had been a breakdown in communication between himself and his attorney because his attorney had failed to forward copies of certain documents, such as court orders and correspondence.

The court concluded that the plaintiff had granted express authority to settle, in that he had stated to his attorney that he would accept $35,000 to settle and included no conditions.  "A change of heart or mind after an oral settlement has been reached but before the written terms are agreed upon is not grounds for nullification of the oral agreement."  Id. at *9.  The court therefore rejected all of the plaintiff's challenges to the agreement and concluded that the case was settled as agreed.

Likewise, in this case, Ms. Wagner is attempting to renegotiate settlement terms after a settlement agreement with **very specific terms** has already been reached and the terms recorded by a court reporter.  It is disingenuous of Ms. Wagner and her counsel to argue that Attorney Nichols lacked express authority to enter into the settlement agreement. Ms. Wagner and her husband were in Judge's Chambers and

8

present during the negotiation of the agreement. While Ms. Wagner and her husband left the courthouse before the terms were reduced to the record, the Court likely recalls that no terms were added to the discussions after Ms. Wagner departed. Therefore, it was not necessary for Attorney Nichols to telephone Ms. Wagner. Most importantly, Attorney Nichols stated on the record that he had conversed with his clients and that they agreed to the terms and conditions of the settlement. The facts and behavior of counsel, including the letters exchanged thereafter, demonstrate that Ms. Wagner simply changed her mind.

Over ten days after reaching and recording the agreement, Attorney Nichols sent a draft consent decree, which he claimed "embodies, in principle, the terms and conditions of the mutual understanding that the parties reached at the Settlement Conference on January 12, 2002 [sic]." He did not deny his authority to have committed Plaintiff to it, but instead affirmed that an agreement had been reached. See January 23 letter, attached hereto as Exhibit C. A comparison of Attorney Nichols' proposed document (a consent decree) and the January 12 recitation of the agreement is very telling. Attorney Nichols' proposal to resolve the suit does not include a single term of the January 12 agreement. Nor are any of the terms of Attorney Nichols' proposed consent decree part of the January 12 agreement to which he committed Ms. Wagner. In other words, Ms. Wagner seems ready to say that Attorney Nichols lacked authority to agree to every provision to which he did agree on January 12. It is implausible to conclude that Attorney Nichols lacked authority to agree to any of the components of the settlement.

Over a week later, in his letter to the Court, dated February 2, Attorney Nichols still does not claim that he had no authority to reach the January 12 agreement; once

9

again, he actually reinforces the validity of the agreement and impliedly his authority to make such an agreement by claiming that the settlement agreement proposed by defense counsel is "wildly at variance" with the January 12 agreement. See Attorney Nichols' February 2 letter, attached hereto as Exhibit E. If Ms. Wagner or her counsel believe that the proposed written agreement does not comport with the agreement as recorded on January 12, they can simply ask the Court to review the proposed agreement and instruct the parties to create an agreement that does comport. Interestingly, Ms. Wagner is not asking the Court to enforce the January 12 agreement which she says has been improperly summarized in the District Defendants' agreement and release.

Ms. Wagner's justifications in Attorney Nichols' February 2nd letter for refusing to execute the District Defendants' agreement can be dealt with summarily. Ms. Wagner's contention that settlement agreements must be reduced to writing is simply incorrect, as confirmed by the Court during the February 8th status conference. Plaintiff's objection to the dismissal being "with prejudice" is meritless because the parties' January 12th agreement clearly envisioned a final resolution of the matter, evidenced in part by the requirement that Plaintiff execute a global release. Ms. Wagner's claim that the District's promise of employment is illusory and, in any event, is what was agreed upon. Plaintiff's objection that the District Defendants' agreement " does not specify the conditions under which Plaintiff would agree to release the Defendants' from asserted claims" is unintelligible. In any event, the January 12th agreement clearly contemplated Ms. Wagner's release of the District Defendants in the written release agreement, before her progression of employment with the District began or the payment for attorney's fees occurred. Ms. Wagner's objection that Defendants' agreement is

"unconscionable and violative of Pennsylvania public policy to the extent it requires Plaintiff to surrender her rights to sue on the basis of federal anti-discrimination mandates contained in the Amended and Second Amended Complaints" is unintelligible. Settlement of such claims always requires plaintiffs to surrender such rights, as appropriate to the case.

