IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROWENA WAGNER ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION |
| vs. ) | NO. 04-264E |
| ) | |
| CRAWFORD CENTRAL SCHOOL DISTRICT ) | |
| CRAWFORD CENTRAL SCHOOL BOARD, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| MICHAEL E DOLECKI, SUPERINTENDENT ) | |
| ) | |
| Defendant, ) | |
| ) | |
| CHARLES E HELLER, III, ASSISTANT ) | |
| SUPERINTENDENT ) | |
| Defendant, ) | |
| ) | |
| and, ) | |
| ) | |
| THE CRAWFORD CENTRAL EDUCATION ) | |
| ASSOCIATION ) | |
| Defendant. ) | |

FILED '06 MAR -7 A8:58 CLERK US DISTRICT COURT

Judge Sean McLaughlin

_Caleb L. Nichols_
Caleb L. Nichols, Esq.
Plaintiff's Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROWENA WAGNER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | NO. 04-264E |
| | ) | |
| CRAWFORD CENTRAL SCHOOL DISTRICT | ) | |
| CRAWFORD CENTRAL SCHOOL BOARD, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| MICHAEL E DOLECKI, SUPERINTENDENT | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| CHARLES E HELLER, III, ASSISTANT SUPERINTENDENT | ) | |
| Defendant, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| THE CRAWFORD CENTRAL EDUCATION ASSOCIATION | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff's Response To The Defendant Crawford Central Education Association Application For Allowance of Attorney Fees and Expenses And Supporting Memorandum of Law.

The Defendant has motioned the Court for Allowance of Attorney Fees and Expenses on the grounds that the Court, after a hearing on January 8, 2006, denied the Plaintiff's Motion for Leave To Amend and refused to add the Pennsylvania State Education Association (PSEA) and National Education Association (NEA) as named Defendants. The Defendant urges the Court to

view it as a prevailing party within the meaning of Rule 54(d) of the Federal Rules of Civil Procedure and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. 1998, which provides attorney fees and/or costs other than attorney fees to the prevailing party.

For the following reasons, the Court is requested to deny the Defendant's Motion for Atorney Fees and Expenses in its entirety:

(1)  Court's Ruling of 25 February 2005

Following a hearing on Defendant's Motion To Dismiss on February 25, 2005, the Court denied the Defendant's Motion To Dismiss, finding that there was at "…on the face of the pleadings an issue of fact as to whether a contractual relationship in fact existed between the Plaintiff and the local union. And whether any actions taken by the local union were based on prohibited discriminatory animus on the basis of national origin." In citing Spriggs (v) Diamond Auto Glass 165 F.3d 1015 (4th Cir. 1999), the Plaintiff understood the Court's ruling that the claims against the Union fell within the parameters of section 1981.

(2)  Plaintiff's Claims Against (CEA/PSEA Were Reasonable

In passing upon the Defendant's Motion, the pivotal issue is whether the claims asserted by Plaintiff against the Union were reasonable or unreasonable. The standard to be used in determining whether a request for attorney fees by a prevailing defendant should be approved is set forth in Christiansburg Garment Co. (v) EEAC 434 U.S. 412, 98 S. 694, 54 (Ed. 2d 648 (1978). In that case, the Supreme Court held that a district court May in its discretion award attorney fees to a prevailing defendant upon a finding that the Plaintiff's action was frivolous, unreasonable or without foundation. Commonwealth (v) Flaherty 40 F. 3d 37 (3rd. Cir. 1994). The awarding of costs lies within the discretion of the District Court and May be denied where the award would be unequitable. Friedman (v) Ganassi 853 F. 2d 207 (3rd Cir. 1988), (Cert. Denied 488 U.S. 1042, 109 S. Ct. 867, 102 L. Ed. 2d 991 (1989). The "costs" recoverable by any prevailing party are limited, however, to items specified by federal student, 28 U.S.C. A }1920. These include clerk and Marshall fees, fees by Court Reporters for transcripts, printing disbursements and witness fees, specified

docket fees and fees for Court-appointed experts. However, "costs", as used in Rule 54 (d) do not include the prevailing party's attorney fees. This reflects the ordinary "American Rule" which requires each side to pay its own lawyer, win or lose, unless there is specific authority for fee shifting. <u>Alyeska Pipeline Serv. Co. (v) Wildness Society</u> 421 U.S. 240 (1975). Based upon <u>Christiansburg Garment</u>, supra, a fee award to a prevailing defendant is unwarranted where the Plaintiff's claim, although flawed, is colorable. <u>Barnes Foundation (v) Township of Lower Merion</u>, 242 F 3d 151 (3rd Cir. 2001). The circumstances warranting fees to a prevailing defendant must be truly exceptional, so much so that a trial court does not abuse its discretion in denying such fees even if no reason is stated for the denial, <u>Maag (v) Wessler</u> 993 F.2d 718 9th Cir. 1993.

