IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROWENA WAGNER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | NO. 04-264E |
| | ) | |
| CRAWFORD CENTRAL SCHOOL DISTRICT | ) | |
| CRAWFORD CENTRAL SCHOOL BOARD, | ) | Judge Sean J. McLaughlin |
| | ) | |
| Defendants, | ) | |
| | ) | |
| MICHAEL E DOLECKI, SUPERINTENDENT | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| CHARLES E HELLER, III, ASSISTANT SUPERINTENDENT | ) | |
| Defendant, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| THE CRAWFORD CENTRAL EDUCATION ASSOCIATION | ) | |
| | ) | |
| Defendant. | ) | |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROWENA WAGNER )
)
        Plaintiff )
)
vs. ) CIVIL ACTION
) NO. 04-264E
)
CRAWFORD CENTRAL SCHOOL DISTRICT, et al )
) Judge Sean J. McLaughlin
)
        Defendants, )

Plaintiff's Response To Defendants' Petition To Enforce Purported
Settlement Agreement

I.    Introduction

    The Plaintiff requests the Court to deny the Defendants' Petition To Enforce the purported Settlement Agreement. The recitation of events which the Defendants asserted in their Petition does not accurately and completely convey the events which commenced and culminated in the Settlement Conference on January 12, 2006. These events include Plaintiff's Demand Letter dated December 29, 2005, an exchange of letters between Plaintiff and Defendants, and the negotiations between the parties in the presence of the Court on January 12, 2006.

    The pivotal issue arising out of those negotiations is whether the parties entered into a binding and enforceable Agreement. A subsidiary issue is whether Plaintiff's counsel possessed the expressed, apparent or implied authority to enter into a Settlement Agreement.

II.    Plaintiff's Demand Letter and Consent Decree

By a Demand Letter dated December 29, 2005, Plaintiff conveyed to the Defendants the terms and conditions that she was willing to consider in reaching a Settlement. (Exhibit 1). Plaintiff made clear to the School District that any Settlement Agreement reached with the Defendants must be in the form of a Consent Decree. Attorney Kuhar acknowledged in writing receipt of Plaintiff's Demand Letter and, in particular, Plaintiff's demand for a Consent Decree. Plaintiff's demand that any settlement in the form of a Consent Decree was reiterated in the presence of the Court and Attorney Kuhar on January 12, 2006. (See: Transcript, Hearing On Plaintiff's Motion For Leave To Amend First Amended Complaint, January 12, 2006, p. 25).

The Plaintiff's demand letter set forth specific and discrete terms that the Plaintiff proposed for negotiations including and limited to Back Pay, Employment, Attorney Fees, Crawford Central Education Association, and the Consent Decree. It did not envision as terms of negotiation many of the terms and conditions which Attorney Kuhar set forth in Defendants' Proposed Agreement, conveyed in a letter dated January 31, 2006, that were, in fact, not discussed with Plaintiff or her counsel, <u>prior to or during January 12th</u> Settlement Conference. The Defendants' Draft Agreement makes no provision for the Court's signature and the execution of the Consent Decree. Therefore, it appears that the parties did not agree on a key demand of the Plaintiff and there is no mutually binding Agreement on this term or Purported Agreement in its entirety.

Further, after the January 12th Conference, Plaintiff by letter dated January 23, 2006, submitted to Attorney Kuhar a proposed Consent Decree for review and comment, the terms of which are delineated in Exhibit 2.

III. <u>Defendants' Proposed Agreement</u>

The Defendants seeks to have the Court enforce their Proposed Agreement dated January 31, 2006.

This request should be denied for several reasons. First, neither the Plaintiff nor her counsel agreed to the Second Paragraph of page 1 of the Proposed Agreement which ascribed unlawful motives to the Plaintiff for having brought the lawsuit against the Defendants.

