**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROWENA WAGNER,<br><br>    Plaintiff<br><br>    v.<br><br>CRAWFORD CENTRAL SCHOOL DISTRICT, et al.<br><br>    Defendants | )  Civil Action No. 04-264 ERIE<br>)  Judge Sean J. McLaughlin<br>)<br>)<br>)  ELECTRONICALLY FILED<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**Material Facts**[1]

    1.    The District has employed Plaintiff, Rowena Wagner, as a casual "day-to-day" elementary substitute since August 2001.  C. at ¶8.

    2.    On approximately November 15, 2002, the District assigned Plaintiff to temporarily replace District elementary teacher Joye Pickens ("Pickens") during Pickens' health-related leave of absence, pending its selection of a person to staff Pickens' class for the remainder of her leave, i.e. the balance of the 2002-03 school year ("Pickens Position").  C. at ¶3 and Ex. 3 - Heller Affidavit at ¶16.

    3.    The District then interviewed Plaintiff and several other candidates to determine who would fill the Pickens Position during the remainder of Pickens' absence.  C. at ¶12 and Ex. 3 – Heller Aff. ¶17.

---

[1]     For purposes of this motion and statement only, disputed facts will be presented as contended by Plaintiff.

4. The District selected a Caucasian, American-born candidate, Amy Szalewicz ("Salewicz"), to fill the Pickens Position beginning December 21, 2002. C. at ¶12 and Ex. 3 – Heller Aff. ¶17.

5. The District hires new teachers for "permanent" vacancies and long-term substitute positions through a process whereby Assistant Superintendent Charles Heller ("Heller") assembles an interview team comprised of himself and other administrators[2] to interview applicants for long-term substitute positions and full-time teaching positions. Ex. 3 – Heller Aff. ¶¶2-3

6. During the interviews, each administrator on the interview team independently completes his/her own interview analysis form, on which multiple qualifications of candidates are evaluated, which are used to asses the strengths and weaknesses of each interviewee. Upon completing all interviews for an available position, the interview team reviews the interview analysis forms, discusses their impressions of the applicants and determines collectively which applicants should be recommended for a position(s). A list of suggested hirees is then compiled and forwarded to the Board, after having been reviewed and approved by the Superintendent. Ex. 3 - Heller Aff. ¶2-6.

7. Although the ultimate decision rests with the Board, the Board has approved the recommendations of the interview teams for all positions known by the District Defendants to be implicated by the Complaint, including the Pickens Position. Ex. 3 - Heller Aff. ¶¶7-9.

---

[2] For elementary positions, interview committees included elementary administrators; for high school positions, high school administrators. Ex. 3 – Heller Aff. ¶3.

2

8. When they conducted interviews for the Pickens Position, the interview team's independently derived assessments of Plaintiff's interview performance resulted in scores consistently lower in categories such as "knowledge of the job" and "insight and alertness," whereas Szalewicz scored consistently higher.[3] See Interview Analysis Forms attached to Heller Aff. as Ex. 3A.

9. Heller performed a classroom observation of Plaintiff while she was substitute teaching Pickens' class, during which he noted that Plaintiff had trouble keeping the students' attention in the classroom and appeared nervous in front of the students. See Heller Observation, attached to Heller Aff. as Ex. 3C.

10. Heller also noted in his classroom observation that Plaintiff failed to involve a sufficient number of students during discussions to assess their understanding. See Ex. 3C – Heller Obs.

11. Cochranton Elementary Principal, Kurt Meader, noticed the same shortcoming during his observation of Plaintiff. See Meader Observation, attached to Heller Aff. as Ex. 3D.

12. Plaintiff's noted difficulties in the classroom indicated that she was not ready to manage her own class. Ex. 3 – Heller Aff. ¶24.

13. Although Plaintiff may note that some regular teachers for whom she has substituted have been favorably impressed with her, those teachers have never seen Plaintiff in a classroom setting. Instead, the teachers were impressed by things

---

[3] Szalewicz scored between 36 and 44 points out of a potential 45 points during her interview, Plaintiff scored between 26 and 30 points out of a potential 45 points during her interview with the same committee.

3

such as the neatness of their desks upon their return and the fact that their lesson plans were followed.  See Ex. 5 – Pickens Depo. at 13.

   14. The qualities that are desirable in a substitute teachers are not necessarily indicative of the required qualities of a permanent teacher.  Ex. 3 – Heller Aff. ¶23.

   15. In addition to her strong performance during her interview, Szalewicz was chosen, in part, because she possessed more teaching experience than Plaintiff,[4] greater knowledge of the job and other relevant teaching characteristics which made her more desirable for the Pickens Position than Plaintiff.  Ex. 3 – Heller Aff. ¶18.

   16. Plaintiff's short-term assignment therefore ended on December 20, 2002 and she resumed her duties as a day-to-day substitute.  C. at ¶13.

   17. Since Heller became primarily responsible for the process of screening and recommending long-term substitutes in February 2002, he has never selected a long-term substitute based solely on the recommendation of the teacher to be replaced.  Ex. 3 – Heller Aff. at ¶12.

   18. Since at least November 1994, District teachers have not been permitted to select their own long-term substitutes.  Ex. 1 - Dolecki Aff. ¶2.

