**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROWENA WAGNER,⠀⠀⠀⠀⠀⠀⠀⠀)⠀Civil Action No. 04-264 ERIE
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀Judge Sean J. McLaughlin
⠀⠀⠀Plaintiff⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀ELECTRONICALLY FILED
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CRAWFORD CENTRAL SCHOOL⠀⠀)
DISTRICT, et al.⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants⠀⠀⠀⠀⠀⠀)

## <u>AFFIDAVIT OF CHARLES E. HELLER, III</u>

1.⠀⠀⠀I have been the Assistant Superintendent of Crawford Central School District from February 2002 through the current date.

2.⠀⠀⠀Since my hire, I have been responsible for assembling and coordinating interview teams comprised of administrators to interview applicants for long-term substitute positions and full-time teaching positions.

3.⠀⠀⠀The District's interview committees consist of elementary administrators for elementary positions and high school administrators for high school positions.

4.⠀⠀⠀During the interviews, each administrator on the interview team, including myself, independently completes his/her own interview analysis form, on which multiple qualifications of candidates are evaluated, which are used to assess the strengths and weaknesses of each interviewee.

5.⠀⠀⠀Upon completing all interviews for an available position or positions, the interview team reviews the interview analysis forms, discusses their impressions of the applicants and determines collectively which applicants should be recommended for a position(s).

6.     The interview team of administrators then compiles a list of suggested hirees and forwards the list to the Board, after the list is reviewed and approved by the Superintendent.

7.     Although the Board makes the ultimate decisions regarding which candidates will be offered long-term substitute or permanent positions, it is the interview team that assesses candidates' qualifications and decides whom to recommend for hire.

8.     During the time I have been in my present position, the Board has consistently adopted the recommendations of the team of interviewing administrators.

9.     The Board has approved the recommendations of the interview teams for all positions known by the District Defendants to be implicated by the Complaint.

10.     Teachers are not permitted to select their own long-term substitutes. Teacher recommendations are taken into consideration, but have been only one factor in the District's selection of replacements during leaves of absence of permanent teachers.

11.     Permanent teachers have very seldomly recommended their replacements but when they do, because of the significant length of time of such assignments, candidates for the long-term substitute positions (including any candidate who may be suggested by a teacher) must undergo an interview and a candidate is selected based upon merit.

12.     During my tenure at the District, a long-term substitute has never been selected based solely upon a teacher's recommendation.

13.     During the relevant period, the District has required candidates for long-term substitute assignments to undergo an interview process and, often, classroom

observation, except in certain specific circumstances where the District has firsthand knowledge of an applicant's teaching, i.e. the applicant has previously performed a long-term substitute position for the District.

14.    From January 1, 2002 through April 1, 2004, all permanent elementary positions were filled with internal bidders with contractual rights to their positions. The District hired no one without bidding rights for elementary positions until April 2004, thereafter, for positions to start at the beginning of the 2004-05 school year.

15.    In one particular instance, Plaintiff applied for a position at Neason Hill Elementary in November 2002. The position had been posted in error, was rescinded and was never filled.

16.    On approximately November 15, 2002, the District assigned Plaintiff to temporarily replace District elementary teacher Joye Pickens during Pickens' health-related leave of absence, pending its selection of a person to staff Pickens' class for the remainder of her leave, i.e. the balance of the 2002-03 school year.

17.    The District interviewed Plaintiff and several other candidates to determine who would fill the Pickens Position during the remainder of Pickens' absence. The District selected a Caucasian, American-born candidate, Amy Szalewicz, to fill the Pickens Position beginning December 21, 2002.

18.    Plaintiff was not chosen for the long-term substitute position because another applicant, Amy Szalewicz, was deemed a more suitable candidate by the District's interview team. More specifically, Szalewicz possessed more teaching experience than Plaintiff, greater knowledge of the job and other relevant teaching characteristics which made her more desirable for the Pickens Position than Plaintiff.

3

(<u>See</u> Exhibit 3A – Interview Analysis Dated December 2002, true and correct copies of which are attached hereto.)

19.    Several positions were available for the 2004/2005 school year.  The District interviewed Plaintiff and approximately forty other candidates, among hundreds of applicants.  Ultimately, nine new elementary teachers were hired.

20.    Plaintiff was not selected for any of those positions because her interview scores were low and she displayed some negative traits during her interview, such as poor grammar.  (<u>See</u> Exhibit 3B – Interview Analysis Dated March 2004, true and correct copies of which are attached hereto.)

21.    It is very important for a teacher who is serving as a role model for young children to use proper grammar.

22.    A substitute teacher will not necessarily be hired as a full-time teacher merely by possessing a certificate and substituting day-to-day for a period of time.

23.    The qualities that are desirable in a substitute teacher are not necessarily indicative of the required qualities of a permanent teacher.

24.    Because of Plaintiff's noted difficulties in the classroom, I determined that she was not ready to manager her own class.  (<u>See</u> Exhibit 3C – Heller Classroom Observation Report, a true and correct copy of which is attached hereto.)

25.    I have no animus against Plaintiff based upon race or national origin and, to my knowledge, nor does anyone employed by the District.

26.    Because of those weaknesses, I do not consider Plaintiff to be fully qualified to be a full-time teacher at the District.

27.    All of the successful candidates for the positions identified by Plaintiff were interviewed, performed better during their interviews and were, therefore, deemed by the District's interview team better candidates than Plaintiff.

28.    The decision to not hire Plaintiff and to hire the successful applicants was based upon the merits, not upon race, national origin or the filing of a complaint against the District.

29.    A true and correct copy of Plaintiff's classroom observation report prepared by Cochranton Elementary Principal Kurt Meader is attached hereto as Exhibit 3D.

_Charles E. Heller, III_

Charles E. Heller, III
Assistant Superintendent of
Crawford Central School District

COMMONWEALTH OF PENNSYLVANIA )
                              )  SS:
COUNTY OF CRAWFORD            )

BEFORE ME, the undersigned notary public, personally appeared Charles E. Heller, III, who being duly sworn according to law depose and say that he is Assistant Superintendent of Crawford Central School District and as such does further certify that the facts set forth in the foregoing Affidavit of Charles E. Heller, III are true and correct to the best of his knowledge, information and belief.

_Lisa L. Pittner_

Notary Public

# 671477

Notarial Seal
Lisa L. Pittner, Notary Public
Pine Twp., Crawford County
My Commission Expires June 16, 2007