

COMMONWEALTH OF PENNSYLVANIA
**DEPARTMENT OF EDUCATION**
333 MARKET STREET
HARRISBURG, PA 17126-0333
www.pde.state.pa.us

## AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA:

COUNTY OF DAUPHIN:

I, Charles P. Sabulski, having been duly sworn, state as follows:

1. I am the Chief of the Division of Candidate Evaluation Services for the Pennsylvania Department of Education.

2. The responsibilities of my Dvision and my responsibilities as Division Chief are set forth in attachment 1.

3. My educational and professional background is set forth in attachment 2.

4. I have been asked to provide this affidavit in connection with the Rowena Wagner v. Crawford Central School District lawsuit.

5. The applicable regulations governing teacher eligibility and hiring are described in attachment 3.

6. The requirements a candidate must meet in order to be certified as a teacher in Pennsylvania are set forth in attachment 4.

7. According to Department records, Ms. Wagner obtained Level I certification effective May 1, 2001 (Elementary K-6).

8.

9. The Department's policy concerning emergency permits is set forth in attachment 5.

10.

11. The Department's policy concerning out-of-state candidates is set forth in attachment 6.

12. According to Department records, Naomi T. Uy-Moore does not currently hold a Level I certification in Pennsylvania.

13. According to Department records, on January 1, 2006 Crawford Central School District was granted an emergency permit for an Elementary K-6 position. The beneficiary of this permit was Naomi T. Uy-Moore.

14. According to Department records, Crawford Central School District was granted emergency permits on August 14, 2000, August 7, 2001, August 15, 2002, August 9, 2004 and August 11, 2005 for all subject areas. The beneficiary was Catherine C. Bainbridge.

15. According to Department records:
Susan Baker received initial certification on June 1, 2002.
Lisa Shuffstall received initial certification on August 1, 2004.
Leslie Jenson cannot be found in the Department's database.
Naomi Yu-Moore does not hold approved certification.

16. Questions regarding other statutes and regulations that Pennsylvania school districts must observe are beyond the scope of my knowledge and responsibilities as Chief of the Division of Candidate Evaluation Services.

Encl: Attachments 1-6

Charles P. Sabulski
Chief
Division of Candidate Evaluation Services
Bureau of Teacher certification & Preparation

Sworn to and subscribed before me, this __10th__ day of July, 2006.

_____
Notary Public

NOTARIAL SEAL
CAROL J. HROBAK, NOTARY PUBLIC
CITY OF HARRISBURG, DAUPHIN CO.
MY COMMISSION EXPIRES SEPT. 27, 2007

# 4

Charles P. Sabulski
100 Ringneck Drive
Harrisburg, Pennsylvania 17112
csabulski@state.pa.us
(717) 783-9260 Work
(717) 233-1742 Home


ADDENDUM TO RESUME

Pennsylvania Department of Education, Harrisburg, Pennsylvania

Basic Education Associate 2                    February 2004-~~Present~~ January 2006
Regional Director
Bureau of Curriculum and Academic Services
Division of Professional Education and Planning

**Professional Education Coordinator:**

Is responsible for the continued, evolutionary development of the concept and process of
the Professional Education Program. After careful consideration of quality control
information and needs assessment data from school entities, the coordinator is
responsible for proposing revised procedures; schedules and resource allocations need to
meet the needs of Professional Education. The Professional Education Program, which
requires each school district, charter school, AVTS, and intermediate unit to undertake a
program of professional education planning once every three years and induction
planning every six years. The plan must detail the means by which the school entity will
meet the mandates of Act 48 Professional Development and associated guidelines and
criteria, which serve as professional development standards. The coordinator determines
and recommends procedures to sustain high quality plans and community wide
participation in the planning process. This effort is one of the Department's primary
vehicles for managing and monitoring the link between the goals and objectives set forth
in the Strategic Plans as the objectives of the professional Education and Induction Plans
are the means to the end increased student achievement throughout the Commonwealth as
required by Chapter 4, Academic Standards and Assessment.

Primary statewide responsibility and leadership for policy development and technical
assistance for Pennsylvania's Profession Education required for every certified educator
under Act 48 Professional Development and Chapter 49 Teacher Certification, section
and Induction. Has oversight administrative responsibilities regarding the graduate-level
credit courses to meet continuing professional education needs and the awarding of
Department of Education Professional Education Credits to certified educators who
successfully complete approved courses. These courses must meet graduate level
standards in order that the courses contribute to credits needed for progression from an
Instructional/Educational Specialist level 1 certificate to a Level 2 certificate. Trend

analysis and communication with the regional intermediate unit professional education councils that the Department empowers with approval to conduct credit (in-service) continuing professional education courses.

Responsible for the Department's coordination of the Professional Education & Induction, preparation of policy guidelines (Professional Education Plan Guidelines & Induction Plan Guidelines).

### Team Leader:

Team leadership of the Governor's Institutes for Educators: Directs the work of the Administrative Assistant assigned to work with the Institutes and provide leadership to other advisers within the Office of Elementary and Secondary Education who serve as institute program directors. The professional development institutes, known as the Governor's Institutes that are implemented, annually in June, July and August, are planned by steering committees throughout the year. Leadership of the institutes necessitates extensive travel during the three months noted. Coordination of recourses, collaboration with the program directors and affiliated site-directors, negotiation with the State System of Higher Education-Chancellor's Office regarding the awarding of graduate level credits and providing evidence of program validity is the Leader's responsibility. .

### State Liaison to the Pennsylvania Staff Development Council:

PDE liaison to the Pennsylvania Staff Development Council: Provides the organizations interface with the sponsoring sate education agency. A through knowledge of results driven best professional development practice is critical to the administrative liaison work.

### Regional Director:

Regional Director for Region 3 ( IU's 18 & 19) and Region 7 ( IU's 1,2,3,7 & 27): Provides direct technical assistance and reviews and accepts/approves the Strategic, Professional Education, and Teacher Induction Plans submitted by school districts, Career & Technical Centers, Charter Schools and the Intermediate Units, as well as the review and approval of intermediate unit continuing professional education credit course applications from that region.

Oversight administrative responsibilities regarding the graduate-level credit courses to meet continuing professional education needs and the awarding of Department of Education Professional Education Credits to certified educators who successfully complete approved courses.

Provides direct technical assistance to IU's and school districts in Regions 3 & 7. Reviews and accepts/approves the Strategic, Professional Education, and teacher Induction Plans submitted by school districts, Career and Technical Centers, Charter Schools and IU's in these regions.

Provided assistance and insight in the ongoing development of "Leading for Learning", the proposed framework for District Strategic Planning.

Holds National Certification as an Adult Education Program Accreditation Examiner. Conducts on-site evaluation of Career & Technical Centers that have applied for certification to be approved as an accredited institution for Adult Learning.

Member of Committee to advance the availability of disciplines in Biotechnology and Nanotechnology in the secondary schools of the Commonwealth. To participate in the development of curriculum for both of these disciplines and to assist in the planning of the annual "Biotechnology Day" at the State Capitol.

Charles P. Sabulski
RR1 Box 135
Dallas, Pennsylvania 18612
(570) 675-5815 Home
(570) 328-7647 Cellular

## ADDENDUM TO RESUME

Pennsylvania State Department Of Education, Harrisburg, Pennsylvania

General Vocational Education Advisor                    September 2002-~~Present~~ February 2004
Division of Field Support

> ➢ Coordinate local on-site technical assistance team visits to ensure that statewide local education agencies (LEAs) achieve minimum program accountability requirements and performance standards.

> ➢ Assist with the selection of LEAs identified for on-site technical assistance.

> ➢ Analyze available Department data information on the selected LEA to determine appropriate technical assistance needs.

> ➢ Organize the LEA on site visit including assembling of technical assistance teams based on identified technical assistance needs.

> ➢ Coordinate with LEA on-site visit team members the dates and times for the technical assistance visits.

> ➢ Facilitate the opening and exiting meetings conducted on-site at LEAs.

> ➢ Coordinate on-site technical assistance performance reports to LEAs.

> ➢ Serve as a member advisor to on-site technical assistance teams. Assist team leader in conducting the appropriate interviews, review of on-site documentation, and other responsibilities as assigned.

> ➢ Serve as the liaison for issues associated with state audits and vocational average daily membership (VADMs) with the Department's Division of Subsidy Data and Administration. Interact with the Department's Division of Subsidy Data and Administration to resolve audit findings. Maintain communications with LEAs regarding audit findings and disposition.

➢ Coordinate the planning and implementation of the celebration of Career and Technical Education Week activities. Identify planning committee members and conduct meetings related to the planning of the activities associated with Career and Technical Education week. Develop plans and establish timelines for the culmination of the celebration of Career and technical Education Week. Prepare announcements/letters/public relations materials for Press and Communications approval. Arrange locations for activities and/exhibits, draft floor plan designing appropriate exhibits' locations. Provide written and oral communications to schools, legislators, and organizations participating in the activities.

➢ Coordinate the Congress-Bundestag (Open Door) Student Exchange Program. Contact national sponsor of the exchange program for current quidelines and directions for year. Contact the Department's Office of Press and Communications to facilitate the Penn Link announcement. Facilitate the interview and selection process.

➢ Coordinate the selection and submission of articles to the Pennsylvania School Boards Association (PBSA) related to career and technical education.

Charles P. Sabulski
RR1 Box 135
Dallas, Pennsylvania 18612
(570) 675-5815 Home
(570) 328-7647 Cellular

ADDENDUM TO RESUME

Pennsylvania State Department Of Health, Harrisburg, Pennsylvania

Public Health Program Assistant Administrator          April 2002-September 2002
Division of Newborn Disease Prevention and Identification

> Manages and provides direct follow-up services in the statewide Newborn
  Screening and Follow-up Program for newborns with inconclusive test results.
  Serves as liaison and contact person and provides test results for physicians,
  hospital coordinators and parents of infants with abnormal or inconclusive test
  results.

> Coordination, including contract development and maintenance, of the component
  of the newborn screening program associated with the care of patients with
  metabolic conditions.

> In the Metabolic Disease Program, maintains and manages the purchase and
  statewide distribution of metabolic formula for Phenylketonuria (PKU) and
  Maple Syrup Urine Disease (MSUD) patients, coordinates record keeping and
  billing with the Women, Infants, and Children (WIC), insurance companies,
  Children's Health Insurance Program (CHIP) and Medical Assistance (MA)
  programs for reimbursement of the metabolic formula for eligible patients.

> Manages and conducts the solicitation, monitoring, development and compilation
  of semi-annual hospital reports involving the approximately 150 birthing facilities
  statewide.

> Participates with the nursing staff in developing newborn screening guidelines,
  rules, regulations and procedures.

> Develops and maintains a manual of program computer procedures. For all
  newborn screening program staff, the manual describes all regular and periodic
  computer functions including the daily merge of laboratory results, the daily
  backup of newborn screening records and the backup of word processing files, the
  creation of an archival tape of records and the purge of newborn screening
  records. Develops and maintains a calendar, which provides staff with a schedule
  of required computer functions.

➢ Generates correspondence for parents, physicians and hospital coordinators to report abnormal and inconclusive test results and describes follow-up. Communicates with the contract screening laboratory regarding patient information/patient records. Organizes newborn screening records for archival storage.

> Serves as the metabolic formula coordinator in a statewide program organized to ensure access to comprehensive and quality services for newborns, children and women of childbearing age with PKU. The program provides services through contracts with specialized treatment centers in conjunction with community health nurses, and provides the special metabolic products required to prevent mental retardation for all PKU patients in Pennsylvania. Approximately 300 Pennsylvania patients with PKU and MSUD utilize about 6,000 cases of formula a year, currently involving 13 different metabolic products.

➢ Requisitions prescribed metabolic products (formula) for distribution to staff in the state's PKU Treatment Centers, the County Health Departments and the State Health Centers. Provide formula on an emergency basis when staff in the Treatment centers or CHNs make urgent requests by phone. Provides information upon request from CHNs regarding ordering procedures. Is liaison to PKU service providers and Community Health Nurses regarding formula. Responds to questions relating to program policies and procedures with regard to ordering PKU formula or other problems. Advises program director of problems/issues requiring special attention/intervention.

