IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROWENA WAGNER,<br>      Plaintiff<br><br>    v.<br><br>CRAWFORD CENTRAL SCHOOL<br>DISTRICT, et al.,<br>      Defendants | CIVIL ACTION NO. 04-264 ERIE |

HEARING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
(COURT'S ORDER)

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Friday, October 27, 2006.

APPEARANCES:

EDITH BENSON, Esquire, appearing on behalf of the Plaintiff.

CALEB L. NICHOLS, Esquire, appearing on behalf of the Plaintiff.

MARK J. KUHAR, Esquire, appearing on behalf of Defendants Crawford Central School District, et al.

Ronald J. Bench, RMR - Official Court Reporter

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 |   |
| 3 | (Whereupon, the following Excerpt of Proceedings |
| 4 | occurred on Friday, October 27, 2006, in Courtroom C.) |
| 5 |   |
| 6 | (Recess from 2:40 p.m.; until 2:50 p.m.) |
| 7 |   |
| 8 | THE COURT:  This is an order. |
| 9 | ORDER |
| 10 | Presently pending before the court are cross-motions |
| 11 | for summary judgment.  Summary judgment, of course, is proper |
| 12 | if the pleadings, depositions, answers to interrogatories, |
| 13 | admissions on file, together with the affidavits, if any, show |
| 14 | that there is no genuine issue as to any material fact and that |
| 15 | the moving party is entitled to judgment as a matter of law. |
| 16 | Federal Civil Rule of Procedure 56(c).  In evaluating whether |
| 17 | the non-moving party has established each necessary element, |
| 18 | the court must grant all reasonable inferences from the |
| 19 | evidence to the non-moving party.  In other words, the court |
| 20 | must draw all reasonable inferences in favor of the non-movant. |
| 21 | See Knabe v. Boury Corp., 114 F.3d 407 (3rd Cir. 1997). |
| 22 | Under Title VII, it is of course unlawful for an |
| 23 | employer to refuse to hire or otherwise discriminate against |
| 24 | any individual with respect to his or her compensation, terms, |
| 25 | conditions or privileges of employment because of such |

individual's race, color, religion, sex or national origin. See <u>Weston v. Commonwealth of Pennsylvania, Department of Corrections</u>, 251 F.3d 420, 425 (3rd Cir. 2001). Title VII also prohibits retaliation and coercion directed at persons who have taken steps to oppose an act or practice made an unlawful employment practice under Title VII. The PHRA has similar prohibitions against employment discrimination, as well as retaliation. 43 P.S. Section 955(d). The Third Circuit has consistently applied the same legal standard in analyzing claims brought pursuant to Title VII and the PHRA. <u>Goosby v. Johnson & Johnson Medical, Inc.</u>, 283 F.3d 313, 317, n.3 (3rd Cir. 2000).

With respect to plaintiff's 1981 and 1983 causes of action, the Third Circuit has also applied the Title VII legal standard. See <u>Schurr v. Resorts International Hotel, Inc.</u>, 196 F.3d 486, 499 (3rd Cir. 1999); <u>Stewart v. Rutgers, The State University</u>, 120 F.3d 426, 432 (3rd Cir. 1997).

We, of course, analyze plaintiff's claims under the familiar burden-shifting test articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); and further refined in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). Under the <u>McDonnell Douglas</u> test and its progeny, the plaintiff has the initial burden of establishing a prima facie case of discrimination, the substance of which will vary depending on the type of claim; if the plaintiff is

1  successful, the employer must then articulate a legitimate,
2  non-discriminatory reason for the adverse employment action.
3  Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3rd Cir.
4  1997).  If the employer proffers a legitimate,
5  non-discriminatory reason for its action, the plaintiff must
6  then demonstrate that the proffered reason was merely a pretext
7  for unlawful discrimination.  Goosby, 228 F.3d at 319.
8         With respect to plaintiff's failure to hire claims,
9  defendants claim that they are entitled to summary judgment
10 because:  (1) plaintiff is incapable of establishing a prima
11 facie case of discrimination; and (2) even if the plaintiff
12 could establish a prima facie case, she has not come forward
13 with sufficient evidence to raise a triable issue of fact on
14 the issue of pretext.
15        In order to establish a prima facie case under Title
16 VII, the plaintiff must show that she, (1) is a member of a
17 protected class; (2) was qualified for the position; (3) was
18 subjected to an adverse employment action; and (4) under
19 circumstances giving rise to an inference of discrimination.
20 See Burdine, 450 U.S. at 254.  The district contends
21 essentially that the plaintiff's prima facie case fails on the
22 basis of a lack of qualifications for the respective positions
23 at issue.
24        In evaluating whether a plaintiff is "qualified" for
25 purposes of a prima facie case, we rely upon "objective"

