# LAW OFFICES OF
# CALEB L. NICHOLS

P.O. Box 1585                                         Office: (814) 838-1877
Erie, PA 16507                                        Fax: (814) 454-6247


P.O. Box 1585
Erie, PA 16507


November 16, 2006


Honorable Judge Sean McLaughlin
United States District Judge
United States District Court for the Western District of Pennsylvania
17 South Park Row
Room 250
Courtroom (C)
Erie, PA 16501

**Re: Wagner (vs) Crawford Central School District et al (No. 04-264-Erie)/Pretrial Narrative**

Dear Judge McLaughlin:

Pursuant to the Court's Order of October 27, 2006, Plaintiff hereby submits her Pretrial Narrative.

Very truly yours,



Caleb L. Nichols

Cc: Mark Kuhar, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROWENA WAGNER, | ) | |
| Plaintiff | ) ) ) ) | |
| v. | ) ) ) ) | |
| CRAWFORD CENTRAL SCHOOL DISTRICT, Defendant | ) ) ) ) | CIVIL ACTION No. 04-264E  Pretrial Narrative |

Caleb L. Nichols
Counsel for Plaintiff
Rowena Wagner

## PROCEDURAL NARRATIVE

On February 20, 2003, Plaintiff filed a complaint against Crawford Central School District with the Pennsylvania Human Relations Commission, (PHRC) Pittsburgh, Pennsylvania. On May 9, 2003, the PHRC held a Fact-Finding conference and it was attended by Mr. Joseph Adler, PHRC representative, Messrs. Charles Heller, Douglas Stanton, Kurt Meader, Plaintiff, Bernard Wagner, her spouse, and Attorney Richard Perhacs, Solicitor for School District.

On June 22, 2004, Plaintiff received a Right-to-Sue Letter from PHRC. On September 16, 2004, Plaintiff filed a federal lawsuit in the United States District Court for the Western District of Pennsylvania alleging discrimination by the Crawford Central School District due to race and national origin. An Amended Complaint was filed in October 2004.

The Court proceedings involving this case have spanned approximately two (2) years. Efforts to negotiate the case have thus far been unsuccessful. The most recent ruling was made by the Court on dispositive motions, which occurred on October 27, 2006. In passing upon Plaintiff's Motion for Summary Judgment, the Court ruled that Plaintiff made out a prima facie case on the issue whether she is qualified for the teaching position, which she sought. The Court further ruled that Plaintiff raised a triable issue of fact that the reasons Defendant asserted for failing to hire Plaintiff was a pretext.

Moreover, the Court concluded that Plaintiff could proceed to trial on varied record evidence supporting an inference of retaliation by the Defendant against Plaintiff including certain remarks attributed to Principal Joanne Darling and Director John Wright. However, the Court rejected Plaintiff's retaliation claim alleging a decrease in her substitute assignments following the filing of her PHRC complaint in February 2003.

Presently, there are no pending motions, however, as the case proceeds to trial some are contemplated.

## NARRATIVE OF THE FACTS ASSERTED BY PLAINTIFF

Plaintiff Rowena Wagner graduated from Edinboro University of Pennsylvania in May 2000. She has a Bachelor of Science Degree in Education. She is certified to teach in Elementary K-6. She did her student teaching and field experience in the Crawford Central School District. Her student teaching was supervised by Professor John Lovett, a member of Edinboro's Department of Education, with the assistance of Mr. Douglas McCullough, at Cochranton Elementary and Ms. Carole Fisher at Cochranton Elementary School. Her student teaching consisted of preparing lesson plans to be used for each day for an entire two quarters and those other duties normally performed by the full-time teacher.

Plaintiff's field experience was conducted under the supervision of Professor Bruce Smith, a member of the faculty of Edinboro University, with the cooperation of Ms. Harriet Powell at Second District Elementary and Ms. Janice Koseff at Second District Elementary School. Her field experience consisted of, among other things, supervising the class in the teacher's absence and devising lesson plans involving subject matter to be taught once a week for two quarters.