Ms. Wagner's contention that "the record was incomplete for negotiating purposes because the Court did not yet rule on Plaintiff's Second Amended Complaint with respect to the First, Second, Third, Fourth Fifth and Sixth Claims For Relief" is pointless in that the Court did deny Plaintiff's motion to file a second amended complaint and, in any event, the Complaint would not be amended subsequent to the settlement of the case. Ms. Wagner's desire to consummate this settlement via a consent decree simply is totally inconsistent with the January 12th settlement. Ms. Wagner's objection that the District Defendants have failed to respond to Plaintiff's fifth request for production of documents also is meritless in that the settlement obviated the need for such responses. Ms. Wagner's request for costs is inconsistent with the January 12th settlement, which limited the District Defendants' obligation to reimburse Ms. Wagner to $10,000 in attorney's fees. The agreement to execute a global release confirmed Ms. Wagner's ineligibility to subsequently recover costs. Ms. Wagner's claim that she is precluded "from suing on the basis of the underlying Amended and Second Amended Complaints, which contravenes Plaintiff's right to access the Court, upon a breach of the Settlement Agreement (Consent Decree)" is unintelligible. In any event, the Court addressed redress for violating the settlement agreement during the January 12th conference. In short, Plaintiff's explanations for refusing to honor the January 12th settlement all are wholly meritless.

11

It was not until nearly a month after reaching the agreement, on February 8, that Attorney Nichols began to claim that he did not have the authority to enter into the January 12 settlement agreement. He only did so then because, frankly, he needed something to say to justify his client's refusal to sign the agreement prepared by the undersigned, since it had become clear that the Court was unpersuaded by the contentions Attorney Nichols raised in his February 2 letter. Even then, he stated very clearly that he is being an "advocate" for his clients and not a witness; in other words, he is making essentially the only argument available that could potentially relieve his clients of the settlement agreement and its accompanying obligations.[2]

This case falls into the category of "typical" cases, as described by the Third Circuit in Farris, "where a client has acted to create an ambiguity with respect to the attorney's authority, where she has delayed in asserting the lack of authority, or where it is clear that the real motive for challenging a settlement involves a change of heart regarding the substance of the settlement." Farris, 176 F.3d at 713. In Farris, the plaintiff approached opposing counsel within the same hour of settlement and advised that she did not agree to settle and dismissed her own attorney who had agreed to the settlement against her wishes. Here, no claim of lack of authority was made until Ms. Wagner's counsel was intently questioned by Judge McLaughlin. Now that the District Defendants have agreed to a compromise and have demonstrated that they are willing to settle on these terms, Ms. Wagner simply is pushing for more.

---

[2] Attorney Nichols is mistaken regarding his status as a witness. Attorney Nichols will have to be a fact witness in this case, in the event the Court deems a hearing warranted, because his clients must prove that they did not give him express authority to enter into the agreement; his testimony under oath of what they said to him is directly relevant to this question. See Edwards, 792 F.2d at 392 ("At the hearing, the parties must present all evidence pertaining to the attorney-client relationship that may illuminate the existence of implied actual authority, evidence beyond mere conclusory statements that the attorney possessed or lacked the authority to settle.")

**III.     CONCLUSION**

In light of the foregoing, Defendants Crawford Central School District, Crawford Central School Board, Michael E. Dolecki, Superintendent, and Charles E. Heller, III, Assistant Superintendent, respectfully request the Court to enforce the settlement agreement. In the event the Court is unable to confirm the settlement on the present record, Defendants request a hearing and the opportunity to question at least Ms. Wagner and Attorney Nichols.

                Respectfully submitted,

                KNOX McLAUGHLIN GORNALL &
                SENNETT, P.C.

BY:  /s/       Mark J. Kuhar
                Mark J. Kuhar, Esq.
                120 West Tenth Street
                Erie, Pennsylvania 16501-1461
                Phone:  (814) 459-2800
                Fax:  (814) 453-4530
                E-mail:  mkuhar@kmgslaw.com
                Bar No.:  PA71185

                Attorneys for Defendants,
                Crawford Central School District,
                Crawford Central School Board,
                Michael E. Dolecki, Superintendent
                Charles E. Heller, III, Assistant
                Superintendent

# 658070