(3) <u>Section 2981 Applies to At-Will Day-to-Day Substitutes</u>

As previously stated in the Brief In Support of Plaintiff's Motion For Leave To Mend First Amended Complaint, it was reasonable for the Plaintiff to believe that she because a member of CCEA, PSEA and NEA as of February 5, 2004 when her dues were accepted by the named unions and that by virtue of her membership in these entities should have been named as defendants. It was also reasonable for the Plaintiff to believe that the failure of the Unions to provide promised professional services by virtue of her payment of membership dues implicated discriminatory treatment on the basis of race, national origin and ethnicity. This is true because the application of section 1981, does not depend upon whether the Plaintiff was a full time and active member of the collective bargaining unit. Section 1981 also applies to an at-will employment relationship and private discrimination. <u>Spriggs (v) Diamond Auto Glass</u> 165 F. 3d 1015 (4th Cir. 1999). <u>Fader (v) Planned Parenthood Association</u> 160 F. 3d 1068 (5th Cir. 1998). In applying <u>Spriggs,</u> supra, to deny the Defendant first motion to be dismissed from the lawsuit, Plaintiff understood that the 1991 Act amended section 1981 by adding a new broad definition of "make and enforce contracts". Being a member of the protected class and falling within the parameters of section 1981 by virtue of a dues-paying membership relationship, and knowing that union officials, Messrs. Hootman and Mehow did nothing to help her

with her discrimination complaint raised at least a colorable claim of discriminatory treatment on the part of CCEA/PSEA/NEA. The Union's rebuff of Plaintiff's legitimate request for assistance when Plaintiff's counsel sought to reach an accommodation with the Union's Counsel, John Jones, Esq. buttressed Plaintiff's belief that the Union not only reneged on its contractual obligations, but did so in a manner and context that raised an inference of discriminator treatment within the meaning of section 1981. Through Mr. Jones, CCEA/PSEA's made a deliberate and conscious decision not to support Plaintiff's lawsuit, and by so doing, affirmed the wrongness of its conduct that is made actionable under the anti-discrimination laws. Surely, the Plaintiff was justified in relying upon section 5(d) of he Constitution and By-laws of the local Union (Crawford Central Education Association) that all employees inclusive of day-to-day substitutes have the right to ask for assistance from the CCEA Grievance Committee in detecting when a violation is suspected, and in writing, filing and processing grievance of merit. Notably, 5(d) appears under the heading (Rights of Individuals), presumably and inclusively embracing day-to-day substitutes.

(4) <u>The Theory of Fair Representation and the Collective Bargaining Agreement Do Not Displace or Supersede Plaintiff's Section 1981 Claims</u>

By its ruling of January 12, 2006, the Court determined that there was no obligation on the part of the Union to file a grievance for plaintiff, and that the Union had no ability to do so.

Analyzing the case under the theory that the Plaintiff was not a member of the collective bargaining unit, the Court's ruling is understandable. However, it was certainly reasonable for the Plaintiff to lodge her claim under section 1981 and seek her remedy under the constitutional mandate for reasons that she may not have been eligible to assert a claim of duty of fair representation due to the fact that she did not enjoy collective bargaining rights. Even if the Union were unable to grieve and process her complaint, it was not unreasonable for her to insist that the Union

investigate it and, at least, protect and questioned the School District's longstanding entrenched and discriminatory hiring practices. There is some case law which require that the Union, as well as the employer to engage in every reasonable step to correct; illegal employment practices and make clear that passive acquiescence of discrimination is unacceptable. <u>Terrell (v) United States Pipe & Foundry Co.</u> 644 F. 2d 1112 (1981); <u>Goodman (v) Lukens Steel Co.</u> 44 FEP Cases, (U.S. Sup. Ct. 1987). Courts have discussed in varying contexts the extent of a Union's duty to oppose an employer's purportedly discriminatory practices. The fact that the Union had unfettered discretion whether to grieve Plaintiff's claim did not absolve the Union of possible liability under section 1981 if it abused and exercised its discretion in the provision of professional services in a discriminatory manner.

It was perfectly reasonable for the Plaintiff to have lodge a complaint under section 1981 section 1981 secures equal contracting rights without regard to race. <u>Brown (v) Philip Morris</u> 250 F.3d 789 (3rd Cir. 2001). Requisite intent may be established inferentially through the burden sifting mechanism enunciated in McDonald/Burdine formula as applied in Title VII. <u>St. Mary's Honor Center (v)</u> Hicks 509 U.S. 502 (1993). Section 1981 contract clause applies to purely private conduct. <u>Runyon (v) McCrary</u> 427 U.S. 160 (1976).