Second, neither Plaintiff, nor her counsel agreed to voluntarily and immediately <u>dismiss with prejudice</u> her lawsuit pursuant to Fed. R. Civ. P. 41 as provided in Paragraph 2 of page 2 of Defendants' Proposed Agreement. The condition that the lawsuit would be <u>dismissed with prejudice</u> was not contained in the Plaintiff's Demand Letter nor the Settlement Conference transcript of January 12th, nor Plaintiff's Proposed Consent Decree of January 23rd. Yet it appears in Defendants' Proposed Agreement. Defendants' Proposed Agreement prompted counsel to write the Court that the Court's Order of January 13, 2006 could not be executed. (Exhibit 3). It was the terms and conditions set forth in the Defendants' Proposed Agreement that were materially at variance with the parties' negotiations on January 12th which made it impossible for Plaintiff and Defendants to sign and execute a Stipulation of Dismissal per Fed. R. Civ. P. 41. Rule 41 (a)(1), in pertinent part, specifically provide that as a condition to dismissing an action such as this one, it must be accomplished:

> "...(ii) by filing a Stipulation of Dismissal <u>signed by all parties who have appeared in the action....</u> Unless otherwise stated in the notice of dismissal or stipulation, <u>the dismissal is without prejudice...</u>" (Emphasis added).

Because Plaintiff declined to accept those terms which were impermissibly included in the Defendants' Proposed Agreement of January 31st by Attorney Kuhar, an impasse in the negotiations arose. Rule 41 contemplates that the parties will consensually arrange a voluntary dismissal of the lawsuit by stipulation. The Court should not enforce the proposed Settlement Agreement of the Defendants because it requires the Court to act outside the parameters of Rule 41.

Third, Plaintiff understood that the Court assured on the Settlement Conference transcript of January 12th that the parties would be able to return to Court for enforcement of the Proposed Agreement, should that be necessary. However, the Defendants' Proposed Agreement of January 31st makes that problematical, if not impossible. In her proposed Consent Decree of January 23rd, Plaintiff sought, among other things, to establish the jurisdiction of this Court to entertain future disputes that may arise. (Exhibit 2).

Fourth, the Proposed Agreement requires a "global release in favor of the Defendant". There is nothing in the written record starting with the Plaintiff's Demand Letter and continuing up to and including the Settlement Conference stating that the Plaintiff agreed to the general release contained in Paragraph 5(B) of the Defendants' Proposed Agreement shown on page 3. This provision renders meaningless the Court's assurance that Plaintiff could return to Court to enforce the Proposed Agreement. The general release which the Defendants asserted would unconditionally release Plaintiff's discrimination claims and thus divest the Court of jurisdiction over any discrimination lawsuit against the School District in the future. It would simply make it impossible for the Court to retain jurisdiction over this matter and thus thwart what the Plaintiff believe the Court intended to make possible, i.e., Plaintiff would be able to return to Court and enforce the Agreement, with reference to her federal civil rights claims.

Fifth, the Plaintiff did not agree to the terms contained in Paragraph 9 of Defendant's Proposed Agreement because it provides for the interpretation and/or enforcement of the Proposed Agreement in a venue other than the United States District Court for the Western District (Erie). This provision is inconsistent with Plaintiff's right to return to Federal Court, if necessary.

Sixth, Plaintiff did not agree to Paragraph 11 of the Defendants' because it makes no allowance for the parties and the Court to refer to the underlying discrimination claims in the Amended Complaint for the purpose of retaining

federal jurisdiction over future lawsuits. To this extent, Paragraph 11 of Defendants' Proposed Agreement is inconsistent with the Court's Assurance of January 12, 2006.

IV. <u>Defendants' Proposed Agreement and the Purported Verbal Agreement of January 12th, are Deficient and Flawed As A Matter of Law</u>

There exists the serious issue whether Defendants' Proposed Agreement is invalid and unenforceable, as a matter of law, because there is no definite commitment on the part of the School District as to when Plaintiff will be gainfully employed as a long term substitute or regular full time teacher. There is a significant issue whether the parties agreed on the same terms in the same sense to the terms contained in the Settlement Conference transcript dated January 12th and the Proposed Agreement of January 31st. In other words, was there a "meeting of the minds"? If not, it can be concluded that there is a mutual mistake that rendered the purported verbal Agreement and the Proposed Agreement void and unenforceable.

Paragraph 5(B) of Defendants' Proposed Agreement is possibly violative of Pennsylvania public policy in that it seeks to unreasonably condition Plaintiff's employment on the basis that she forfeit her constitutional rights, a demand not made of her professional cohorts.

Further, the Court should deny the Defendants' Petition For Enforcement because Pennsylvania law will not enforce a purported oral settlement agreement if all of the material terms are not agreed upon. <u>Standard Steel v. Buckeye Energy, Inc.</u> (2005 WL 2403636).