   19. Permanent teachers have very seldomly recommend their replacements during leaves of absence.  Ex. 1 - Dolecki Aff. ¶3 and Ex. 3 - Heller Aff. ¶11.

---

[4] Szalewicz had two years of previous teaching experience with another school district.  Ex. 2 - Heller Depo. at 103.

4

20. Recommendations by teachers, when they occur, have always been merely one factor in the District's selection of leave of absence replacements. Ex. 1 - Dolecki Aff. ¶2 and Ex. 3 - Heller Aff. ¶10.

21. From 2002 through 2004, Plaintiff applied unsuccessfully for more than seventy-five long-term substitute and full-time teaching positions with the District. C. at ¶15. Plaintiff concedes that all but seven were bid upon by bargaining unit teachers with contractual entitlements to the positions. P. Depo. at 38 and C. at ¶16.

22. From January 1, 2002 through April 1, 2004, all permanent elementary positions were filled with internal bidders with contractual rights to their positions. Ex. 3 – Heller Aff. ¶14.

23. Plaintiff applied for a vacant third grade teaching position at Neason Hill Elementary School, posted on November 12, 2002, only to be informed less than one month later (December 11, 2002) that the position "no longer existed." C. at ¶14.

24. Plaintiff acknowledged that she is unaware of the relative qualifications of the successful candidates and/or how they performed when interviewed, or which candidates were interviewed. P. Depo. at 46-47.

25. All of the successful candidates for the positions identified by Plaintiff were interviewed, performed better during their interviews and were, therefore, deemed by the District's interview team better candidates than Plaintiff. Ex. 3 - Heller Aff. ¶27.

26. A substitute teacher will not necessarily be hired as a permanent teacher merely by possessing a certificate and substituting day-to-day for a period of time. Ex. 3 - Heller Aff. ¶22.

27. The District hired nine new teachers to start in August 2004 for the 2004-2005 school year, including one minority.[5]  C. at ¶26(j).  Plaintiff unsuccessfully interviewed for these positions in March 2004 . Ex. 3 - Heller Aff. ¶20.

28. During Plaintiff's deposition, she acknowledged that she had no knowledge of the qualifications of the candidates who were hired for the 2004-05 school year.  P. Depo. at 46-47.

29. Plaintiff's interview scores were considerably lower than the candidates who were offered positions.  See Interview Analysis Forms attached to Heller Aff. as Ex. 3B.

30. Moreover, several interviewers noted that Plaintiff used poor grammar during her interview, deemed by the District to be a critical skill for an individual who will be teaching and setting an example for young children.  Ex. 3 - Heller Aff. ¶20-21.

31. Successful candidates are chosen based on the District's evaluation of their merits relative to the other candidates.  Ex. 3 – Heller Aff. ¶20.

32. The District interviewed Plaintiff for the Pickens Position, but did not hire her because Plaintiff's interview scores were lower than those of the successful candidates.  See Ex. 3A - Interview Analysis Forms.

33. Plaintiff was interviewed by a team of several administrators and they consistently found similar weaknesses during her interview, particularly in the categories of "insight and alertness" and "knowledge of job".  Her scores ranged from 26-30 out of 45 potential points.  See Ex. 3B – Interview Analysis Forms.

---

[5]  It is unclear whether Plaintiff's complained of, aforementioned seven "non-hires" are among these nine.

34. The successful candidate for the Pickens' Position, Szalewicz, scored in the range of 36-44 out of 45 potential points. See Ex. 3B – Interview Analysis Forms.

35. The District hired no one without bidding rights for elementary positions until April 2004, thereafter to start at the beginning of the 2004-2005 school year. Ex. 3 – Heller Aff. ¶14.

36. The District interviewed Plaintiff and approximately forty other candidates, among hundreds of applicants, in March 2004 for several available positions. Ex. 3 – Heller Aff. ¶19.

37. Of those interviewed, nine were hired for the start of the 2004-2005 school year. Ex. 3 - Heller Aff. ¶19.

38. During Plaintiff's March 2004 interview, Plaintiff's scores ranged from 16-19 out of 25 possible points. See Ex. 3B - Interview Analysis Forms.

39. The Administration assesses candidates' qualifications and decides whom to hire, not teachers or other persons. Ex. 1 – Dolecki Aff. ¶4 and Ex. 3 – Heller Aff. ¶7.

40. A teacher may be impressed by Plaintiff's organizational skills and the fact that she leaves detailed notes for the teacher after substituting. See Pickens Depo. at 13-13. However, the District is understandably more concerned with Plaintiff's abilities in front of the classroom and her ability to control the students. See Ex. 3C - Observation.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.


BY: /s/     Mark J. Kuhar
        Mark J. Kuhar, Esq.
        120 West Tenth Street
        Erie, Pennsylvania 16501-1461
        Phone:  (814) 459-2800
        Fax:  (814) 453-4530
        E-mail:  mkuhar@kmgslaw.com
        Bar No.:  PA71185

        Attorneys for Defendants,
        Crawford Central School District,
        Crawford Central School Board,
        Michael E. Dolecki, Superintendent
        and Charles E. Heller, III,
        Assistant Superintendent