➢ Provides professional and technical expertise, assistance and advice in expanding the PKU pilot project into a statewide program. Responds to questions on policy and program standards from pharmacists, PKU service providers and patients. Assists in the training and provides information to PKU service providers and Community Health Nurses in the implementation of the statewide program.

➢ Develops and implements reports and information systems required to delineate needs and services. Prepares reports and analyzes findings as part of the on-going evaluation and modification of the newborn screening program.

➢ Assists in the organization and provides staff support for periodic meetings of the directors of the metabolic treatment centers. Provides staff support for the Newborn Screening Technical Advisory Committee.

## ACCOMPLISHMENTS

➢ Established effective formula distribution system utilizing the State's EPPro System which leads to more streamline ordering and tracking procedures.

➢ Established effective tracking system for unacceptable newborn screening results which led to a procedure for providing less opportunities for exclusion of tests not detected in the system.

➢ Established an effective solution for future metabolic formula distribution in order to streamline procedures and cut costs.

➢ Reorganized and updated birthing facility listing by contacting each institution for information which would update and enhance this listing.

## VOLUNTEER

➢ 2002 U. S. Savings Bond Drive Coordinator for the Division.

Charles P. Sabulski
RR1 Box 135
Dallas, Pennsylvania 18612
(570) 675-5815 Home
(570) 328-7647 Cellular

## ADDENDUM TO RESUME

Harrison Career Institute, Kingston, Pennsylvania

Staff Teacher/Assistant Director: Medical Assistant Program    January 2000-April 2002

- ➢ Teach various academic subjects to students of the Harrison Career Institute which includes two separate classes: One day class and one evening class. Instruction includes the following subjects:

> Medical Terminology
> Anatomy & Physiology
> Medical Laboratory Techniques/Phlebotomy
> Office Surgery & Aseptic Techniques
> Physical Examination Techniques
> Patient History
> Vital Signs
> Structures of the Heart/ECG Procedures
> Pharmacology, Prescriptions & Injections
> First Aid & CPR
> Medical Office Procedures
> Medical Ethics & Law
> Employment Search Strategies

- ➢ Plan goals, curriculum and instructional materials. Follow academic curricula adaptations and modifications as required.

- ➢ Lecture, demonstrate, and use audiovisual teaching aids to present subject matter.

- > Develop lesson plans, assign lessons, correct assignments, administer and grade tests. Evaluate student progress; counsel students on academic problem areas.

- ➢ Emphasis on student interaction, class/student oral presentation to promote communication skills and comprehension of subject matter.

- ➢ Participate in faculty meetings and discussions to enhance the student learning process.

> Coordinate student Externship Program with local health facilities.

> Cooperation with the area health care facilities in Wilkes-Barre and Scranton for the purpose of employment opportunities for the graduating students.

### AWARDS

> Year 2000 Instructor of the Year (Runner-up) for the entire Corporation of 12 schools and over 120 instructors.

> Year 2001 Employee of the Year (Runner-up) for the entire Corporation of 15 schools and over 150 instructors.

> Year 2001 Second Place Award for Highest Student Retention for the entire Corporation.

### PROMOTIONS

> Appointed as Assistant Director of the Kingston Campus February 2002

### ACCOMPLISHMENTS

> Established aggressive tutoring program for students requiring additional academic attention with course material and for preparation for National Certification Testing.

> Established aggressive employment preparation course for students preparing to graduate into the work environment.

> Established aggressive employment search network for students preparing to graduate into the work environment.

> Designated as Lead Instructor to assist and guide new instructors with the teaching techniques and administrative duties.

### VOLUNTEER

> Catholic Religious Instructor: Grade School Students, Holy Trinity Church, South Street, Wilkes-Barre, Pennsylvania

## PROFESSIONAL OBJECTIVE

Highly successful Health Care Administrator and Chief Health Services Technician now seeking challenging career position in health care setting or business environment capitalizing on my Management, Administration, Sales-Marketing experience, as well as my organization/planning skills and capabilities in numerous areas of Health Care Administration/Health Services.

## EDUCATION

GEORGE WASHINGTON UNIVERSITY, Washington, D.C.
*Bachelor of Science Degree; major – Health Sciences; GPA 3.5; cum laude graduate; awarded May 1999*

NEW YORK STATE UNIVERSITY, Albany, New York
*Associate of Science Degree – major - Science; GPA 3.6; cum laude graduate; awarded June 1982*

G.A.R. HIGH SCHOOL, Wilkes-Barre, Pennsylvania
*Graduated June 1972*

## EDUCATION AWARD

*The National Society of Collegiate Scholars*

## INSURANCE LICENSES

*Pennsylvania Variable Annuities License, July 1999...Pennsylvania Securities License, March 1999......Pennsylvania Life, Health, Accident and Fixed Annuities License, June 1995*

## REAL ESTATE MEMBERSHIPS/LICENSE

*Pennsylvania Realtors Association...Greater Wilkes-Barre Realtors Association...Pennsylvania Real Estate License, December 1994*

## INSTRUCTOR CERTIFICATE

*Pennsylvania Driver Instructor Certification, August 1999*

## MEMBERSHIPS

*Holy Trinity Roman Catholic Church, Wilkes-Barre...Vietnam War Veterans Association...The Nature Conservancy...Sierra Nature Club...Center for Marine Conservation.*

## MEDICAL CERTIFICATION

*Cardio Pulmonary Resuscitation (CPR) Qualified, May 1999*

## MILITARY HIGHLIGHTS

## MILITARY HIGHLIGHTS

### Military Service

*U.S. Coast Guard (1974 to 1994) - Retired Chief Health Services Technician (September 1994). Rank - Chief Petty Officer.*

### Service Awards

*Medal of Commendation...Two Medals of Achievement...Second Place Coast Guard Health Services Technician of the Year Award (1992)...Good Conduct Awards (six).*

### Specialized Medical Training/Certifications

*Clinical and Administrative Health Care Training: Medical/Dental Billing...Medical/Dental Preauthorizations...Health and Dental Care Insurance...Contracting of Medical/Dental Direct Care...Medical Disabilities Management...Medical Records Management...Pharmacy Management...Laboratory Management...Dental Clinic Management....X Ray Management...Emergency Room Management...Health Care Equipment Procurement...Medical/Dental Appointments and Referrals...Inpatient Care Management. Hospital Corpsman Course held at USCG Academy.*

### Official Military Recognitions

~  *Letter of commendation/recommendation from Lt. Commander Carol C. Bennett, USCG, 1994*

~  *Coast Guard Commendation Medal for outstanding achievement from November 1991 to August 1994, awarded June 16, 1995 by J.M. Loy, Vice Admiral, USCG Commander, Atlantic Area*

~  *Coast Guard Achievement Medal for superior performance of duty from July 1987 to November 1991, awarded April 2, 1992 by J.N. Faigle, Read Admiral, USCG Commander and Logistics Command Atlantic*

### Certified Appointments

~  *Appointed Chief Health Service Technician December 1, 1989 signed G.D. Passmore Rear Admiral, USCG Chief, Office of Personnel and Training and P.A. Yost, Admiral, USCG Commandant, signed at Washington, D.C.*

~  *Appointed Chief Health Service's Technician December 1, 1989 signed A.E. Henn Rear Admiral (Lower Half), USCG Commander, MLC Atlantic and P.A. Yost, Admiral, USCG Commandant, signed at Washington, D.C.*

~  *Appointed Hospital Corpsman First Class June 1, 1979 signed D.L. Parr, Commander, USCG Commanding Officer, signed at USCGC Decisive (WMEC 629)*

~  *Appointed Hospital Corpsman Second Class December 16, 1977 signed C.B. Hathaway, Captain, USCG Commanding Officer USCG Tracen, signed at Cape May, New Jersey.*

~  *Appointed Hospital Corpsman, Number 47622 issued June 15, 1976, signed H.C. Teel, LCDR, USCG Officer-in-Charge and E.P. Joyce, Lt., USCG, BUDOR, C.O. of Enlisted Personnel.*

PROFESSIONAL EXPERIENCE/MILITARY SECTOR

HEALTH CARE ADMINISTRATION/HEALTH SERVICES

*Nov 1991*
*to*
*Aug 1994*

UNITED STATES COAST GUARD/CUTTER GALLATIN AND GOVERNOR'S ISLAND, New York
*Medical Division Officer*
*Occupational Safety and Health Agency (OSHA) Administrator*
*Chief Health Services Technician*

### *Overall Management Responsibilities*

- Overall responsibilities throughout tenure as a health care provider for the United States Coast Guard Cutter Gallatin included: Administration, Operations, Financial, Project Management, and Personnel Management. Experienced in developmental areas of Planning and Organization, Human Resources Development/Staff Training, Quality Assurance, and Data Processing Administration.
- As first healthcare provider aboard the recommissioned USCG Cutter Gallatin, solely established the administrative infrastructure to meet medical needs of a 180-person command.
- Worked closely with job supervisors to ensure all personnel received proper on site training.
- Remained abreast of constantly changing environmental, health and safety regulations. Maintained a continuous liaison with land-base counterparts. OSHA Coordinator for Gallatin.
- Continually updated health programs to reflect changes in the healthcare industry. Ensured Gallatin medical facility remained in compliance with all applicable laws and regulations.
- Through active liaison with civilian counterparts, compiled comprehensive list of referral services which effectively maximized health care opportunities for Gallatin personnel within the New York metropolitan area.

### *Health Care Administration*

- Responsible for administrating, negotiating and evaluating all contract health services for over 8,500 employees and their families in the New York City area.
- Administered related fiscal operations, such as budget planning, accounting, and establishing rates for health care services.
- Facilitator in negotiating improvements, expansion, and/or building new outpatient health services facilities.
- Responsibilities included project study in structuring and reorganizing entire outpatient facility based in New York City servicing 53,000 patients annually. Project involved observation and assessment of all medical services provided, such as: Pharmacy...Laboratory...X Ray...Psychiatry...Orthopedics... OB/GYN...Pediatrics...Physical Therapy...Emergency Care...Dental Care.
- Directed and coordinated activities of medical, nursing, and administrative staffs and services at outpatient facilities which included development of policies and procedures.
- Conducted studies to improve internal operations. Recommended cost savings methods and hospital supply changes to effect economy of all operations.
- Established clinic policies and procedures in cooperation with other designated officials. Reviewed clinic activities; recommended changes or improvements in utilization of facilities, services, and staff.
- Negotiated purchase of supplies and medical equipment. Responsible for control of expenditures and related records, reports, and statistical data.
- Promoted public health and educational services. Oversaw all facility operations; developed and/or recommended procedures, treatments, or other course of action to assist medical staff.
- Assisted in installing, monitoring, and modifying a computer Health Care database tracking system which streamlined all patient services and supply expenditures.

*Accomplishments:*
- *Assisted in design and establishment of a $4.2 million Outpatient Health Services facility which included both medical and dental services in metropolitan area of Boston, Massachusetts.*

## *Health Care Management*

- Managed and directed health care of 300 employees and 600 family members throughout the Northern Coast of Maine.
- Responsible for ensuring optimum patient care management. Oversaw all facility operations and patient care delivery systems.
- Developed and implemented procedures and programs for patient care management and treatment.
- Coordinator in supervising delivery of $30,000+ in health care supplies, mainly medications and examination equipment to: the Baltic Nations of Estonia...Latvia...Lithuania...Gdansk, Poland...St. Petersburg, Russia.

## *Medical Staff Supervision*

- Directed, coordinated, and supervised 45 + Health Care Technicians and medical professionals of the USCG Cutter Gallatin and Governor's Island, New York. Responsible for scheduling, training, and evaluating performance.
- Also Coordinator and Supervisor of Health Care Resources consisting of 17 Technicians on thirteen Coast Guard Cutters responsible for providing direct health care of rescued Haitian and Cuban migrants during period December 1992 to February 1993.
- Supervised and trained upwards of 50 new Health Service Technicians designated for field ship duty or assignments at isolated stations.
- Reviewed and mediated all medical staff grievances; evaluated performance for advancement and/or changes in employment status.