factors.  <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 729 (3rd Cir.) cert. denied, 515 U.S. 1159 (1995).  Subjective qualities, conversely, such as leadership or management skills, are "better left to the later stage of the <u>McDonnell Douglas</u> analysis."  <u>Weldon</u>, 896 F.2d at 798.

        Here, plaintiff had the objective experience and education necessary to qualify for the respective positions. She possessed a Bachelor of Science degree in education and was certified to teach elementary school grades K through 6. Moreover, she was in fact hired as a substitute teacher by the district in September of 2001.  We find, therefore, that she is qualified for purposes of a prima facie case and a prima facie case has been made out.

        In essence, the district claims that it did not hire the plaintiff for the Pickens' position based upon the fact that her interview scores were lower than those of the successful candidate.  Parenthetically, it appears that plaintiff's scores ranged from 26 to 30 out of 45 potential points; while the successful candidate scored in the range of 36 to 44.  See Exhibit 3A, interview analysis forms.

        The district further contends that it did not select the plaintiff for any other vacancies because her interview scores were low, she displayed some negative traits during her interviews, such as poor grammar, and because of noted difficulties in the classroom as recorded, for instance, on

Heller's observation report, and Heller's conclusion that she was not ready to manage her own class.  See Heller affidavit, paragraphs 20 and 24.

Having articulated legitimate, non-discriminatory reasons for the failure to hire, the question becomes whether the plaintiff has pointed to some evidence "from which a fact finder could reasonably either, (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Brewer v. Quaker State Refining Corp., 72 F.3d 326, 331 (3rd Cir. 1995).

In support of her position that she has raised a triable issue of fact on the issue of pretext, plaintiff points to the following evidence:

(1) That it was the practice of the district to fill long-term substitute teaching position vacancies based upon the recommendation of the teacher who was being replaced.  Plaintiff's affidavit, paragraph 7. Pickens deposition, pages 14, 16, 24, 37.

(2) Pickens testimony that her request for a specific substitute had been honored in the past by the district.  Pickens deposition, pages 14, 16, 24, 37.

(3) That she was specifically requested by Pickens

| | |
|---|---|
| 1 | to be her replacement, and Meador, the principal of |
| 2 | Cochranton Elementary School, agreed that she would |
| 3 | replace Pickens for the entire semester.  See |
| 4 | Pickens letter dated November 17, 2002, document |
| 5 | number 82.  Wagner deposition, page 12. |
| 6 | (4) That she was required to interview for the |
| 7 | position when the district did not have a formal |
| 8 | policy of interviewing candidates for substitute |
| 9 | positions, and did not interview candidates in |
| 10 | one-hundred percent of the cases.  See letter dated |
| 11 | May 23, 2003, document number 33. |
| 12 | With respect to other vacancies, plaintiff relies |
| 13 | upon the following evidence: |
| 14 | Wright's alleged comment that brown and black people |
| 15 | were not as smart as white people.  See Wagner |
| 16 | deposition, pages 18 through 19. |
| 17 | And the fact that her alleged poor grammar was never |
| 18 | brought to her attention as a reason for rejection |
| 19 | and, therefore, was essentially a post-hoc |
| 20 | justification for the rejection.  Plaintiff's |
| 21 | affidavit, paragraph 13. |
| 22 | With respect to the Pickens' position, the district |
| 23 | argues that all applicants for long-term substitute positions |
| 24 | were subjected to an interview and observation requirement, and |
| 25 | that teacher recommendations were only one factor considered by |