Plaintiff received very positive and exemplary evaluations on the basis of both her field experience and her student teaching performance. In no instance did her supervising professors or cooperating teachers indicate that she used poor grammar or lacked insight or mastery of the subject matter that she taught. In fact, Professor Lovett remarked: "Rowena had an excellent classroom presence. She presented herself well to her students. Although she had a dialect, her speech and grammar were never a concern. She had a clear, commanding voice, and good classroom control." Neither former Superintendent James Lascola, who interviewed her in 2001, nor Superintendent Michael Dolecki, who hired her, nor Charles Heller III, Assistant Superintendent, ever informed Plaintiff that her use of grammar or speech was an impediment to her employment opportunities. In fact, by a letter dated June 15, 2005, Mr. Heller wrote Plaintiff a very complimentary letter, and expressed his regard and respect for the quality of her teaching during school year 2004-2005.

In August and/or September 2001, Plaintiff commenced employment with the Crawford Central School District following the interview conducted by Mr. Lascola. Having applied for a full-time teaching position, upon inquiry, Mr. Lascola advised her that serving as a substitute teacher would place her on a career path leading to a long-term substitute or full-time teaching position. Based upon Mr. Lascola's advise, Plaintiff understood that the practice by which substitute teachers got long-term substitute and full-time teaching positions was well established.

During school years 2001-2002 and 2002-2003, Plaintiff worked as a substitute teacher throughout the School District approximately eighty (80) to ninety (90) percent of the school years. Teachers for whom Plaintiff regularly substituted prepared Summary Reports reflecting the excellence of Plaintiff's performance and these Reports remain in the possession of the School District.

During 2002, 2003, 2004, 2005, and 2006, Plaintiff applied for more than seventy-five (75) long-term substitute and full-time permanent teaching positions in the School District. The positions for at least twenty-five (25) of the teaching positions did not receive a bid from a member of the local union. Plaintiff was qualified for the announced vacancies established by the Defendants.

By practice, the Defendant had customarily filled vacancies of the teaching staff caused by medical, sabbatical and other unexpected leaves on the recommendation of the full-time teacher who was replaced. However, that practice was not followed when Plaintiff sought to replace Ms. Joye Pickens in November 2002.

- 2 -

In November 2002, Ms. Pickens took medical leave from her teaching position at Cochranton Elementary. Ms. Pickens reached a verbal agreement of understanding with Assistant Superintendent Heller that Plaintiff would be used as her substitute until the conclusion of the Fall Semester of 2002, which ended in January 2003, at which time the position was expected to be put up for bid.

Plaintiff began Ms. Pickens' position on or about November 13, 2002. On November 22, Mr. Heller conducted a classroom observation of Plaintiff, and on November 26, Principal Kurt Meader conducted a classroom observation of Plaintiff. Plaintiff received a satisfactory on her performance from both Mr. Heller and Mr. Meader.

Of the seventeen (17) applicants who were considered for four (4) long-term substitute positions, inclusive of Ms. Pickens', Plaintiff was the only minority included in the pool of applicants. These vacancies were not posted.

On December 20, 2002, Mr. Heller summarily dismissed Plaintiff, informing her that the Interviewing Committee did not select her to replace Ms. Pickens as a long-term substitute. The Interviewing Committee established, managed and coordinated by Mr. Heller and consisted solely of individuals under his supervision, all of whom were Caucasian.

Superintendent Dolecki and Ms. Pickens testified that the School District had never summarily dismissed a substitute teacher and convened an Interviewing Committee to replace the substitute where the substitute, as was true in Plaintiff's case, had been assigned to a position with the expectations and assurance that she would work until the conclusion of the semester.

Some of the Employment Interview Analysis Forms used by the Interviewing Committee were not signed by the evaluators and contained objectionable comments relating to Plaintiff's ethnicity and national origin. Plaintiff was required to undergo interviews and classroom observations; however, other applicants were hired as long-term substitutes or full-time permanent teachers without classroom observation. Moreover, in evaluating Plaintiff in December 2002, Assistant Superintendent Heller manifested a closed-mind stating, "No Way" would plaintiff be hired.

The Defendants have engaged in and acquiesced in a longstanding custom, policy or practices of denying Plaintiff and minorities equal employment opportunities.