(5)    <u>Legal Service Policy Misconstrued</u>

It is further noted that the Court concluded in its ruling of January 12, 2006 that the Union's Legal Services Policy provided that active status is a prerequisite for the receipt of legal services. However, it was reasonable for the Plaintiff to question the Defendant's interpretation of the PSEA Legal Services Policy to the extent it concluded that substitute teachers do not have active membership and therefore are not eligible for PSEA legal assistance. The PSEA Legal Service Policy doesn't define "active" membership but it dos extend eligibility for legal assistance benefits to those who hold reserve or even retired membership. Nowhere does the Policy expressly exclude substitute teachers. If anything, "Active Membership" Status probably correlates to payment of dues. If payment of dues triggered active status

which was a prerequisite for the services under the PSEA Legal Service Policy, then Plaintiff qualified for coverage and service. On page 8 of the Defendant's Brief In Opposition To Plaintiff's Motion To Amend the First Amended Complaint there is an erroneous conclusion that apparently the Court credited in its ruling on January 12, 2006 <u>that only active members,</u> not substitute members, qualify for employment related legal service. Nothing in the PSEA Legal Service Policy supports this interpretation by which the Defendant sought to exclude substitute teachers from the coverage of the Policy. Thus, it was reasonable for the Plaintiff to believe that she was covered.

(6) <u>The Defendant cited two cases – McGregor (v) Board of County Commissioner for Palm Beach County, Florida and Morse (v) North Coast Opportunities—</u>

As authority for arguing that there is no legal basis to support Plaintiff's section 1983 claim. However, this is not completely rue. The extent to which it can be shown that the Union acted in concert or partnership with the School District in depriving Plaintiff of her constitutional rights under color of law, it is liable under section 1983. <u>Isaacs (v) Bd. Of Trustees of Temple University</u> 385 F. Supp. 473 (E.D. Pa. 1974). Another case instructive on this issue is <u>Tancredi (v) Metropolitan Life Insurance Co.</u> 378 F. 3d 220 (2004). There, the Second Circuit concluded that the District Court abused its discretion by granting attorney's fees because the allegation of state action, although meritless, was not frivolous and did not justify an award of fees; (see <u>Hughes (v) Rowe</u> 449 U.S. 5 (1980); <u>Brentwood Academy</u> 531 U.S. 295.

It was reasonable for the Plaintiff to believe that the Union was possibly complicit with the School District in perpetrating a longstanding discriminatory hiring practices. It was a signatory to a collective bargaining agreement with the School District spanning many years that afforded limit employment opportunities for minority teaching staff. Through the Enrollment Form, the Union knew or should have known of the statistical workforce profile of the School District along lines of race, ethnicity and national origin. The demographics of the hiring, retention and

employment practices of the School District suggest that the Union is a silent partner in maintaining longstanding patterns of employment discrimination through the collective bargaining process. Statistical evidence is sufficient to establish a prima facie violation of anti-discrimination laws. <u>International Brotherhood of Teamsters (v) U.S.</u> 431 U.S. 324 (1972); <u>Frank (v) Bowman Transportation Co.</u> 424 U.S. 747 (1976). Workforce Statistical Profiles are relevant in establishing employment discrimination. <u>McDonald Douglas (v) Green</u> 411 U.S. 804, 805. In reality, constituted, the collective bargaining process is at war with the effort to meaningfully implement anti-discrimination employment policies. For these reasons, it would wrought a great inequity to saddle Plaintiff with the requested Attorney fees and costs.

(7)   <u>Union Provided Professional Services On Discriminatory Basis</u>

The Defendant has wrongly suggested that Plaintiff persisted in this litigation for no reasonable justification. However, this assertion belies what Plaintiff found during discovery. Plaintiff found during discovery. Through the discovery, Plaintiff's case that the Defendant was failing to provide promised professional services on the basis of equality became more persuasive in light of the <u>Selinsgrove School District</u> case and the <u>Claudette deLeon</u> case as distinguished from the <u>James Born</u> case. The <u>Selinsgrove</u> case very much establish precedential value in support of Plaintiff section 1981 claim.

(8)   <u>The Chilling Effect On The Effective Enforcement of Civil Rights Claims</u>

In passing upon the Defendant's Application for Attorney's fees and costs, Plaintiff urges the Court to heed the contrary instructions of the Third Circuit in <u>Commonwealth (v) Flaherty,</u> supra, that awarding fees to defendants might have a chilling effect on potential plaintiffs. Similarly, the Supreme Court cautioned in <u>Christiansburg Garment Co.,</u> Supra, that "it is important that a District Court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable for without foundation" (at pp. 421-22).

(9) <u>Request For Relief</u>
   (a) Deny the Defendant's Motion for Attorney's Fees (34, 647.15) and costs ($2,860.36).
   (b) Award Plaintiff reasonable Attorney's Fees and Costs for having to respond to the Defendant's Motion and Application For Attorney's Fees and Costs.