V. <u>Whether Plaintiff's Counsel had Expressed, Apparent and Implied Authority</u>

Several of the material terms set forth in the Defendants' Proposed Agreement were not discussed and made part of the Settlement Conference on January 12, 2006. The Defendants added these terms <u>subsequent to</u> the January 12th Settlement Conference. It is also relevant that by a cover letter dated February 6, 2006 addressed to the Court, Attorney Kuhar referred to the Defendants'

Proposed Agreement as a "proposed agreement and release". It is fair to conclude therefore that the Defendants did not view the negotiations on January 12th as final, binding and a conclusive agreement.

The terms stated in Plaintiff's Demand Letter defined the extent of the expressed authority that Plaintiff's Counsel possessed. Regarding any terms which fell outside Plaintiff's Demand Letter of December 29, 2005, Plaintiff Counsel had no expressed, apparent or implied authority to bind Plaintiff to an enforceable agreement. Therefore, those terms and conditions which fell outside Plaintiff's Demand Letter of December 29, 2005 including those additional terms proposed by Attorney Kuhar after the January 12th Conference are not binding on the Plaintiff for settlement purposes. The Pennsylvania Supreme Court has unqualifiedly declared that an attorney must have expressed authority in order to bind a client to a settlement agreement. Reutzel v. Douglas 870 A. 2d 787 (Pa. 2005). The Pennsylvania Supreme Court has never invoked the doctrine of apparent authority to enforce a settlement agreement, but has left the applicability of the doctrine open. Reutzel, supra, p. 794 (see footnote). Farris v. J.C. Penney Co. Inc. 176 F. 3d 706 (3rd Cir. 1999). The doctrine of apparent authority does not apply in this case because the Plaintiff has made no representations concerning the authority of Plaintiff's Counsel to Attorney Kuhar and Defendants other than those specified in Plaintiff's Demand Letter of January 29, 2005.

Importantly, the Third Circuit has stated that the issue whether an attorney has actual authority to settle a lawsuit for a client is reviewed as a ruling on a Motion for Summary Judgment (Fed. R. Civ. P. 56 (c)). The non-movant's assertions are accepted as true and receive the benefit of the doubt. In this case, the Defendants' Petition will be enforced as a matter of law, only, if there is no genuine issue as to any material fact (Fed. R. Civ. P. 56 (c); Tiernam v. Devoe 923 F. 2d 1024 (3rd Cir. 1991). As discussed below, there are several issues of fact whether Plaintiff's Counsel had expressed authority to settle the Plaintiff's case. Expressed authority

does not arise merely from the fact of representation, but must be the result of explicit instructions regarding settlement. (Tiernam, supra, p. 1033).

Defendants' Counsel argues that express authority can be implied from a "totality of the relationship" between the client and attorney. However, the prevailing rule in Pennsylvania makes the application of that theory problematical in this case. It is settled law that an attorney does not possess the inherent authority to settle a lawsuit by virtue of being retained to litigate. Edwards v. Born, Inc. 792 F. 2d 387 (3rd Cir. 1986). In examining the "totality of relationship" theory enunciated by the Third Circuit to determine whether Plaintiff's counsel had implied actual authority to settle the lawsuit, there must be, at a minimum, a showing by the Defendants that it was reasonable to conclude that Plaintiff's counsel possessed expressed authority to settle. (See: Edwards v. Born, Inc., supra, (p. 392).

It is unreasonable for the Defendants to reached that conclusion in the face of the limited and discrete authority that Plaintiff gave Plaintiff's counsel by way of the Demand Letter of December 29, 2005. Further, the record contains very little indication of significant contact between the Plaintiff and the Defendants and Attorney Kuhar. The Plaintiff left the Courthouse on January 12th before the Settlement Conference concluded, and before the terms of the discussions were recorded. The statement of Plaintiff's counsel purportedly expressing approval to the Purported Settlement on January 12th must be viewed in light of the previous communications to Attorney Kuhar which expressly defined and limited the authority of Plaintiff's counsel to settle. Plaintiff's letter of February 2, 2006 further made clear that she did not choose to ratify, by word or deed, that which she had not expressly proposed by her Letter of December 29th.

VI.   Conclusions

Based upon the foregoing, Plaintiff requests the Court to deny the Petition For Enforcement in its entirety.

Respectfully submitted,

_____
Caleb L. Nichols, Esq.
Law Office of Caleb Nichols
P.O. Box 1585
Erie, PA  16507
(814) 838-1877
Atty. I.D. No. 18773

_____
Edith Benson, Esq.
Benson Law Office
4683 Budd Drive
Erie, PA  16506
(814) 838-3670
Atty. I.D. No. 33510