## *Training Program Development*

- Developed and implemented several preventative health care programs including a comprehensive First Aid Program. Delivered lecture series on: weight control, drug screening, alcohol awareness, smoking cessation, and safety awareness. Results included number of smokers aboard Gallatin were substantially reduced; improvement in overall health and well being of crew; no major personnel injuries.
- Developed occupational Safety and Health initiatives, including Heat Stress and Alcohol Awareness Programs, achieved a new level of excellence which were adopted by other floating units.
- Established first Medical Training Team; conducted training program for team's qualification to commence all Standard Training Requirements.
- Implemented aggressive Wellness Program which was directly responsible for crew's continued stamina over three deployments and two yard availabilities.
- Developed the Emergency Medical Technician Training Program including related budget. Directed training of 76 personnel over a two year period. All personnel qualified as EMT's in the State of Maine as well as on the National Registry.
- Developed and implemented a comprehensive program to medically screen and provide care to over 400 migrants.
- Developed and implemented Gallatin's Heat Stress, Sight Conservation, Hearing Conservation, and Fitness Programs.

*Accomplishments:*

~   *Achieved "zero" major safety violations or crew injuries. Gallatin successfully completed gunnery qualifications as a result of aggressive First Aid Training Program.*

## *Chief Health Services Technician*

- Speciality in performing all functions independently on sea assignments, as well as at base clinics. Also worked directly with physicians when present.
- Ensured all health requirements were up-to-date; i.e. immunizations, physicals, weight-ins, etc. to meet demands of a rigorous operational schedule.

- Responsible for structuring a complete Work Station Rotation Program, and independently established a full service Sick Bay on the Gallatin.
- As Chief Health Services Technician, performed all outpatient services required in treatment of military personnel and families.
- Responsibilities included patient assessment and diagnosis, treatment prescriptions, administering vitals, performing lab work, assisting physicians in minor medical and surgical procedures, as well as radiology functions, such as x-rays. Also extensive "hands on" physical therapy in patient care treatment.

*Accomplishments:*
- ~ *Named runner-up for the "1992 Coast Guard Health Services Technician of the Year" award.*

## Citations

~ *Cited for outstanding achievement as Medical Division Officer on board Gallatin from November 1991 to August 1994 in playing key role in Gallatin's return to active service following fleet renovations.*

~ *Recipient of Coast Guard Commendation Medal for Outstanding Achievement in all areas of performance from November 1991 to August 1994.*

~ *As Gallatin's OSHA Coordinator, demonstrated commitment to safety and well being of others which was second to none. Gallatin's heat stress, sight conservation, hearing conservation, and fitness programs were cited by the Atlantic Maintenance and Logistics Command as model programs, and have been fully adopted by other floating units.*

~ *Independently established full service Sick Bay on the Gallatin in less than two months with limited budget, no historical records, no established health or safety programs, no reference library, and no medical supplies.*

~ *Cited by the senior U.S. Naval Fleet Training Group Medical Rider as having the "best" Sick Bay operation of any ship in both the Navy and Coast Guard (1994). Again demonstrating outstanding results achieved in 1992 with an overall evaluation of 96%.*

~ *Through close liaison with the U.S. Navy, successfully prepared Gallatin's Medical Division for the Coast Guard's largest joint services alien migration interdiction operation (to date of citation). Served as the at-sea-resident medical expert for two migrant interdiction patrols. Continually provided advice and recommendations to Task Unit Commander. As a result, Joint Service Medical Programs were flawlessly implemented.*

~ *Performed active liaison with Coast Guard and Navy medical facilities in obtaining over $10,000 of surplus medical supplies ensuring Gallatin was ready to meet health demands of a rigorous operational schedule. Saved additional $3000 in clinic start-up costs by effectively networking with local, city, and state government agencies. Singlehandedly inventoried and stocked over $10,000 of medical supplies. Outstanding efforts of Training Program resulted in final shipboard medical evaluation of 94.5%.*

~ *Coordinated distribution of "no cost" surplus medical supplies in Eastern Europe to local Latvian and Lithuanian governmental agencies. These efforts significantly increased the spirit of international goodwill. Performed active liaison with the Eastern Europe medical community, and was instrumental in overwhelming success of Gallatin's visits to former Soviet-bloc satellite nations.*

~ *Superb liaison in Latvia and Lithuania, including distribution of medical supplies, played a critical role in success of historic visit to Eastern Europe.*

~ *As result of superb efforts in conducting Personal Qualification Standards Training, Gallatin arrived at Guantanomo Bay, Cuba, immediately qualified to meet training requirements.*

*Demonstrated exceptional medical expertise in Search and Rescue Mission off the Coast of Florida. Assessed injuries of victim in critical condition, and immediately stabilized patient; thus instrumental in saving patient's life.*

*Demonstrated unparalled commitment to quality medical care and safety...most heartily commended in keeping with highest traditions of the United States Coast Guard.*

*Recommended for the Coast Guard Meritorious Service Medal Award for exceptional service as the Medical Division Officer and the Occupational Safety and Health Administrative (OSHA) Officer aboard USCGC Gallatin for November 1991 to August 1994.*

*Cited for "playing an exceptional role in the transition of Gallatin from a hulk to a fully operational cutter. His superb professionalism and commitment to quality medical and safety programs aboard Gallatin were only exceeded by his compassion...throughout his tour, he not only enriched Gallatin but significantly affected the many lives Gallatin touched throughout her triumphant return to the fleet."*

## Letter of Recommendation excerpts from Lt. Commander Carol C. Bennett, USCG, 1994

*Within less than two months, created a superb customer-oriented Medical Clinic.*
*Developed a complete list of referral services, and maximized the healthcare opportunities for Coast Guard personnel within the New York/Metropolitan area.*
*Networked with local government agencies, and obtained a plethora of medical supplies, and services at minimal cost saving the Coast Guard thousands of dollars in clinic start up costs.*
*Planned and implemented a comprehensive Occupational Health and Safety Program.*
*As a result of his [Mr. Sabulski's] tireless efforts, Mr. Sabulski's Hearing Conservation, Sight Conservation, and Heart Stress Monitoring Programs set standard among U.S. Coast Guard cutters, and were often used as training models within the service.*
*Mr. Sabulski's keen sense of fiscal responsibility, combined with his superb administrative abilities, make him an ideal candidate for the challenge of healthcare administration.*

*July 1987*
*to*
*Nov 1991*

### COAST GUARD SUPPORT CENTER, New York
### Chief Petty Officer/Administration Section
### Supervisor/Health Services Division

- Established and maintained cohesive and effective teams in high pressure area of the clinic.
- Organized and arranged shipment of inactive health records to federal archives.
- Developed effective patient regulating and referral system.
- As liaison with staff of Bayley Seton Hospital, facilitated an environment which ensured expeditious medical care of Coast Guard personnel.
- Ensured patients referred to other medical facilities received proper care.

### Citations

*Recipient of Coast Guard Achievement Medal for Superior performance Duty (July 1987 to November 1991).*
*Greatly reduced backlog of physical examination reports.*
*Developed an effective patient regulating and referral system.*
*Superb restructuring of the referral system through utilization of the Baley Seton Hospital and other medical facilities saved the government thousands of dollars in medical payments.*
*Was instrumental in New York's Support Center receiving the "1988 Coast Guard Health Care Facility of the Year" award. And for an outstanding evaluation in the 1991 MLC Atlantic Quality Assurance Survey.*

## PRIVATE SECTOR EXPERIENCE

### REAL ESTATE SALES/MARKETING EXPERIENCE

Evans & O'Connor Real Estate, Wilkes-Barre, Pennsylvania  *June 1999 to Present*
Stan Urbanski Homes, Wilkes-Barre, Pennsylvania  *June 1999 to August 1999*
Rothstein Realtors, Mountaintop, Pennsylvania  *December 1994 to October 1996*

- As a licensed Real Estate Agent in State of Pennsylvania, responsible for sales of residential properties including some land sales for well established realtor developers and realty companies.
- Qualify buyer's market and individual potential buyers utilizing various market analysis techniques and methodology. Included are evaluation of current market trends and property values; assessment of potential buyer's characteristics, buying preferences, and financial circumstances.
- Negotiate terms and conditions of acquisitions and re-sale disposition of properties. Submit price proposals, advise parties concerned of contractual rights and obligations.
- Responsibilities include inspection and appraisal for property value. Recommend improvements or other actions consistent with standards required by the industry. Develop appraisal reports.
- Interact closely with banks and buyers in transacting loan approvals, financing, and drawing up real estate contracts, such as deeds, mortgages, ensuring non existence of liens or encumbrances prior to sale, and other related areas.
  *Accomplishments:*
  ~ *$400 thousand in sales under contract for Stan Urbanski Homes.*
  ~ *Approximately $500 thousand in sales under contract for Rothstein Realtors.*

### FINANCIAL SALES/MARKETING EXPERIENCE

PRIMERICA FINANCIAL SERVICES, Wilkes-Barre, Pennsylvania
*Personal Financial Analyst and Consultant*  *February 1998 to Present*

- Licensed Agent in sales and marketing of Life, Health, and Annuities, Series 6 and 63.
- Independently market various insurance, investment and securities' products throughout unrestricted territory in State of Pennsylvania. Lines include variable annuities, 401 K's, IRA's, and mutual funds. Market includes commercial, business and general public. Develop accounts through telephone, personal and group contact including referrals from existing satisfied clients.
  *Accomplishments:*
  ~ *Developed several accounts with excellent growth indicative of owning a business.*

### TEACHING EXPERIENCE

AAA AUTO CLUB, Wilkes-Barre, Pennsylvania
*Student Drivers' Instructor*  *August 1999 to Present*

- Pennsylvania State Certified Instructor by PA Department of Education. Teach from five to upwards of 30 high school students in both classroom setting and on the road.
- Follow AAA curricula in presentation of drivers' lesson plan; test and grade papers. Provide qualifying input in final passing of student based on assessment of written, oral, and on the road student performance.

CAREER PREPARATORY INSTITUTE, Kingston, Pennsylvania
### *Staff Teacher*

*Nov 1999*
*April 1995 to ~~Present~~*

- Teach various academic subjects to students of the Career Preparatory Institute which include basic Accounting courses, Business Math, Medical Terminology, Medical Office Procedures.
- Plan goals, curriculum and instructional materials. Follow academic curricula adaptations and modifications as required.
- Lecture, demonstrate, and use audiovisual teaching aids to present subject matter.
- Develop lesson plans; assign lessons, correct papers, administer and grade tests. Evaluate student progress; counsel students on academic problem areas.
- Emphasis in student interaction, class/student oral presentation to promote communication skills and comprehension of subject matter.
- Participate in faculty meetings and discussions to enhance the student learning experience.

## OTHER EXPERIENCE

AAA AUTO CLUB, Wilkes-Barre, Pennsylvania
### *Customer Service Agent*

*January 1999 to June 1999*

- Ensured optimum customer service and customer relations in servicing AAA clients. Responsibilities included administering vehicle title transfers, vehicle registrations, drivers' licenses. Also issuing of International Drivers' licenses, and various travel agent functions, such as auto trip planning for customers.

SALLIE MAE SERVICING CORPORATION, Wilkes-Barre, Pennsylvania
### *Marketing Representative and Claims Analyst*

*March 1998 to January 1999*

- Responsible for presentation and marketing of the various student loan repayment programs. Responsibilities included investigating and tracking of defaulted student loan owners, and preparation of defaulted student loans for submission for payment by student loan guarantors.

NATIONAL BOND AND COLLECTION, Forty-Fort, Pennsylvania
### *Collections Manager*
### *Sales Associate*

*August 1995 to March 1998*

- Responsible for overseeing seven individual collectors in the daily operations of the company.
- Required to obtain and maintain goals set forth by the company in telephone collections on overdue accounts for various companies and professional offices.
  *Accomplishments:*
  ~ *Consistently achieved or surpassed goals required for position.*

## VOLUNTEER



*Camp and Highway Beautification Program at Sallie Mae*

## PERSONAL

*DOB 6/29/54; married; willing to travel and relocate; area of preference: - Eastern/Central Pennsylvania.*

**CAREER PREPARATORY INSTITUTE**, Kingston, Pennsylvania

*Staff Teacher*                                                                 April 1995 to ~~Present~~   NOV 1999

- Teach various academic subjects to students of the Career Preparatory Institute which include basic Accounting courses, Business Math, Medical Terminology, Medical Office Procedures.
- Plan goals, curriculum and instructional materials. Follow academic curricula adaptations and modifications as required.
- Lecture, demonstrate, and use audiovisual teaching aids to present subject matter.
- Develop lesson plans; assign lessons, correct papers, administer and grade tests. Evaluate student progress; counsel students on academic problem areas.
- Emphasis in student interaction, class/student oral presentation to promote communication skills and comprehension of subject matter.
- Participate in faculty meetings and discussions to enhance the student learning experience.