1   the district in its selection of replacements.  In contrast,
2   plaintiff claims that the district consistently followed
3   teacher recommendations for replacements and interviews were
4   not required.  Plaintiff relies in part on the deposition
5   testimony of Pickens that it was the district's practice to
6   follow teacher recommendations, and that her requests for a
7   specific replacement had been honored in the past.  The
8   district contends that Wright was not responsible for the
9   decisions not to hire plaintiff, and there is no showing that
10  any other members were aware of or shared his alleged
11  prejudice.  Essentially, contending that the alleged statement
12  attributed to Wright is nothing more than a "stray remark."
13  In contrast, plaintiff claims that Wright's comments are
14  indicative of a discriminatory animus.  Stray remarks by
15  decision-makers may be circumstantial evidence of informal
16  managerial attitudes which can, in some circumstances, support
17  a showing of pretext.  Brewer, 72 F.3d at 333.
18          Here, while the district claims that Wright was not
19  a decision-maker, he did in fact have final decision-making
20  authority as a member of the board.  The comment was allegedly
21  made during the timeframe in which the plaintiff was seeking a
22  position with the district.  Moreover, the comment was
23  allegedly made at a meeting to discuss plaintiff's difficulties
24  in securing a position with the district.  We also note that
25  Mr. Wagner testified that during his meeting with Messrs.

Heller and Dolecki regarding Wright's remarks, Heller, who was a direct decision-maker, allegedly agreed with Wright's comments and cited a university study that was allegedly confirmatory of the accuracy of the same.

Finally, plaintiff contends that her poor grammar was never given as a reason for her not being hired. The district points to plaintiff's alleged difficulties in the classroom, as recorded by Heller on the classroom observation form and his conclusion that plaintiff was "not ready" to manage her own class. Plaintiff counters that although Heller testified that plaintiff needed improvement in certain areas, the observation of the plaintiff was "satisfactory." And that a review of the classroom observation form under the category "management and organization" reveals no deficiencies recorded in this area. In sum, we find, based upon the above, that the plaintiff's evidence with respect to pretext, although sharply disputed by the district, raises a triable issue of fact rendering summary judgment on the failure to hire claim inappropriate.

I now turn to the issue of retaliation. Retaliation claims under Title VII involve the same McDonnell Douglas burden-shifting analysis as outlined above. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3rd Cir. 2003). To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that

the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse employment action. Id. at 187.

In support of her retaliation claim, plaintiff relies primarily on the following evidence:

>(1) That after filing her PHRC complaint on February 20, 2003, she suffered a significant drop in substitute teaching assignments. Wagner affidavit, paragraph 17.

>(2) Following the filing of her federal lawsuit on September 16, 2004, she was informed my Joanne Darling, the former principal at Cochranton, on September 24, 2004 that she could not be considered for a teaching position because she had filed a federal lawsuit. Wagner deposition, page 60. Wagner affidavit, paragraph 34.

In determining causation, courts have generally focused on two factors: (1) the temporal proximity between the protected activity and the alleged discrimination; and (2) the existence of a pattern of antagonism in the intervening period. Jalil v. Avedel Corp., 873 F.2d 701 (3rd Cir. 1989). However, timing and proof of antagonism are not the only methods by which a plaintiff can make out a prima facie showing of causation. Abramson v. William Paterson College of New Jersey,

260 F.3d 265, 289 (3rd Cir. 2001). Noting that a "broad array" of circumstantial evidence may be used to illustrate a potential causal link between a plaintiff's protected activity and an employer's adverse action.

With respect to the plaintiff's contention that she was retaliated against as evidenced by an alleged decrease in her substitute assignments following the filing of her PHRC complaint, even assuming that she has made out a prima facie case with respect to the same, I find that she has failed to rebut the district's legitimate non-retaliatory reason for any alleged decrease in the day-to-day substitute assignments. The district has come forward on this record with unrebutted evidence that it had no control over which assignments day-to-day substitutes were given, and that such assignments were handled exclusively through a substitute placement service. Heller affidavit, paragraph 2. The general manager of the substitute placement service, Heidi Black, likewise averred that the district has no control over those assignments. Black affidavit, paragraph 5. Indeed, Black indicated that the placement service had no knowledge of the plaintiff's complaint or lawsuit prior to August 2, 2006, when it was contacted to provide an affidavit in this case. We shall therefore grant the district's motion as to this aspect of the retaliation claim.

We reach a different result, however, with respect

to plaintiff's remaining retaliation claim. Plaintiff claims that Darling's comments that she would not be considered for a position because she filed a federal lawsuit evidence of retaliatory animus. The district contends, however, that Darling was not authorized to speak for the district in this matter.