Ms. Tammy Foster, an African-American, was certified in 1994 to teach elementary education. She substituted in Crawford Central School District from 1994 until 1996, when she left the area in pursuit of professional opportunities. In 1999, she was hired by the School District as a Teacher's Aide. Approximately ten (10) years lapsed before Ms. Foster was hired by the School District as a full-time teacher in 2004-2005, after Plaintiff had filed her lawsuit.

Mr. Samuel Byrd, a former member of the School Board, testified that he knew African-American applicants who applied for teaching positions with the appropriate certifications that were not hired by the School District for the positions they sought. Mr. Byrd further testified that those individuals were: Tammy Foster, Eric Brown, Walt Moody, Hazel Moody, Tracey Balsamo and Lee McFerrin.

The School District during 2002, 2004 and 2005 hired teachers who were comparatively less qualified than Plaintiff in terms of experience and achievement.

The School District has hired teaching staff in violation of state law because they were not certified when hired. For example, the School District hired Ms. Naomi Uy-Moore, an out-of-state applicant, to begin teaching during the school year 2005-2006 when she was not yet certified in Pennsylvania. Upon inquiry by Plaintiff, the Defendants obtained an emergency permit for Ms. Moore to teach. As of July 11, 2006, Ms. Moore was not certified to teach in Pennsylvania. It is also documented that Susan Baker, Lisa Shuffstall and Leslie Jensen were not certified when hired by the School District. Further, in violation of state law and regulations, the Defendants have hired teaching staff pursuant to an emergency permit when Plaintiff was available as a full qualified and properly certified applicant.

Statistical evidence of an employer's pattern and practice with respect to minority employment is relevant to a showing of pretext. It may be used at the pretext stage to help rebut the employer's purported nondiscriminatory explanation. Since the school year 1990-1991, and continuing through the school year 2004-2005, the Defendants have hired, in the aggregate, thirteen (13) teaching staff from minority groups (Asian=1, African-Americans=3, Hispanics=9). These statistics do not include Ms. Moore who was hired to teach beginning school year 2005-2006. As of school year 2004-2005, the School District had a total teaching staff of 300.

Except for some unspecified recruitment fairs that Mr. Dolecki testified that he attended before 2001, there is only one documented effort on the part of the School District to recruit professional minority teaching staff.

The School Board and/or Administration failed to implement Pennsylvania's Anti-Nepotism Law for the purpose of screening possible relationships, by blood or marriage, between the Board and/or Administration and applicants for teaching positions. Mr. Dolecki and Mr. Heller testified that on at least one occasion the School Board approved the hiring of a teacher, with knowledge and in violation of the Anti-Nepotism Statute.

On January 3, 2003, Plaintiff met with George Wright, then a member of the School Board, to bring to the Board's attention her difficulties in obtaining employment. According to Mr. Wright's testimony, the filing of Plaintiff's employment discrimination complaint and her federal lawsuit would have been brought to the attention of the School Board. During his deposition, Mr. Wright acknowledged that he told Plaintiff that the fact that she had filed a lawsuit against the School District was an act he disapproved of. Further, in a telephone discussion with Bernard Wagner, Mr. Wright

derided the intelligence of minorities. On December 26, 2002, Plaintiff wrote Mr. Wright a letter requesting to meet with him on January 3, 2003. Plaintiff and her spouse met Mr. Wright at his office to discuss her dismissal. Further, the School District has admitted through its solicitor, Attorney Richard W. Perhacs, that "...the use of organized interviews of a group of candidates for substitute positions is not a formal policy of the School District, or necessarily followed in 100% of the case."

George Wright, a former member of the School Board, testified that he invited Plaintiff to a SCORE function and asked her to file an application for future job openings at SCORE. On or about January 5, 2003, Mr. Wright spoke with Mr. Wagner about Plaintiff's difficulties. However, neither he nor the Board initiated an investigation, nor did he direct Plaintiff to file a complaint through the School District's internal grievance procedure. No administrator of the School District advised Plaintiff to utilize the internal grievance procedure to pursue relief, since she was not a member of the collective bargaining unit. Mr. Dolecki was the designated official charged with processing discrimination complaints through the internal grievance procedure.