## OTHER EXPERIENCE

**AAA AUTO CLUB**, Wilkes-Barre, Pennsylvania

*Customer Service Agent*                                                        January 1999 to June 1999

- Ensured optimum customer service and customer relations in servicing AAA clients. Responsibilities included administering vehicle title transfers, vehicle registrations, drivers' licenses. Also issuing of International Drivers' licenses, and various travel agent functions, such as auto trip planning for customers.

**SALLIE MAE SERVICING CORPORATION**, Wilkes-Barre, Pennsylvania

*Marketing Representative and Claims Analyst*                                    March 1998 to January 1999

- Responsible for presentation and marketing of the various student loan repayment programs. Responsibilities included investigating and tracking of defaulted student loan owners, and preparation of defaulted student loans for submission for payment by student loan guarantors.

**NATIONAL BOND AND COLLECTION**, Forty-Fort, Pennsylvania

*Collections Manager*                                                           August 1995 to March 1998
*Sales Associate*

- Responsible for overseeing seven individual collectors in the daily operations of the company.
- Required to obtain and maintain goals set forth by the company in telephone collections on overdue accounts for various companies and professional offices.
  *Accomplishments:*
  ~  *Consistently achieved or surpassed goals required for position.*

## VOLUNTEER

*Camp and Highway Beautification Program at Sallie Mae*

## PERSONAL

*DOB 6/29/54; married; willing to travel and relocate; area of preference: - Eastern/Central Pennsylvania.*



# RULES AND REGULATIONS

## Title 22--EDUCATION

## STATE BOARD OF EDUCATION

### [22 PA. CODE CH. 49]

### Certification of Professional Personnel

### [29 Pa.B. 4954]

The State Board of Education (Board) amends Chapter 49 (relating to certification of professional personnel) which relates to certification of professional personnel, to read as set forth at Annex A, under authority of Article XII and sections 1109, 1141, 2603-B and 2604-B of the Public School Code of 1949 (24 P. S. §§ 12-1201--12-1268, 11-1109, 11-1141, 26-2603-B and 26-2604-B).

Notice of proposed rulemaking was published at 27 Pa.B. 2011 (April 19, 1997) with an invitation to submit written comments within 30 days.

*Purpose*

Chapter 49 sets forth the basic rules for teacher preparation, certification and continuing professional development in this Commonwealth. These final-form regulations are designed to strengthen teacher education programs and provide support to novice teachers; to expand the assessment program to include performance and to provide for additional assessments; and, to provide a structure of professional education and certification which supports the Commonwealth's academic standards. These changes to Chapter 49 are the result of the Board's decennial review of the chapter as required by § 49.51 (relating to review of certification).

*Response to Public Comment*

*Alternate Entry*:

Considerable public comment was received on the proposal to permit equivalent education and experience to take the place of formal teacher preparation and recommendation for certification. A new section, § 49.13(b)(12) (relating to policies), was proposed which would have delegated to the Secretary of Education the responsibility to establish equivalencies of education and experience for all certificate areas. Language permitting equivalencies was found in the section establishing requirements for each of the broad areas of certification on proposed rulemaking. Most public comment was in opposition to equivalencies being established because it: (a) undermines the profession of teaching; (b) is contradictory to other areas of revision seeking to strengthen criteria for entry to the profession; and (c) is not justified by need due to a current and projected surplus of fully certified teachers. In addition, public commentators,

legislators and the Independent Regulatory Review Commission (IRRC) staff questioned whether equivalences were supportable under current statute. As a result, § 49.13(b)(12) has been removed on final-form along with all references to equivalencies under each major category of certificate. Several commentators, legislators and IRRC staff also suggested that language on experimental programs (§ 49.15 (relating to approval of experimental programs)), initially proposed for deletion be restored to enable teacher preparing institutions to design programs targeted to individuals not initially preparing for education professions. Thus, in conjunction with the removal of proposed § 49.13(b)(12), the Board has restored § 49.15 on final-form.

*Temporary Waivers*:

   Proposed § 49.13(b)(13) would have permitted the Secretary, upon petition by a local board of school directors, to waive requirements of certification temporarily. This provision was designed to allow schools a greater degree of flexibility in staffing when making curricula changes. Public comment on this provision was generally negative. Commentators: (a) warned that this provision would enable local boards to unnecessarily circumvent certification statute and regulation; (b) expressed the opinion that this provision is unwarranted because current provisions of regulation providing flexibility are rarely used; and (c) believed that waivers would undermine the profession. School administrators and school board members commented in favor of flexibility. Commentators, legislators and IRRC staff questioned the legal basis for waivers. As a result of comment, § 49.13(b)(13) has been removed on final-form.

*Professional Development*:

   As proposed, requirements for professional development applied to all professional educators regardless of the date of receipt of certificate. A number of comments received were supportive of this provision while others questioned the authority of the Board to establish this requirement. Legislators questioned the advisability of the Board establishing a professional development requirement when legislative proposals to do the same were under active consideration in the General Assembly. As such, proposed revisions have been eliminated and existing language restored in § 49.17 (relating to continuing professional development) on final-form. Related proposed revisions in §§ 49.83, 49.103, 49.111, 49.143 and 49.163 have been eliminated.

*Supervisory Certificates*:

   Revision to language on supervisory certificates was proposed to enable more generic supervisory certificates. Specifically, under § 49.111(a)(2) language which restricted supervisory certificates to single, specified areas was deleted in order to permit the Department to issue certificates in more general program areas. This proposed revision was based on the understanding of the Board that: (1) many of the skills of supervision were generic; (2) only larger school districts could afford subject specific supervisors, leaving smaller districts to rely instead on generally-trained principals to supervise teachers and curricula; and (3) supervisory certificates for program clusters would be within the reach of a greater number of school districts and improve instructional leadership. A majority of public commentators and the Professional Standards and Practices Commission supported specific single program supervisory certificates. Administrators favored more generic supervisory certificates. The Board continues to believe that supervisory certificates designed for clusters of subject areas are more feasible. As proposed, the language would continue to permit the Department to offer supervisory certificates in such areas as Reading, Special Education, Curriculum and Instruction and the like, but would also permit the Department to design supervisory certificates for clusters such as mathematics and science or English and language arts. As a result, the Board affirms its proposed revisions.

Additional and compelling public comment was received on the unique nature of vocational education and specific skills necessary for an individual to succeed supervising teachers and curricula in a vocational setting. As a result, the Board restored the provisions under § 49.161 (relating to Supervisor of Vocational Education) for Vocational Education Supervisor.

*Assuring Parallel Requirements for Certificates*:

Public comment was received that it was not clear that certificates issued to all educators provided similar requirements for continuing professional development, for successful completion of assessments, and for helping students to achieve the requirements of Chapter 4 (relating to academic standards and assessment). The Board has added language on final-form in several certificate areas to ensure that these requirements are clearly parallel.

Public commentators and legislators questioned proposed language requiring that all professional development activities for an educator be in the area of certification and assignment was too restrictive. As a result, the restriction has been removed permitting greater flexibility for professional development for the educator and the employing entity.

*Program and Certificate Standards*:

Public commentators, legislators and IRRC staff questioned whether the Board has the authority to delegate the development of general program standards and specific standards for certificates to the Department (for example, §§ 49.14(4); 49.81(b); 49.101; 49.111(a)(5)). To date, the Department has developed standards in consultation with the Board, where they have been presented and discussed in regular public meetings, and formally approved by the Board. While not meeting the current requirements of the regulatory review process, substantial opportunities were provided for public and legislative involvement. Revisions to final-form regulations seek to clarify the Board's responsibility to approve standards for certificates while maintaining the Department's ability to develop procedures and to issue interpretive policies and directives necessary to administer the regulation. The Board does not believe that it is practical and efficient for the Board to determine specific standards for each certificate and so continues to delegate that responsibility to the Department and will continue to consult with the Department in their development. Doing so does not lessen the Department's responsibility to develop and promulgate general and specific standards within the requirements of the Regulatory Review Act (71 P. S. §§ 745.1--745.15).

*Other Revisions on Final-Form*

Other changes, not based upon public comments, were made by the Board to clarify provisions in the document. These changes are included in the final-form. The original scope of proposed revisions was not expanded.

*Affected Parties*

All local education agencies, teacher preparing institutions, and perspective and current teachers and administrators are affected by these regulations.

*Cost and Paperwork Estimates*

*Assessments*:

With the expansion of assessment to include a measure of professional performance and to measure performance and knowledge at more points, additional costs will be incurred. It is difficult to accurately estimate these costs, but it is anticipated that the current cost of $230 for an applicant is likely to double at each of the initial and advanced certificate points. In development of the assessment program, the Department is directed to use, where appropriate available instructions to eliminate development costs. Costs for assessment may be shared among the applicant for certification, the preparing institution and the employing entity.

Candidates for initial certification (Instructional I, Intern, and Education Specialist I Certificates) are required to complete a range of tests under the National Teachers Exam (NTE). The cost for these tests are borne by the applicant for certification.

*Teacher Preparation Program Revisions*:

With new principles/standards for preparation programs, revisions will need to be made in these programs. It is difficult to measure the costs since the 91 institutions which offer at least one teacher preparation program vary in curricular design and delivery costs. However, it is assumed that the costs for revisions in programs will be similar to those costs engaged in program redesign regularly undertaken by institutions as required by changes in licensure or accreditation standards.

The requirement for approved programs to provide support to novice teachers in their first year of teaching will likely lead to some additional costs. It is envisioned that institutions, in cooperation with one another and employing appropriate technologies, will be able to accomplish this requirement while minimizing any additional cost.

*Effective Date*

These final-form regulations will become effective upon final publication in the *Pennsylvania Bulletin*.

*Sunset Date*

The effectiveness of Chapter 49 will be reviewed by the Board every 10 years, under § 49.51. Thus, no sunset date is necessary.

*Regulatory Review*

Under section 5(a) of the Regulatory Review Act (71 P. S. § 745.5(a)), on April 9, 1997, the Board submitted a copy of the notice of proposed rulemaking published at 27 Pa.B. 2011 to IRRC and to the Chairpersons of the House and Senate Committees on Education for review and comment. In compliance with section 5(c) of the Regulatory Review Act, the Board also provided IRRC and the Committees with copies of the comments received as well as other documentation.

In preparing these final-form regulations, the Board has considered the comments received from IRRC, the Committees and the public.

Final-form regulations were approved by the Committees on June 7, 1999, but were disapproved by IRRC on June 17, 1999, in accordance with section 5(c) of the Regulatory Review Act. Under section 7(a) of the Regulatory Review Act (71 P. S. § 745.7(a)), the Board notified the Governor, IRRC and the Standing Committees of its intent to revise final-form regulations and to proceed with its promulgation as revised, under section 7(c) of the Regulatory Review Act.

Two reasons were cited by IRRC for disapproval. First, IRRC questioned the authority of the Board to delegate to the Department responsibility for developing standards for certificates. Specifically, IRRC questioned the authority of the Board requiring candidates for certification to meet Department prescribed standards based on principles established in the revisions to the chapter. Variations on this delegation are found in §§ 49.42, 49.81 (b), 49.101, 49.111(a), 49.121(d) and 49.163. To address this concern, the Board revised the final-form regulations to adopt the principles as the standards for the major certificate categories. It is the Board's understanding that the authority delegated to the Department in § 49.13 (b)(3) and (10) continues to provide the Department with the authority and responsibility to establish procedures, administrative agency interpretative policies and directives relating to certification and staffing. This authority is consistent with the authority granted the Department generally by the Public School Code of 1949 (24 §§ 1-101--27-2702) and section 1302 of The Administrative Code of 1929 (71 P. S. § 352), as well as section 2 of the act of May 29, 1931 (P. L. 210, No. 126)(24 P. S.§ 1225).