While the plaintiff has failed to present evidence linking Darling's comments directly to the district's decision not to hire the plaintiff, we are not precluded from considering other record evidence supporting an inference of retaliation. <u>Farrell</u>, 206 F.3d at 280-81. As discussed more fully in connection with the plaintiff's failure to hire claims, plaintiff has, for purposes of the summary judgment, cast doubt on the district's reasons for not hiring her as either being post-hoc fabrications or otherwise not genuinely motivating the district's decision. We further observe, for instance, that Mr. Wright testified at deposition that if he wanted a paid job at the district "[he] wouldn't sue them as a place to start." Such a comment could reasonably be inferred as reflecting a retaliatory animus. We find, therefore, that plaintiff has presented sufficient evidence to withstand summary judgment on this aspect of the retaliation claim.

With respect to the fifth claim, the intentional infliction claim, I find summary judgment is appropriate. Specifically, I find that the plaintiff's intentional

1  infliction of emotional distress claim is barred by the
2  exclusivity provision of the Pennsylvania Workers' Compensation
3  Act.  See Matczak v. Frankford Candy & Chocolate Co., 136 F.3d
4  933, 940 (3rd Cir. 1997).  Additionally, however, even if it
5  were not for the exclusivity provisions of the Act, the
6  allegations themselves not are not sufficiently egregious to
7  state a claim for intentional infliction under controlling
8  Pennsylvania law.
9           Defendants also seek summary judgment on behalf of
10 the School Board.  Defendants' contend that the School Board is
11 not a separate entity from the district and therefore it is an
12 improper and redundant party.  Relying on Glickstein v.
13 Neshaminy School District, 1997 WL 660636 (E.D.Pa. 1997),
14 in which the court found the School Board was not amenable to
15 suit under Pennsylvania law.  The Glickstein court concluded
16 that because the School Board lacked the status of a political
17 subdivision under Rule 76, it could not be sued under Rule
18 2102(b).  We agree with the defendants because the school
19 district itself as a named party would ultimately be liable for
20 any judgment entered in the case and that the School Board is
21 in fact redundant.  Satterfield v. Borough of Schuylkill Haven,
22 12 F.Supp.2d 423, 431 (E.D.Pa. 1998).  Therefore, we'll grant
23 the defendants' motion insofar as the School Board is
24 concerned.
25           Finally, with respect to the defendants' motion

1  relative to Dolecki and Heller individually.  Defendants point
2  out that the claims set forth in the plaintiff's first amended
3  complaint reference defendants Crawford Central School District
4  and Crawford Central School Board, and there are no independent
5  allegations specifically to Dolecki or Heller.  Moreover,
6  neither Dolecki and Heller are employers for purposes of
7  liability under Title VII and the PHRA.  <u>Cici v. Commonwealth
8  of Pennsylvania</u>, 91 F.3d 542, 552 (3rd Cir. 1996).  The court
9  agrees and they will therefore be dismissed from the case.
10            For the previous reasons, then, the plaintiff's
11 motion for summary judgment is denied.  The defendants' motion
12 for summary judgment is granted in part and denied in part for
13 the reasons previously set forth on the record.
14            All right, this case is non-jury.  We're about to be
15 going into our jury period here, we're not going to be able to
16 get this case in immediately.  But my Deputy Clerk is going to
17 be in touch with each of you with respect to -- well, the
18 present order that's already out, when are your pretrial
19 narrative statements due?
20            MR. KUHAR:  Your Honor, there is no due date set for
21 those yet.
22            THE COURT:  Well, you're going to get one right now.
23 20 days from today plaintiffs are due; 20 days from receipt,
24 the defendants are due.  And then we'll go ahead and set a
25 pretrial conference subsequent to the filing of both of the

1  pretrial statements.  I can assure you that this case isn't
2  going to get tried until sometime in early 2007.
3
4           (Whereupon, at 3:16 p.m., the proceedings were
5  concluded.)
6
7                              - - -
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                      C E R T I F I C A T E
 2
 3
 4
 5        I, Ronald J. Bench, certify that the foregoing is a
 6   correct transcript from the record of proceedings in the
 7   above-entitled matter.
 8
 9
10
11
12   _____
13   Ronald J. Bench
```