In September 2004, Plaintiff was told by Principal Joanne Darling, Cochranton Elementary School, that she was ineligible to apply for a teaching position at Cochranton Elementary because she had filed a federal lawsuit against the School District in September 2004. Consequently, Plaintiff ceased to pursue this teaching position. Principal Darling participated in the hiring process by which Plaintiff's application was rejected. On June 21, 2004, Plaintiff met with Mr. Heller and requested to see her interview evaluation form. Mr. Heller rejected her request. Mr. Heller told her to look for employment outside the District and Plaintiff has not been granted another interview since March 2004.

Defendants' method of evaluating and screening Plaintiff did not reflect the minimum qualifications necessary to successfully perform the position and the criteria used to evaluate Plaintiff were open-ended, ambiguous and arbitrary, and unlawful.

In their respective Affidavits, Superintendent Dolecki and Assistant Superintendent Heller stated that candidates for long-term substitute positions must undergo interviews. However, this was not a formal policy or practice of the School District. In his Affidavit, Superintendent Dolecki does not state that classroom observations are required component of the hiring process for long-term substitute teachers.

In his Affidavit, Mr. Heller stated that classroom observations are "often part of the interviewing process for long-term substitutes, with the exception of those who have previously worked as long-term substitutes." As well Suzanne Good, Director of Curriculum, said as much during her testimony. However, the Defendants could not produce classroom observation reports for at least twenty-one (21) applicants hired during the 2004-2005 school year. At least fifteen (15) of those individuals had no prior long-term substitute teaching experience with the School District.

## CONTESTED ISSUES OF FACT

1. Whether the Defendant summarily dismissed Plaintiff from the teaching position that she had commenced as a replacement for Mrs. Joye Pickens in November 2002 because of her race and/or natural origin or for non-discriminatory reasons;

2. Whether the reasons Defendant asserted for repeatedly rejecting Plaintiff's application for teaching positions evidence a pretext to mask racial and national origin animus or bias;

3. Whether the Defendant hired applicants for elementary teaching positions during 2002, 2004, 2005, and 2006 who were less qualified than Plaintiff;

4. Whether the Plaintiff was evaluated in 2002 and 2004 on the basis of a methodology, criteria and testing instrument which was arbitrary, flawed and unlawful and violative of standards enunciated in <u>Griggs (v) Duke Power Co.</u> 401 U.S. 424 (1971) and <u>Lannin (v) Septa</u> 308 F.3d 281 (3rd Cir. 2002);

5. Whether Plaintiff makes out and establishes retaliation by showing that Principal Darling, acting in her official capacity, instructed Plaintiff that she could not apply for a teaching position due to the filing of the federal lawsuit, but also admittedly participated in the decision to reject Plaintiff's application for teaching positions with the School District;

6. Whether, in the aggregate, the deposition testimony of Mr. Wright involving racially-based comments deriding the intelligence of minorities and his disapproval of Plaintiff's filing her lawsuit, and the failure to direct Plaintiff to utilize the internal grievance procedure and initiate an investigation into alleged discriminatory hiring practices, is a violation of Title VIII.

## DEPOSITION TESTIMONY

To date, Plaintiff has taken the deposition of members of the School Board, administrators, a former member of the School Board, and school teachers. It is expected that each of the individuals deposed will be called by one of the parties at trial. Plaintiff reserves the right to use deposition testimony of all persons deposed including the following: Bernard Wagner, Plaintiff's spouse; Michael Dolecki, Superintendent; Rowena Wagner, Plaintiff; George Wright, former member of School Board; Charles Heller III, Assistant Superintendent; Suzanne Good, Director of Curriculum; Samuel Byrd, former member of the School Board; Mrs. Joye Pickens, a retired teacher; Ross Prather, Vice-Chairman of School Board. It is contemplated that one or two exhibits will be offered for purposes of setting forth a comparative analysis of the relative

professional qualifications of applicants included in the pool for teaching positions in 2002, 2003, 2004, 2005, and 2006.