Second, for reasons of clarity, IRRC questioned a provision in § 49.103 which would require applicants for an Educational Specialist II Certificate to complete 3 years of satisfactory teaching on an Educational Specialist I Certificate. This provision was questioned on proposed rulemaking by public commentators and IRRC. The Board has revised the final-form to correct the provision to require satisfactory service on the Educational Specialist I Certificate.

The report and revisions to the final form were submitted to the Standing Committees and IRRC on July 27, 1999, and were deemed approved by the Committees on August 6, 1999, and approved by IRRC on August 19, 1999, in accordance with section 5(c) of the Regulatory Review Act.

*Contact Person*

The official responsible for information on the Board's process of promulgating these final-form regulations is Peter H. Garland, Executive Director, State Board of Education, 333 Market Street, Harrisburg, PA 17126-0333, (717) 787-3787.

*Findings*

The Board finds that:

(1) Public notice of the intention to adopt these amendments was given under sections 201 and 202 of the act of July 31, 1968 (P. L. 769, No. 240) (45 P. S. §§ 1201 and 1202) and the regulations promulgated thereunder in 1 Pa. Code §§ 7.1 and 7.2.

(2) A public comment period was provided as required by law and all comments were considered.

(3) The amendments are necessary and appropriate for the administration of the Public School Code of 1949.

*Order*

The Board, acting under the authorizing statute, orders that:

(a) The regulations of the Board, 22 Pa. Code Chapter 49, are amended by amending §§ 49.1, 49.2, 49.11--49.18, 49.31--49.34, 49.41, 49.42, 49.51, 49.62, 49.62a, 49.63, 49.64a, 49.65, 49.68, 49.72, 49.81-- 49.83, 49.85, 49.91, 49.101--49.103, 49.105, 49.111, 49.121, 49.131, 49.133, 49.141--49.143, 49.151, 49.153, 49.161, 49.163, 49.171, 49.172 and 49.182; deleting 49.64b, 49.64c, 49.64d, 49.67, 49.112,

49.122, 49.162, 49.164, 49.183 and 49.184; and adding § 49.191 to read as set forth in Annex A.

(*Editor's Note*: Section 49.15 was proposed to be amended but the proposed amendments have been withdrawn and the text appears in its current version in Annex A.)

(b)  The Executive Director will submit this order and Annex A to the Office of General Counsel and the Office of Attorney General for review and approval as to legality and form as required by law.

(c)  The Executive Director of the Board shall certify this order and Annex A and deposit them with the Legislative Reference Bureau as required by law.

(d)  This order is effective upon final publication in the *Pennsylvania Bulletin*.

PETER H. GARLAND,
Executive Director

(*Editor's Note*: For the text of the order of the Independent Regulatory Review Commission relating to this document, see 29 Pa.B. 4749 (September 4, 1999).)

**Fiscal Note:** Fiscal Note 6-258 remains valid for the final adoption of the subject regulations.

## Annex A

## TITLE 22.  EDUCATION

## PART I.  STATE BOARD OF EDUCATION

## Subchapter C.  HIGHER EDUCATION

## CHAPTER 49.  CERTIFICATION OF PROFESSIONAL PERSONNEL

## Subchapter A.  GENERAL PROVISIONS

## THE PROGRAM

### § 49.1.  Definitions.

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

*Act*--The Public School Code of 1949 (24 P. S. §§ 1-101--27-2702).

*Approved teacher certification program*--A sequence of courses and experiences offered by a preparing institution which is reviewed and approved by the Department.

*Assessment of basic skills*--A measurement of a candidate's ability to communicate orally and in writing and to demonstrate proficiency in fundamental computational skills.

*Assessment of general knowledge*--A measurement of a candidate's knowledge in the fields of literature, fine arts, mathematics, the sciences and social studies.

*Assessment of professional knowledge and practice*--A measurement of a candidate's knowledge of educational theory, principles of human growth and development, educational psychology and other subjects directly related to educational practice and their application/demonstration in school settings.

*Assessment of subject matter*--A measurement of a candidate's knowledge of an academic field or discipline to be taught in the public schools of this Commonwealth.

*Candidate*--A person seeking certification in any of the areas outlined in this chapter.

*Certificate*--A document prepared and issued by the Department indicating that the holder has completed a professional preparation program and is qualified to perform specific professional duties.

*Chief school administrator*--The superintendent, intermediate unit executive director, or equivalent private school administrator.

*Collegiate studies*--Studies pursued at institutions which are entitled to apply to themselves the designation of college or university as defined by 24 Pa.C.S. Chapter 65 (relating to private colleges, universities and seminaries).

*Commissioned officer*--District superintendents and assistant district superintendents under section 1078 of the act (24 P. S. § 10-1078) (relating to Commissions; objections to election).

*Continuing professional development*--The formal acquisition of collegiate or in-service credits designed to improve and expand the expertise of professional personnel who receive their initial certificate in a given certificate category after June 1, 1987.

*Degree-granting institution*--A public college or technical institute which provides a 2 year, postsecondary college-parallel, terminal-general, terminal-technical, out-of-school youth or adult education program or a combination of these and which is established and operated under the act.

*Induction*--A process by which a variety of professional support services are provided to newly employed teachers and educational specialists under the guidance of professional personnel to facilitate entry into the education profession.

*Induction plan*--A description of the induction process developed and submitted by the school entity to the Department for approval which describes how a teacher or educational specialist will be introduced to the teaching profession under this chapter.

*Invalid certificate*--A certificate which no longer enables its holder to perform specific professional duties.

*Occupational competency credential*--A document issued by the Occupational Competency Testing Examiners which signifies that the holder possesses knowledge and skill in a technical field at a journeyman level. When the document is presented to a preparing institution or to the Department, it may be registered by the Department on the holder's vocational intern, vocational instructional or instructional certificate, and it enables the holder to teach that occupational specialty.

*Permit*--A document prepared and issued by the Department indicating that the holder is allowed to serve in lieu of a certificated professional for a specified period of time.

*Preparing institution*--A college or university that offers a program approved by the Department to prepare professional personnel for employment in the public schools.

*Professional duties*--A duty the performance of which is restricted to professional personnel by the scope of their certificate.

*Professional personnel*--Professional employes, excluding school secretaries, as defined in section 1101 of the act (24 P. S. § 11-1101) (relating to definitions).

*Professional Standards and Practices Commission (PSPC)*--A body composed of educators from the fields of basic and higher education, members of the general public, and an ex officio member of the Board established by the Teacher Certification Law.

*Satisfactory achievement*--An acceptable level of performance as determined by the Secretary in consultation with the Board on the Department prescribed assessments required in this chapter.

*School entity*--Public schools, school districts, intermediate units and area vocational-technical schools.

*Teacher Certification Law*--The act of December 12, 1973 (P. L. 397, No. 141) (24 P. S. §§ 2070.1--2070.18).

*Term of validity*--A period of time as specified in §§ 49.82, 49.92, 49.142 and 49.152 in which the holder of a certificate is entitled to perform the professional duties for which the certificate was issued.

## § 49.2. Inactivity and invalidity.

(a) *Inactivity.* A certificate or commission shall be inactive if the holder fails to meet § 49.17 (relating to continuing professional development).

(b) *Invalidity.* A certificate shall be invalid if the holder fails to meet, or if circumstances arise as specified in § 49.33, § 49.34(b), § 49.82, § 49.92, § 49.102, § 49.142 or § 49.152.

## § 49.11. General.

(a) Certificates and letters of eligibility in force in this Commonwealth on September 25, 1999, shall continue in force, subject to all the terms and conditions under which they were issued until they expire by virtue of their own limitations.

(b) State certificates and permits shall be issued as provided in this chapter, and teachers, and other professional personnel may not perform professional duties or services in the schools of this Commonwealth in any area for which they have not been properly certificated or permitted.

(c) This chapter establishes the specific requirements for the certification and permitting of persons serving in the public school entities of this Commonwealth as professional employes, temporary professional employes, substitutes, and commissioned school administrators of the Commonwealth.

## § 49.12. Eligibility.

In accordance with sections 1109, 1202 and 1209 of the act (24 P. S. §§ 11-1109, 12-1202 and 12-1209), every professional employe certificated or permitted to serve in the schools of this Commonwealth shall:

(1) Be of good moral character.

(2) Provide a physician's certificate stating that the applicant, with or without reasonable accommodation, is able to perform successfully the essential functions and duties of an educator. A qualified applicant who has tuberculosis or another communicable disease or a mental disability, will not be deemed to pose a direct threat to the health or safety of others unless a threat to health or safety cannot be eliminated by a reasonable accommodation.

(3) Be at least 18 years of age.

(4) Except in the case of the Temporary Permit, Vocational Instructional Intern Certificate, and Vocational Instructional Certificate, have earned minimally a baccalaureate degree as a general education requirement.

## § 49.13. Policies.

(a) The Board, through the Secretary, will provide standards for the guidance of the preparing institutions in educating professional personnel for the schools of this Commonwealth.

(b) The Department will have the following responsibilities with respect to certification and permitting of professional personnel in the schools of this Commonwealth:

(1) Provision of advisory services to college and school personnel in matters pertaining to teacher education and certification.

(2) Designation of professional titles for personnel.

(3) Prescription of procedures for issuance of certificates and permits.

(4) Evaluation and approval of teacher education programs leading to the certification and permitting of professional personnel. Program approval teams shall consist of professional educators from basic and higher education.

(5) Registration of certificated and permitted persons.

(6) Maintenance of records of all certificates and permits.

(7) Assurance that each professional person is properly certificated or permitted for the specific position in which the professional person is employed.

(8) Review and investigation of alleged violations of this chapter.

(9) Prescription of procedures approved by the Board for the appraisal and evaluation of education and experience of applicants for any type of professional certification issued by the Department when the

applicant has been denied certification and is prepared by institutions outside this Commonwealth or has appealed in accordance with guidelines approved by the Board in § 49.66 (relating to appeal procedure), a decision pertaining to eligibility for certification rendered by a Commonwealth institution having an approved program. The appellant initially shall have appealed to the institution.

(10) The issuance of administrative agency interpretative policies and directives relating to professional certification and staffing in the schools of this Commonwealth as may be necessary to carry out the intent of this chapter.

(11) Identification and approval of assessment tools, instruments, and procedures to measure basic skills and general knowledge; professional knowledge and practice; and subject matter knowledge.

(c) Except for applicants whose certification status is subject to subsection (b)(9) and § 49.171 (relating to general requirements), the Department will require that an applicant for a certificate shall have completed an approved program and shall be recommended by the preparing institution.

(d) The Department will have the right to review approved programs at any time. Major evaluations shall be conducted at 5-year intervals by teams of professional educators appointed by the Department in accordance with subsection (b)(4) and shall review process and content.

(e) The Department will accept the request of an institution to withdraw from an approved program. The Department will have the right to withdraw the approval of a program from an institution. New students may not be accepted in a program which has lost its approved status after the date of the action.

## § 49.14.  Approval of institutions.

To be authorized to conduct programs that lead to certificates for professional positions, institutions and any of their off-campus centers engaged in the preparation of teachers shall meet the following requirements:

(1) Be approved as a baccalaureate or graduate degree granting institution by the Department.

(2) Be evaluated and approved as a teacher-preparing institution to offer specific programs leading to certification in accordance with procedures established by the Department.

(3) Report to the Department, for approval, all planned changes in previously approved programs. This report shall be made 90 days prior to the implementation of the planned changes.

(4) Follow Department prescribed standards developed from the following principles:

(i) Institutions develop clear goals and purposes for each program, including attention to professional ethics and responsibilities.

(ii) Institutions are able to demonstrate how instructional and clinical activities provide educator candidates with the capacity to enable the achievement of all students.

(iii) Institutions are able to demonstrate that educator candidates have participated in instructional activities that enable the candidates to provide instruction to students to meet the provisions of Chapter 4 (relating to academic standards and assessment), including environment and ecology.