## EXHIBITS

Many of the exhibits which Plaintiff will proffer come from Plaintiff's personal files. These exhibits will be authenticated by and introduced as evidence through Plaintiff's testimony. Other exhibits were obtained from the Defendant, in the course of discovery, either by a subpoena or voluntary disclosure on Defendant's part per the Federal Rules of Civil Procedure. Some Employment Interview Analysis Reports were acquired from the Crawford Central Education Association. Other official documents including an Affidavit were obtained from the Pennsylvania Department of Education as well as certain demographics relative to the diversity of the teaching workforce of the Crawford Central School District.

## PLAINTIFF'S EXHIBIT LIST

1. Letter from Michael Dolecki, Acting Superintendent, to Rowena Wagner dated September 26, 2001 (Exhibit 1);

2. Letters of Recommendation from Prof. John Lovett, Mrs. Harriet Powell, Mr. Douglas McCullough, and Mrs. Carole Fisher and Final Evaluations, and Letter of Commendation from Assistant Superintendent Charles Heller, III (Exhibit 2);

3. Summary Reports for Substitute Teaching (Exhibit 3);

4. Substitute Teaching Assignment School Years 2001-2006 (Exhibit 4);

5. Observation Reports prepared by Assistant Superintendent Heller and Principal Kurt Meader (Exhibit 5);

6. Letter from Joye L. Pickens to Crawford Central School District dated November 17, 2002 (Exhibit 6);

7. Deposition of Joye L. Pickens, October 25, 2005, (pgs. 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 (lines 1-6), 22 (lines 6-10), 24, 25 (lines 10-16), 28 (Exhibit 7);

8. Scoring of Candidates by Interviewing Committee to replace Joye Pickens (2002) and successful applicants (Exhibit 8);

9. Letter from Richard W. Perhacs, Esq., to Joseph Adler, Pennsylvania Human Relations Committee dated May 23, 2003 (Exhibit 9), and Defendant's Reponses to Defendant Crawford Central Education Association's First Set of Interrogatories (Answer to Interrogatory No. 1) (pg. 7) (Exhibit 9(a));

10. Employment Interview Analysis of Applicants to replace Mrs. Pickens in 2002 (Exhibit 10);

11. Employment Interview Analysis Report prepared by Assistant Superintendent Heller on Plaintiff's application, 12/19/02 (Exhibit 11);

12. Employment Interview Analysis Reports of Interviewing Committee to replace Mrs. Pickens (Exhibit 12);

13. Deposition of Superintendent Michael Dolecki, October 20, 2005 (pgs. 79 (line 14), 80, 81, 82 (Exhibit 13);

14. Arbitrator's Award of April 7, 1999 (Exhibit 14);

15. Hiring of Naomi Moore (Exhibit 15);

16. Affidavit of Charles P. Sabulski, Director, Pennsylvania Department of Education (Exhibit 16);

17. Comparative Analysis of Professional Qualifications of candidates hired in 2002, 2003, 2004, 2005, and 2006; (set forth in tabular format) (Exhibit 17);

18. Elementary Teachers hired by School District between 2001 and 2005 (Exhibit 18);

19. Rowena Wagner's Affidavit regarding Principal Joanne Darling's retaliation, (Exhibit 19); Rowena Wagner's Affidavit regarding request by Kathleen Maruska to substitute during two short term assignments (Exhibit 19(a));

20. Rowena Wagner's Affidavit regarding Assistant Superintendent Heller's refusal to hire her to replace Mrs. Tammy Costello during a maternity leave (Exhibit 20);

21. Letter of July 21, 2005 from Atty. Kuhar regarding Principal Joanne Darling's involvement in the refusal to hire Plaintiff (Exhibit 21);

22. Role of Principals including Principal Darling in the recruitment, screening, interviewing of candidates for teaching positions (Deposition of Suzanna Good, Sept. 28, 2003, pgs. 7, 8, 18, 35, 36, 37, 83 (Exhibit 22);