(iv) Institutions are able to demonstrate that educator candidates successfully participate in early and frequent clinical experiences fully integrated within the instructional program.

(v) Institutions have clearly expressed standards for admission to, retention in and graduation from approved programs and actively encourage the participation of students from historically underrepresented groups.

(vi) Institutions provide ongoing assessment of educator candidates' knowledge, skills, dispositions and performance with which to identify needs for further study or clinical experience or dismissal from the program.

(vii) Institutions can demonstrate how information from systematic evaluations of their programs, including students and educator evaluators, and achievement levels of candidates for certification in the Department-designed assessment program are used for continual program improvement.

(viii) Institutions, in partnership with local education agencies, provide a school-based experience integrating the teacher candidates' knowledge, skills and dispositions in professional practice. This experience shall be fully supported by institutional faculty, including frequent observation, consultation with supervising teachers, and opportunities for formative and summative evaluation.

(ix) Institutions provide ongoing support for novice educators in partnership with local education agencies during their induction period, including observation, consultation and assessment.

(x) Institutions provide evidence that an acceptable percentage of candidates applying for certification as determined by the Secretary and Board achieve at a satisfactory level all assessments appropriate to initial certification in each program for which they are approved.

## § 49.15.  Approval of experimental programs.

The Department may enter into a written agreement with a preparing institution wishing to conduct an experimental program. The institution shall meet the requirements described in § 49.14 (relating to approval of institutions). Certification shall be given to graduates of an experimental program upon recommendation by the institution if the institution has met all of the following requirements:

(1) Submitted a detailed explanation of the experimental program to the Department for approval.

(2) Planned a thorough procedure conforming to accepted canons of educational research for evaluating results of the experimental program. These results shall be reported to the Department in accordance with a schedule approved at the time of the agreement.

(3) Agreed to terminate the experimental program upon request by the Department when it is judged by a program approval team to be inadequate for preparation of professional personnel.

## § 49.16.  Approval of induction plans.

(a) Each school entity shall submit to the Department for approval a plan for the induction experience for first-year teachers and educational specialists as part of their strategic plan every 6 years as required by Chapter 4 (relating to academic standards and assessments). The induction plan shall be prepared by teacher or educational specialist representatives, or both, chosen by teachers and educational specialists and administrative representatives chosen by the administrative personnel of the school entity. Newly

employed professional personnel with prior school teaching experience may be required by the school entity to participate in an induction program.

(b)  The Department will review for approval induction plans submitted by school entities.

(c)  The induction plan shall reflect a mentor relationship between the first-year teacher or educational specialist, teacher educator and the induction team.

(d)  Criteria for approval of the induction plans will be established by the Secretary in consultation with the Board.

## § 49.17.  Continuing professional development.

(a)  A school entity shall submit to the Secretary for approval a continuing professional development plan in accordance with section 1205.1 of the act (24 P. S. § 12-1205.1).

(1)  A school entity shall develop a continuing professional development plan which shall include options for professional development including, but not limited to, activities such as the following:

(i)  Graduate level coursework.

(ii)  Obtaining a professionally related master's degree.

(iii)  Department-approved in-service courses.

(iv)  Curriculum development work.

(v)  Attendance at professional conferences.

(vi)  Supervised classroom observations of other professional employes.

(2)  The continuing professional plan shall define terms used including, but not limited to, the following:

(i)  Professionally related graduate level coursework.

(ii)  Professionally related master's degree.

(iii)  Curriculum development work.

(iv)  Professional conferences.

(v)  Supervised classroom observations of other professional employes.

(3)  The continuing professional development plan shall be developed by teacher representatives chosen by the teachers and administrative representatives chosen by the administrative personnel of the school entity. The plan shall describe the persons who developed the plan and how the persons were selected.

(4)  The continuing professional development plan submitted to the Secretary shall be approved by both the development committee and the board of the school entity.

(5) The Secretary will promulgate guidelines which include a process for amending approved continuing professional development plans in accordance with the requirements for initial preparation of the plans.

(6) The continuing professional development plan shall include a section which describes how the professional development needs of the school entity and its professional employes are to be met through implementation of the plan.

(7) Initial continuing professional development plans shall be implemented by a school entity no later than the beginning of the 1988-89 school year.

(b) A commissioned officer who obtains a Letter of Eligibility for Superintendent after June 1, 1987, shall, thereafter, present to the Secretary evidence of satisfactory completion of 6 credit hours of continuing professional development courses every 5 years. This subsection will be satisfied by taking collegiate studies or Department-approved in-service courses or a combination thereof.

(c) Professional personnel who fail to comply with the continuing professional development plan under subsection (a) or commissioned officers who fail to complete the required 6 credit hours under subsection (b) will have their certificates or commissions rendered inactive until the requirement is met.

(d) School districts that employ professional personnel or commissioned officers with inactive certificates or commissions are subject to penalties provided for under section 2518 of the act (24 P. S. § 25-2518).

## § 49.18.  Assessment.

(a) The Secretary will institute an assessment program for candidates for certification designed to assess their basic skills and general knowledge; professional knowledge and practice; and subject matter knowledge. The following principles shall guide the Secretary in the development of an assessment program:

(1) The assessment program will be based in the standards developed for each certificate.

(2) The assessment program will measure the candidate's abilities across the domains of basic skills knowledge, professional knowledge and practice, and subject matter knowledge employing a variety of measures at a minimum of three points:

(i) During the candidate's preparation program.

(ii) Upon application for initial certification.

(iii) Upon application for Level II, supervisory or administrative certification.

(3) The assessment program will be developed in consultation with teachers, administrators, teacher educators, and educational specialists with relevant certification.

(4) The assessment program will employ, when appropriate, available assessment tools, instruments and procedures.

(b) The Secretary, in consultation with the Board, will establish a satisfactory achievement level for the assessments in subsection (a).

(c) The assessments in basic skills and general knowledge; professional knowledge and practice; and subject matter knowledge will be given, and satisfactory achievement levels shall be reached, prior to the issuance of a certificate.

(d) A periodic review of the assessment program will be made by the Board every 3 years.

## EMERGENCY PERMITS

### § 49.31. Criteria for eligibility.

The Department may issue an emergency permit for service in the public schools, at the request of the employing public school entity, to an applicant who is a graduate of a 4-year college or university to fill a professional vacancy when a fully qualified and properly certificated applicant is not available. The emergency permit is issued on the basis of terms and conditions agreed upon between the requesting public school entity and the Department. Each July, the Department will report to the Board the number and nature of emergency permits issued during that year.

### § 49.32. Emergency cases.

The Department may approve the issuance of an emergency permit to a person at the request of a public school entity upon receiving appropriate evidence of exceptional conditions requiring Department resolution of the staffing problem.

### § 49.33. Expiration.

Emergency permits shall expire with the termination of any summer school conducted which follows the date of issuance. Persons holding an emergency permit shall be used in staffing summer school positions only when regular employes holding the appropriate provisional or permanent certificate are not available.

### § 49.34. Issuance by chief school administrator.

(a) The chief school administrator of a public school entity is authorized to issue an emergency permit for day-to-day service as a substitute when the following conditions are met:

(1) The person for whom the permit is sought holds a valid Pennsylvania certificate or its equivalent from another state.

(2) No appropriately certificated individual is available to fill the substitute position.

(3) The person for whom the permit is sought consents to an assignment outside the area of the person's certification.

(b) This permit shall be valid for 15 cumulative school days of service as a day-to-day substitute in each certificate endorsement area. If renewal is necessary, the chief school administrator may request, within 30 days of the person's last day of service, issuance of an emergency permit by the Department under §§ 49.31 and 49.32 (relating to criteria for eligibility; and emergency cases).

**[Continued on next Web Page]**

. has been drawn directly from the official *Pennsylvania Bulletin* full text database. Due to the of HTML or differences in display capabilities of different browsers, this version may differ n the official printed version.

#4



LEARN ABOUT  >  Commonly Asked Questions  >

Teaching in PA Home   Printable Version   Text-Only   Full-Screen   eMail

## About Certification for Applicants Prepared in Pennsylvania

These questions and answers are based on current regulations 22 PA Code Chapter 49, Certification of Professional Personnel as of September 1999.

### 1.  What is certification?

Certification is a process to verify the qualifications and proper training of each professional educator to execute his or her professional responsibilities.  All professional employees of public schools must hold a certificate.  The State Board of Education sets the standards and regulations for certification, and the Department of Education's Bureau of Teacher Certification and Preparation administers those standards and regulations.

### 2.  Do I need a certificate to hold a professional position in the public schools?

Yes.  All public schools and some private schools in Pennsylvania require their professional employees to be properly certified.

### 3. Must you hold a Pennsylvania certificate to substitute teach in a public school?

Yes.  Any professional serving in the public schools must hold an appropriate, valid Pennsylvania certificate.

### 4. Who on my campus can help me understand certification requirements?

All questions concerning requirements for professional certification should be directed to your adviser or the college/university certification office.

### 5. What type/area of certificate is required?

There are seven types of certificates:  Intern, Instructional, Vocational Instructional, Educational Specialist, Supervisory, Administrative and Letter of Eligibility.  Please refer to the list of Subject Areas and Codes on page nine (9), which includes the types and areas.  Individuals must hold a valid, appropriate certificate with the proper endorsement area corresponding to the job assignment in order to serve in a Pennsylvania public school.

### 6. What do the terms "Level I" and "Level II" mean?

Pennsylvania currently has two levels of certification.  The initial certificate, Level I, is valid for a specific number of service years, during which time you must complete established requirements.  Upon

completion of those requirements, the Level I may be converted to a Level II certificate.  If not converted, the Level I lapses.  You may not be employed in a Pennsylvania public school with a lapsed certificate.

### 7. How do I qualify for a certificate?

- Complete an approved education preparation program at the bachelor's or graduate level;
- Receive the recommendation of your preparing college/university;
- Meet all testing requirements established by the State Board of Education; and
- Meet all other requirements established by the School Code.

### 8. What testing requirements are currently necessary for certification?

Applicants requesting certification must complete the appropriate Pennsylvania testing requirements. Please refer to the PRAXIS Registration Bulletin, which indicates the appropriate tests required by Pennsylvania.

**IMPORTANT:**  Applicants must meet the qualifying scores in effect at the time of application for certification, regardless of the score in effect at the time the applicant takes the test.

Appropriate passing test scores will be accepted if the tests were taken within a five-year period prior to the postmarked date of your application for Pennsylvania certification.  To be official, test scores must be received by this office directly from the Educational Testing Service (ETS) or in an ETS-sealed, unopened envelope.  If you take the tests in Pennsylvania, the scores of teacher certification tests should be reported automatically to this Bureau by ETS.

Test dates, locations and registration procedures may be obtained by contacting:

> The Praxis Series              Telephone:  609-771-7395
> Educational Testing Service     Online: www.teachingandlearning.org
> PO Box 6051
> Princeton, NJ 08541-6051

**Note:**  Testing regulations are subject to change.

### 9. When should I take these tests?

This should be a decision between you and the certification officer or your adviser at your college/university.  Tests can be taken at any point during your preparation, but test scores are only valid for five years after the date a test is taken.  The Department  of Education encourages everyone to consider taking the tests as soon as they feel they are ready.

### 10. How should I send my test scores to the Department of Education?

If you take the tests in Pennsylvania, the scores will be sent to us automatically.  We will accept the scores for five years after the test administration. If you take any of the PRAXIS tests outside of Pennsylvania, please tell Educational Testing Services to send your score(s) to us by writing the code 8033 in the area where this information is requested.

### 11. Does my college/university need my scores?

Yes.  In order to process your application, your college/university needs all your test scores.  Please consult with your adviser or the certification office at your college/university or check the PRAXIS Series Registration Bulletin for the score recipient code for your college/university.  This four-digit number must be placed in the appropriate boxes on your test registration information.

### 12. Will my Instructional I or Educational Specialist I certificate expire if I don't teach?

No. The Instructional I and Educational Specialist I are valid for six years of service time spent in the public schools of Pennsylvania.

**NOTE:** This validity period is for ACTUAL school years of service, not calendar years. Under current regulations, the Instructional I and Educational Specialist I remain valid until the holder, teaching/serving in a professional capacity in the public schools of this state for 50 percent or more of the school year, expends the six years of service time. Once the holder reaches that milestone, he/she must convert the Level I to a Level II.