23. Deposition of Jan R. Van Tuil Sept. 7, 2005 (pgs. 11(lines 23-25), 31) (Exhibit 23);

24. Letter from Rowena Wagner to George Wright dated December 21, 2002 (Exhibit 24);

25. Deposition of George Wright, Sept. 6, 2005, (pgs. 16 (lines 18 and 19), 17 (lines 3-6), 18 (lines 10-16), 19 (lines 11-16), 25 (lines 11-13, 63 (lines 14-22 (Exhibit 25);

26. Deposition of Samuel Byrd, October 25, 2005 (pgs. 34, 35, 39) (Exhibit 26);

27. Letter from Samuel Byrd to Crawford Central School Board dated June 6, 2003, (Exhibit 27);

28. Employment Demographics of Crawford Central School District (Exhibit 28);

29. Armendia Dixon (v) Crawford Central School District et al (Civ. Action No. 83-0306-E) (1985) (Court Decision), (Exhibit 29);

30. Employment Application of Tammy Foster (Exhibit 30);

31. Plaintiff's Fifth Request for Production of Documents (Exhibit 31);

32. Crawford Central School District's Grievance Procedure (Exhibit 32);

33. Letter from Edith Benson, Esq. and Caleb Nichols, Esq. to Mark Kuhar, Esq. dated April 6, 2006 urging School District to report Plaintiff's credits for re-certification purposes (Exhibit 33);

34. Employment record of Catherine Bainbridge as emergency substitute teacher for School District;

35. Plaintiff's Letters of Application and (Exhibit 34), Letters of Rejection from 2001 through 2006 (Exhibit 35);

36. Crawford Central School District Minority Hirings (Exhibit 36);

37. Catherine Bainbridge employed as emergency substitute ahead of Plaintiff in violation of state law (22 Pa. Code 49.3) (Exhibit 37);

38. Deposition of Charles Heller, III, September 27, 2005 (pgs. 20 (lines 6-16), 29 (lines 2-14), 30 (lines 3-14), 34 (lines 14-19), 36 (lines 2-11), 40 (lines 7-18), 48 (lines 18-24), 51 (lines 107), 60 (lines 1-14), 62 (lines 4-11), 64 (lines 16-25), 63 (lines 1-9), 75 (lines 18-24), 67 (lines 16-20), 97 (lines 1-19), 99 (lines 12-25), 100 (lines 1-8), 139 (lines 3-19), 140 (lines 16-19), 151 (lines 13-16, 156 (lines 3-23), 157 (lines 21-25), 158 (lines 1-07), 160 (lines 11-24, 163 (lines 10-20), 165 (lines 5-15, 171 (lines 2-25), 172 (lines 1-21), 173 (lines 1-25, 175 (lines 7-25), 176 (lines 1-25), 177 (lines 1-5);

   Deposition of Charles Heller, III (continued)
   (10/20/05) pgs. 34 (lines 1-25), 35 (lines 1-19) (Exhibit 38);

39. Video-tape of "Talk Back Show" featuring Mr. Wright, Meadville, PA. (December 2002) (Exhibit 39).

**PLAINTIFF'S WITNESS LIST**

The name and address of each witness whom Plaintiff expects to call, as well as those whom the Plaintiff may call if the need arises, are noted below; witnesses is identified as a liability and/or damage witnesses.

(a) Rowena Wagner
166 North Franklin Street
Cochranton, PA  16314
(814) 425-7651

Plaintiff will testify in support of allegations of discrimination set forth in the Amended Complaint. Her testimony will establish issues dealing with both liability and damages.

(b) Joye Pickens
112 Third Street
Cochranton, PA  16314

Joye Pickens, a retired teacher for whom Plaintiff substituted, will testify, in particular, regarding the understanding she had with Assistant Superintendent Heller that Plaintiff would replace her during her medical leave commencing on or about November 15, 2002 and continuing until January 2003. Mrs. Pickens will testify as a liability witness. Some portions of Mrs. Pickens' testimony is expected to be presented in the format of a deposition and the designation of the portion of each deposition transcript (by page).

(c) Carole Fisher
167 North Franklin Street
Cochranton, PA  16314

Mrs. Fisher was Plaintiff's Cooperating Teacher during her student teacher experience. She will testify as a liability witness about Plaintiff's performance as a student teacher.