### 13. Can my initial Instructional or Educational Specialist certificate be renewed?

No. If you complete six years of service in Pennsylvania, your Level I Instructional or Educational Specialist certificate must be converted to a Level II, or the certificate becomes invalid. You may not teach on an invalid certificate, nor will an Emergency Permit be issued in its place.

### 14. How do I keep my certificate active?

Beginning July 1, 2000, Act 48 of 1999 requires people holding Pennsylvania professional educator certification to complete continuing education requirements every five years in order to maintain their certificates as active. This information will also be printed on the reverse side of your PA Professional Certificate.

### 15. How do I add a subject to my certificate?

To place additional subjects/fields on your certificate, you must complete an approved college/university preparation program and successfully meet the appropriate PRAXIS specialty area test requirement.

### 16. How do I apply for a name change on my certificate?

If your name has been legally changed, you should request a name change on your certificate. Form PDE 338 D is available at any school district, intermediate unit (IU) or area vocational-technical school (AVTS), as well as through this office. This form is also available on the Department of Education's website at www.pde.state.pa.us. There is no processing fee for a name change.

### 17. How do I apply for a duplicate certificate?

If you have lost your Pennsylvania certificate, you may order a duplicate. Form PDE 338 D is available at any school district, IU or AVTS, as well as through this office. This form is also available on the Department of Education's website at www.pde.state.pa.us. There is a processing fee for a duplicate certificate.

### 18. How do I find a teaching position in Pennsylvania?

School staffing is the responsibility of the chief school administrator in each school district. You should apply directly to the chief school administrator at the school district. The names and addresses of these officers are usually available in most college placement office libraries. Names and addresses of local school administrators are listed in the "Pennsylvania Education Directory", available for a fee from Applied Arts Publishers, Box 479, Lebanon, PA 17042 Telephone: (717) 272-9442. For those with access to the Internet, check the following Web sites: www.pde.state.pa.us (click on job vacancies), www.psea.org, or www.psba.org.

### 19. How do I contact the Bureau of Teacher Certification and Preparation?



#5

| | | **PA STATE AGENCIES** | **ONLINE SERVICES** |

SEARCH this site: [_____] [ OK ]   Site Map

PA Dept. of Education   Home   Pre K-12   Higher/Adult Education   Teaching   Libraries   Dept Info   Newsroom

---

**Learn About**

○ How to Obtain PA Certification

○ Testing Requirements

○ Certification Preparation Programs

○ Commonly Asked Questions

○ Finding a Teaching Position

○ Job Vacancies

○ Troops to Teachers

○ PA Certified? What's Next?

○ Act 48 / Continuing Professional Education

○ Grants and Funding

○ Professional Educator Discipline

**Access Services**

○ Teacher Certification System

○ Act 48 Reporting System

**Find Documents**

○ Applications and Forms

○ CSPG's

○ Comparable Out-of-State Documents

○ Institutional Program Approval

○ Educator Misconduct Complaints

○ Mandatory Report Form

○ Code of Professional Practice and Conduct for Educators

○ Standard Application for Teaching Positions

○ Teacher Tenure Appeal Opinions

---

Teaching in PA Home   Printable Version   Text-Only   Full-Screen   eMail

# Emergency Permits

An emergency permit is issued by the Department **upon the request of the employing public school entity** when a position has been advertised and no fully qualified and properly certificated applicant is available. The candidate for an emergency permit must have earned a bachelor's degree from a state-approved college or university and must meet all other eligibility requirements related to age, citizenship, mental and physical health and good moral character.

The emergency permit may be requested for an individual to serve in a vacant position or as a long-term or day-to-day substitute teacher. The permit is valid from the first day of the month of issuance until the last day of summer school in that school year and may be reissued in subsequent years upon the submission of the appropriate application to the Department from the public school entity and completion of conditions set by the Department.

Guidelines for the issuance of emergency permits are found under CSPG #13.

Content Last Modified on 6/1/2006 9:22:51 AM

Teaching in PA Home   Printable Version   Text-Only   Full-Screen   eMail

---

**teaching REGULATIONS**

Chapter 49
Chapter 354

 **act48** >>>
continuing professional education

Online Courses

**SPOTLIGHT**

○ Governor's Commission on Training America's Teachers

○ Bridge Certificate Program

○ ESL Requirements & Providers

○ Governor's Institutes

○ Teacher Evaluation Forms

○ Teacher of the Year

○ TIPS - Finding a Teaching Position

○ Title II Program Information

---

**information HANDOUTS**

Administrative Certification
Supervisory Certification
        District-wide, C&I
        District-wide, Pupil Personnel
        Single Area, K-12
Certification for Superintendent/Asst. Superintendent
Emergency Permit
Certification for Foreign-Educated Applicants

site TOOLS  

---

CSPG No. 13
July 1, 2004

## EMERGENCY PERMITS

**General Policies**

Emergency permits may be requested by the commissioned officer of the public school entities that have a permanent or temporary opening for a professional employee. The entity must have advertised that opening, and yet have no fully qualified and properly certified applicant available. The certificate is valid from the first day of the month of issuance until the last day of summer school in that school year. In the case of a permanent opening, the school entity must continue to make every effort to fill the vacancy with a fully qualified and properly certified professional employee except:

- when the position is slated to be collapsed, or
- when the vacancy occurs during the last half of the second semester, or
- when a Type 01 Emergency Permit is reissued.

**Requirements and Process**

Basic requirements for issuance:

- All requests must be made by submitting the appropriate application forms, fee and official transcripts in college-sealed envelopes confirming possession of a bachelor's degree, or a copy of any Pennsylvania Level I or II certificates held. A separate application and fee are required for each type code of emergency permit requested.

- A U.S. licensed physician must complete the health certification section of the application form unless the applicant was previously issued a Pennsylvania certificate or emergency permit.

- Those candidates who are not U.S. citizens and/or were educated outside of the U.S. must request supplemental information and instructions from the Bureau.

- Any application received after July 1 will be issued for the upcoming school year unless a letter from the chief school administrator accompanies the application stating that the emergency permit is needed for the current school year including summer school.

**Types of Emergency Permits**

1. **Vacant Position (Type 01)**

    a. A Type 01 is issued to fill a professional or temporary professional vacancy created as a new position or by the resignation, termination, retirement or death of an incumbent.

CSPG No. 13
July 1, 2004

### Issuance Requirements

- The educator is required to enroll in a state-approved teacher preparation/certification program **and** meet any Pennsylvania testing requirements which lead to Level I certification in the area(s) for which the permit is granted.

### Reissuance Requirements

- The credits required must be earned during the time the permit is effective. The requisite coursework that must be completed is as follows:

    - when effective date of initial issuance is between August 1 and December 31: 9 semester hours must be earned prior to permit reissuance.
    - when effective date of initial issuance is between January 1 and June 1: 6 semester hours must be earned prior to permit reissuance.

- If the chief school administrator requests <u>reissuance</u> of an emergency permit for an educator who has failed to meet the terms and conditions listed above, the chief school administrator must provide a letter of explanation supporting the extenuating circumstances. Extenuating circumstances, such as medical disability, must be documented in a letter signed by the chief school administrator and will be reviewed by the Bureau to determine the applicant's eligibility for permit reissuance.

- When an individual has completed all requisite coursework, the reissuance of an emergency permit for an employee who is unable to meet their testing obligations is limited to a single (1) time.

- The school entity must continue the employment of the emergency permit holder in subsequent years even though a person holding a Pennsylvania certificate becomes available for new employment. However, the incumbent employe must be eligible for reissuance by having served satisfactorily and met his/her educational obligation.

2. **Long-Term Substitute with Educational Obligation (Type 03)**

    a. A Type 03 is issued to fill a long-term substitute position which will exceed 15 consecutive days in a single assignment. The school entity with the concurrence of the substitute teacher can move the individual from the Type 03 to a Type 01 without having to re-advertise the position subject to bidding rights in local collective bargaining agreement.

CSPG No. 13
July 1, 2004

**Issuance Requirements**

- The educator is required to enroll in a state-approved teacher preparation/certification program **and** meet any Pennsylvania testing requirements which lead to Level I certification in the area(s) for which the permit is granted.

**Reissuance Requirements**

- The credits required must be earned during the time the permit is effective. The requisite coursework that must be completed is as follows:

    - when effective date of initial issuance is between August 1 and December 31: **9** semester hours must be earned prior to permit reissuance.
    - when effective date of initial issuance is between January 1 and June 1: **6** semester hours must be earned prior to permit reissuance.

3. **Long-Term Substitute—No Educational Obligation (Type 04)**

   a. A Type 04 is issued to fill a long-term substitute position which will exceed 30 consecutive days in a single assignment.

   **Issuance Requirements**

   - Candidates for the Type 04 must minimally hold a bachelor's degree and meet all other basic requirements for issuance.

   **Reissuance Requirements**

   - There is no educational obligation on the part of the educator if the public school entity requests permit reissuance in a subsequent school year. The educator is limited to one (1) initial issuance and one (1) reissuance.

   - If the employe is needed for subsequent years, the Bureau can issue a Type 03 permit at the request of the school entity with concurrence of the employee.

4. **Day-to-Day Substitute (Type 06)**

   a. A Type 06 is issued to qualify a person for service as a day-to-day substitute in a single assignment which will not exceed 15 consecutive days. If the assignment will exceed 15 consecutive days, the public school entity should request an emergency permit for a long-term substitute (Type 04).

CSPG No. 13
July 1, 2004

### Issuance Requirements

- Candidates for the Type 06 must minimally hold a bachelor's degree and meet all other basic requirements for issuance.

### Reissuance Requirements

- There is no educational obligation on the part of the educator if the public school entity requests permit reissuance in subsequent school years.

5. **Exchange Teacher (Type 08)**

   a. The Type 08 is issued to qualify a person to serve in place of the regularly employed teacher who has been granted an approved leave of absence to participate in the teacher exchange program.

### Issuance Requirements

- The permit can be issued to a foreign national who has been licensed, registered, or certified as a teacher in his/her country and is determined by the Bureau to be qualified as an exchange teacher in the schools of the Commonwealth.

- Public school entities interested in these permits should contact this Bureau for explicit information and instruction.

### Reissuance Requirements

- Type 08 permits are only reissued when the exchange program spans more than one calendar year.

**Vocational Instructional Areas**

Vocational emergency permits are issued for occupational and/or technology curriculum areas.

### Issuance Requirements

- Vocational candidates for a Type 01 or 03 must schedule an occupational competency assessment with a Pennsylvania-approved vocational certification college/university **and** must enroll in a Pennsylvania-approved intern program.

### Reissuance Requirements

CSPG No. 13
July 1, 2004

- With the exception of the Type 01, the reissuance rules are dependent on the type of emergency permit issued.

- When a candidate for Type 01 reissuance is unable to secure the recommendation for a vocational intern certificate, the emergency permit can only be reissued if the chief school administrator (commissioned officer) documents in a signed letter one of the following circumstances:

  - the candidate has satisfactorily completed all parts of the occupational/technical competency assessment, or

  - the candidate was unable to appear for occupational/technical competency assessments for reasons beyond his/her control, or

  - the candidate failed to satisfactorily complete the entire occupational/technical competency assessment but has been permitted by the respective occupational/technical competency test center coordinator to reschedule a second assessment because of his/her closeness to securing a passing threshold.

**Special Considerations**

1. The applicant for the emergency permit shall hold a bachelor's degree conferred by a state approved college/university. The exception to this requirement is...

   - Vocational Instructional areas (see above)

2. A public school entity may request an emergency permit even though it has an appropriately certified applicant for an available position when the chief school administrator documents one of the following exceptions:

   - The candidate demands a salary greater than that established in the locally-adopted salary schedule.

   - The candidate has documented unsatisfactory service in other school entities.

   - The candidate has resigned or been terminated for cause in accordance with §1122 of the Public School Code of 1949.

CSPG No. 13
July 1, 2004

3. Issuance by chief school administrator (commissioned officer): Persons holding a valid Pennsylvania certificate or its equivalent from another state may serve as a day-to-day substitute for 15 cumulative school days in each subject outside of their certificated area(s). If they are needed for more than 15 days in any area for which they are not certified and they are not certificated, an emergency permit must be requested.