(d) Professor John Lovett
101 South Skytop Road
Edinboro, PA  16412

        Professor Lovett will testify about the Plaintiff's performance as a student teacher and the letter of recommendation he wrote for the Plaintiff, especially the "dialect and grammar" concerns. He will testify as a liability witness. He served as Plaintiff's student teaching supervisor.

(e)     Mr. Douglas McCullough
        124 West Adams Street
        Cochranton, PA 16314

        Mr. McCullough served as Plaintiff's Cooperating Teacher during her student teaching experience. He will testify as a liability witness.

(f)     Kathleen Maruska
        21973 State Hwy. 285
        Cochranton, PA 16334

        Mrs. Maruska will testify about recommending Plaintiff to Principal Joanne Darling for two short term substitute teaching assignments during medical leave for School Years 2004 and 2005. She will testify as a liability witness.

(g)     Tammy Costello
        10641 Franklin Pike
        Meadville, PA 16335

        Mrs. Costello is a teacher and will testify that she recommended Plaintiff to Assistant Superintendent Heller for a short term substitute teaching position during a maternity leave from August to November in the 2005/2006 School Year. She will testify as a liability witness.

(h)     Samuel Byrd
        404 Popular Street
        Meadville, PA 16335

        Mr. Byrd, a former School Board Director and President of the Crawford County NAACP, will testify regarding minorities who encountered difficulties obtaining employment with the School District and the letter he wrote to the School Board recommending minority hiring. He will testify as a liability witness. Some portions of Mr. Byrd's testimony is expected to be presented as a deposition transcript and designated by pertinent page.

(i)     Tammy Foster
        470 Arch Street
        Meadville, PA 16335

        Ms. Foster, a teacher, will testify about the difficulties that she encountered as a minority in obtaining a teaching position within the School District in 2004. She will testify as a liability witness.

(j)    Bernard Wagner
166 North Franklin Street
Cochranton, PA 16314

        Mr. Wagner is Plaintiff's spouse and will testify as a liability witness regarding their meeting with George Wright and the racially derogatory remarks attributed to Mr. Wright pertaining to the intelligence of minorities. Mr. Wagner will also testify concerning his meeting with Messrs. Dolecki and Heller regarding his spouse's difficulty in obtaining a full time teaching position.

(k)    Dr. Armendia Dixon, Ph. D.
716 Jefferson Street
Meadville, PA 16314

        Dr. Dixon will testify about the discrimination lawsuit which she prosecuted against the School District in 1984 and her efforts in assisting Plaintiff to prepare a complaint that was filed with PHRC in 2003.

(l)    Charles Sabulski, Director
Pennsylvania Department of Education
Harrisburg, PA

        If necessary, Mr. Sabulski will testify regarding an Affidavit he submitted confirming certain departmental records and data and authenticate departmental records. He will serve as a liability witness.

**Plaintiff reserves the right to call the following employees of the Defendant as on cross-examination should the need arise:**

(m)    George Wright
Manchester House (B-8)
Meadville, PA 16335

        A former School Board Member, portion of whose testimony will be presented as deposition transcript, (by page) and possibly, a video tape.

(n)   Joanne Darling, Principal
      22658 Skeltontown Road
      Cambridge Springs, PA 16403

      Principal Darling will testify about Plaintiff's request to be considered for a position at Cochranton Elementary and Kathy Maruska's recommending the Plaintiff twice for a short-term substitute teaching position. She will testify as a liability witness.

(o)   Charles Heller, III, Assistant Superintendent
      Crawford Central School District
      Meadville, PA

      If necessary, Mr. Heller will testify as to Plaintiff's efforts to obtain a full-time teaching position, her interviews and observations, her meeting in 2004 with him and Mrs. Suzanne Good, and her qualifications. Mr. Heller may be requested to authenticate certain personnel records maintained by the School District. Portions of his testimony may be presented by deposition transcript designated by pages.