4. The Bureau is unable to issue emergency permits in a subject area(s) voluntarily deleted from the certificate or listed on a lapsed Level I (Provisional) or expired Intern certificate in order to maintain the holder's eligibility for employment.

5. In accordance with Section 1202 of the Public School Code, a public school entity must request an emergency permit for a non-certified person who is delivering educational services to that public school entity upon a grant, tuition, or contractual basis.

6. Emergency permits may not be requested during a legal work stoppage.

7. The applicant may qualify for a Teacher Intern certificate if enrolled in an approved State Teacher Intern program at a Pennsylvania college/university and has passed required state assessments of basic skills and subject content. See CSPG #63 and Pennsylvania Department of Education website www.pde.state.pa.us.

**Reference:** 22 Pa. Code §§49.31, 49.32, 49.33, 49.34; 24 P.S. §11-1122

**Related CSPGs:** CSPG 2, CSPG 5, CSPG 14

*THIS REVISION SUPERSEDES ALL EARLIER CSPGS CARRYING THIS NUMBER AND/OR ADDRESSING THIS SUBJECT. PREVIOUS CSPG PRINTING DATES ON THIS SUBJECT: 3/75, 8/76, 1/87*





pennsylvania PA

PA STATE AGENCIES    ONLINE SERVICES

SEARCH this site: [ ] OK    Site Map

PA Dept. of Education    Home    Pre K-12    Higher/Adult Education    Teaching    Libraries    Dept Info

Learn About

- How to Obtain PA Certification
  - Certificates in PA
  - PA Graduates
  - Out-of-State Graduates
  - Vocational Certification
  - Administrative / Supervisory
  - Master's Equivalency
  - Private Academic Certificates
  - Teacher Evaluation Forms
- Testing Requirements
- Certification Preparation Programs
- Commonly Asked Questions
- Finding a Teaching Position
- Job Vacancies
- Troops to Teachers
- PA Certified? What's Next?
- Act 48 / Continuing Professional Education
- Grants and Funding
- Professional Educator Discipline

- Teaching in PA Home
- Site Map
- Site Feedback
- View as Text-Only

[ Login ]  [ Register ]

## New Regulations

Teaching in PA Home  Printable Version  Text-Only  Full-Screen  eMail

### New Regulations-IMPORTANT!

IMPORTANT: **NEW REGULATORY CHANGES AFFECTING ELIGIBILITY FOR PENNSYLVANIA EDUCATOR CERTIFICA**

**BEGINNING SEPTEMBER 1, 2003,** APPLICATIONS FOR TEAC CERTIFICATION WILL BE EVALUATED IN ACCORDANCE WITH FOLLOWING REQUIREMENTS OF CHAPTER 354 ESTABLISHED PENNSYLVANIA STATE BOARD OF EDUCATION

Grade Point Average (GPA) requirements: overall GPA as note

### If submitting a Bachelor's degree transcript:

Effective with all applications received September 1, 2003:  2.

Effective with all applications received September 1, 2004:  2.

Effective with all applications received September 1, 2005:  3.

### If submitting a Master's degree transcript:

Effective with all applications received September 1, 2003:  3.

**NOTE:** All references to a GPA are relative to a 4.0 scale.  App with credits on other scales must have the equivalent GPA.

### Academic Preparation in Math and English:  all applicants

Instructional and Educational Specialist certification must have achieved:

      6 semester hour credits (or the equivalent) in college mathematics; and

      3 semester hour credits (or the equivalent) in college English Composition; and

      3 semester hour credits (or the equivalent) in college English/American Literature.

**Interstate Agreement**:  Both testing and GPA requirements considered ancillary to the Interstate Agreement and states ar permitted to ask that both requirements be met before a certif issued.  In cases where the candidate has met all requirement certification, including tests and GPA, but does not have the re credits of math and 6 credits of English, Pennsylvania may issi Temporary Teaching Permit, valid for one calendar year.

Content Last Modified on 9/2/2004 8:25:00 AM

Teaching in PA Home  Printable Version  Text-Only  Full-Screen  eMail

Home ¦ K-12 Schools ¦ Higher/Adult Education ¦ Teaching ¦ Libraries ¦ Dept Info ¦ Newsroom

Send technical questions to: ra-edwebmaster@state.pa.us

pennsylvania PA

**PA STATE AGENCIES**    **ONLINE SERVICES**

SEARCH this site: [          ] [ OK ]    Site Map

ePDE
PA Dept. of Education

Home  Pre K-12  Higher/Adult Education  Teaching  Libraries  Dept Info

# Testing Requirements

Teaching in PA Home  Printable Version  Text-Only  Full-Screen  eMail

All candidates for initial certification in Pennsylvania must have earned at least a baccalaureate d completed an approved program of teacher education, and have passed The Praxis Series tests f certification area. Please note, the Pennsylvania Department of Education will recognize scores fc years from the date of the test administration.

## Who Must Take The Tests?

Individuals applying for an initial certificate (Instructional I) are required to take the PPST Readir Writing, PPST Mathematics, and Fundamental Subjects: Content Knowledge (all K-6 and K-12 are addition to the appropriate subject assessment test(s). All individuals seeking dual certification w required to be examined in both areas of specialization, and all persons who already have a valid Pennsylvania Instructional I or II certificate and wish to add another area to that certificate will b to take the appropriate subject assessment test.

Individuals applying for an Educational Specialist I certificate are required to take the PPST Read Writing, and PPST Mathematics in addition to the appropriate subject assessment test(s). Howev educational Specialist candidates with a baccalaureate degree who hold a current and valid Penns license as a registered nurse, dental hygienist, psychologist, counselor, or social worker, and can copy of this Pennsylvania license as part of their application for the related Pennsylvania Educatic Specialist certification area, are not required to take any tests to receive the related certificate.

Individuals seeking certification for Principal, Supervisor, Vocational Supervisor and Vocational Administrative Director must take the Educational Leadership: Administration and Supervision te

Note: Educators who hold an existing valid Pennsylvania Supervisor, Principal, or Letter of Eligib certificate and are adding any of these three areas or Vocational Supervisor Administrative Direc certificate will not be required to take any Praxis tests to add that area. Educators who are addir Vocational Supervisor or Vocational Administrative Director certificate to an existing valid Pennsy Vocational Administrative Director certificate will not be required to take any Praxis tests to add t The appropriate education program and experience must be completed as required by Pennsylva regulations.

Individuals seeking a Vocational Instructional I certificate must take the Pre-Professional Skills T (PPST) paper and pencil **OR** Computerized PPST in Reading and Writing. You may not take a Pra computerized test more than once in any given 60-day period. If you do so, the scores from your or subsequent testing will not be reported and your test fees will not be refunded.

Individuals seeking a Vocational Instructional II certificate must take the Vocational General Kno test, which is administered as a subject assessment test. The passing score that is in effect at th application for certification must be achieved.

All subject assessment tests, including the Supervisory test, will be administered through The Pra

Professional Assessments for Beginning Teachers.

It is the responsibility of the applicant to register for the proper subject assessment test. All canc
prepared by Pennsylvania institutions should pay careful attention to identifying and recording th
code number of the preparing institution (the college or university that will recommend you for
certification) on your registration form.

### Where Can You Get Registration Information?
Registration procedures, fees, and forms, as well as test dates and locations, are included in The
Series Registration Bulletin, which is available at college and university teacher education offices,
university test centers, or from Educational Testing Service at the following address:

The Praxis Series
Educational Testing Service
P.O. Box 6051
Princeton, NJ 08541-6051
Telephone: Voice (609) 771-7395 or (800) 772-9476
Online: http://www.ets.org/praxis

To obtain information about approved teacher education programs or for individuals who hold cei
in another state, contact:
Bureau of Teacher Certification and Preparation
Pennsylvania Department of Education
333 Market Street
Harrisburg, PA  17126-0333
Email:  ra-teachercert@state.pa.us

Content Last Modified on 11/10/2005 11:01:24 AM

Teaching in PA Home  Printable Version  Text-Only  Full-Screen  eMail

Copyright © 2001 Commonwealth of Pennsylvania. All Rights Reserved.
Commonwealth of PA Privacy Statement Credits Disclaimers



| pennsylvania **PA** | | PA STATE AGENCIES | ONLINE SERVICES |
| --- | --- | --- | --- |
| **e PDE** PA Dept. of Education | | SEARCH this site: [＿＿＿] [OK] | Site Map |

Home | Pre K-12 | Higher/Adult Education | Teaching | Libraries | Dept Info

## Out-of-State Graduates

Teaching in PA Home  Printable Version  Text-Only  Full-Screen  eMail

### Interstate Certification Agreements

1. Pennsylvania has signed an Interstate Agreement with 45 other states/jurisdictions based (
   mutually agreed-upon conditions of that contract. **It should be noted, however, that in
   candidates for Pennsylvania certification must complete the Praxis tests required
   Pennsylvania.** In order for this Bureau to evaluate an application using the Interstate Agr
   the candidate must provide verification that he/she has:

   - Been awarded a baccalaureate degree
   - Completed a state-approved teacher education program, including a supervised stud
     teaching experience, leading to a comparable or broader certificate in the member st
   - Received the recommendation from the certification officer at the college or universit
     application form designated by this Bureau
   - Complied with all ancillary requirements, including Pennsylvania tests and college mii
     grade-point average
   - Met all Pennsylvania requirements related to citizenship as well as moral, ethical and
     physical/mental fitness

2. Candidates who possess a valid and comparable (in subject and grade level scope) certifica
   by the **National Board for Professional Teaching Standards** will be issued a Profession
   Instructional II certificate. The applicant will not be asked to complete any additional requi
   for that certificate, including Praxis Series tests.

3. The following sections of the Interstate Agreement have not been signed by Pennsylvania:

   - Alternative preparation or alternative certification
   - Certification and experience without having completed an approved program
   - Vocational, educational specialist, administrator or supervisor

4. As of April 2001, the following states/jurisdictions have agreed to sign a contract with Penr

   | 1. | Alabama | 16. | Kansas | 31. | North Carolina |
   | --- | --- | --- | --- | --- | --- |
   | 2. | Alaska | 17. | Kentucky | 32. | North Dakota |
   | 3. | Arizona | 18. | Louisiana | 33. | Ohio |
   | 4. | Arkansas | 19. | Maine | 34. | Oklahoma |
   | 5. | California | 20. | Maryland | 35. | Oregon |
   | 6. | Colorado | 21. | Massachusetts | 36. | Rhode Island |
   | 7. | Connecticut | 22. | Michigan | 37. | South Carolina |
   | 8. | Delaware | 23. | Mississippi | 38. | Tennessee |

Teaching in PA: Interstate Certification Agreements                    Page 2 of 2

| | | |
|---|---|---|
| 9. District of Columbia | 24. Montana | 39. Texas |
| 10. Florida | 25. Nebraska | 40. Utah |
| 11. Georgia | 26. Nevada | 41. Vermont |
| 12. Hawaii | 27. New Hampshire | 42. Virginia |
| 13. Idaho | 28. New Jersey | 43. Washington |
| 14. Illinois | 29. New Mexico | 44. West Virginia |
| 15. Indiana | 30. New York | 45. Wyoming |

H-142 (6/01)
For further information contact:
Bureau of Teacher Certification and Preparation
333 Market Street
Harrisburg, PA  17126-0333
Email: ra-teachercert@state.pa.us

**For more information contact:**

**Name: Bureau of Teacher Certification and Preparation**
**Email:** ra-teachercert@state.pa.us
**Voice:** (717) 787-3356
**Fax:**   TDD (717)772-2864

Content Last Modified on 10/14/2005 12:13:27 PM

Teaching in PA Home   Printable Version   Text-Only  Full-Screen  eMail

Home | K-12 Schools | Higher/Adult Education | Teaching | Libraries | Dept Info | Newsroom

Send technical questions to: ra-edwebmaster@state.pa.us

Copyright © 2001 Commonwealth of Pennsylvania. All Rights Reserved.
Commonwealth of PA Privacy Statement Credits Disclaimers