(p)   Suzanne Good, Director of Education Curriculum
      Crawford Central School District
      Meadville, PA

      If necessary, Mrs. Good will testify regarding the policies and procedures relating to the screening, observation, interviewing and hiring of elementary teaching staff, the role that principals play in the observation and interviewing and hiring of teachers. She may be requested to testify concerning her involvement with Plaintiff's efforts to obtain a full-time teaching position and testify as a liability witness. Portions of Mrs. Good's testimony may be presented as deposition testimony, designated by page.

(q)   Michael Dolecki, Superintendent
      Crawford Central School Board
      Meadville, PA

      If necessary, Mr. Dolecki will testify as to the manner in which Plaintiff was summarily dismissed from her replacement teaching position in December 2002, the hiring process of long-term and full-time teachers, failure of the Board and the School District to comply with the Nepotism law in hiring Brian Mahoney, the School District's internal grievance procedure, and his duties as the designated Affirmative Action Officer. Portions of Mr. Dolecki's testimony may be presented by deposition transcript by page. He will testify as a liability witness.

(r)     Catherine Bainbridge
        1245 Nancy Drive
        Meadville, PA  16335

        Mrs. Bainbridge is an emergency substitute teacher. If necessary, she may be called to testify that she was allowed to substitute during periods when Plaintiff was available and fully certified but not called to substitute. If called, she will testify as a liability witness.

(s)     Naomi Uy-Moore
        494 Chestnut Street
        Meadville, PA  16335

        If necessary, Ms. Moore will be called to testify about the circumstances of her hiring as an elementary teacher by the School District in the 2005/2006 School Year.

(t)     Karen Jamieson
        5037 Sandy Lake Road
        Carlton, PA  16314

        If necessary, Ms. Jamieson will testify that she did not undergo an interview for a long-term substitute position in the 2000-2001 school years.

(u)     Stacie Boca
        Crawford Central School District
        Meadville, PA

        Ms. Boca is a teacher and will testify how she came to serve as a long-term substitute for Ms. Hope without an interview. She will be called, if necessary.

(v)     Heather Hood
        9336 Liberty Street Extension
        Meadville, PA  16335

        Ms. Hood served as a long-term substitute teacher at First District Elementary for Ms. Martin during a maternity leave. If necessary, she will be called to testify how she got the job on Mrs. Martin's request and recommendation and without having to be interviewed.

(w)     Marcie Pifer
        Crawford Central School District
        Meadville, PA

Ms. Pifer is a teacher and replaced Mrs. Darnell Terry during maternity leave. Ms. Pifer will testify how she got the long-term substitute position without an interview.

(x)   Ross Prather, Esq.
      772 Maple Street
      Meadville, PA

Mr. Prather is Vice Chairman of the School Board, and, if called, can testify as to the School Board's internal grievance procedure.

(y)   Susan Ford
      3235 State Highway
      Route 173
      Cochranton, PA  16314

If called, Mrs. Ford will testify to the circumstances of her hiring by the School District and whether she had an interview and/or observation before she was hired and the position her spouse held with the School District at the time of her initial hiring.

(z)   Ms. Lisa Beck
      18255 Cree Street
      Meadville, PA  16335

Ms. Beck is a teacher and, if necessary, will testify regarding the circumstances Karen Jamieson served as substitute for her and whether Ms. Jamieson was recommended by her and was subjected to an interview and/or observation by the School District.

(aa)  Jennifer Stefanucci
      12068 Brooks Road
      Meadville, PA  16335

If necessary, Ms. Stefanucci will testify regarding her professional qualifications when hired by the School District.

## DAMAGES

To adequately redress the injuries, loss and damages that Plaintiff has sustained, she seeks to be assigned or placed in a teaching position commensurate with her experience and professional qualifications at a level of seniority that will appropriately recompense and make her whole.

Monetary damages are sought as an award of back wages to the Plaintiff by demonstrating what she would have been paid had she been employed as a long-term substitute or full-time teacher commencing with the most visible discriminatory act on the part of the Defendant in December 20, 2002, as a result of being dismissed summarily from the teaching position she was performing as a replacement for Mrs. Pickens.

Attorney fees and costs associated with the initiation, development, prosecution and litigation of the case will be demonstrated by reference to the time records of counsels.