**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROWENA WAGNER,<br><br>    Plaintiff<br><br>    v.<br><br>CRAWFORD CENTRAL SCHOOL DISTRICT, et al.<br><br>    Defendants | Civil Action No. 04-264 ERIE<br>Judge Sean J. McLaughlin<br><br>ELECTRONICALLY FILED |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE**

Defendants, Crawford Central School District ("District"), Crawford Central School Board ("Board"), Superintendent Michael Dolecki ("Dolecki") and Assistant Superintendent Charles Heller ("Heller") (collectively "District Defendants" or "Defendants"),[1] by and through their attorneys, Knox McLaughlin Gornall & Sennett, P.C., have filed herewith a motion in limine to exclude the following evidence at time of trial:

1. Statistical evidence regarding the racial composition of the District's teaching staff and students;

2. All evidence of hiring decisions made and other actions taken by the District after October 2004;

3. All evidence of full-time elementary hiring decisions made by the District between January 2002 and April 2004;

4. All evidence relating to Plaintiff's retaliation claim (refusal to hire for long-term substitute or regular teaching positions);

5. Testimony from Plaintiff's former professors and student teaching supervisors;

---

[1] The Court dismissed Crawford Central School Board, Superintendent Michael Dolecki and Assistant Superintendent Charles Heller as defendants on October 27, 2006.

6. All evidence relating to Plaintiff's allegation that the District's hiring procedures constitute invalid or unsubstantiated testing; and

7. All evidence relevant to Plaintiff's claims for lost wages or associated fringe benefits she would have earned had she been hired by the District.

## II. ARGUMENT

### A. Plaintiff's Statistical Evidence Should Be Excluded Because it is not Probative of any Material Issue.

In her Pre-Trial Narrative and her Amended Complaint, Plaintiff indicates her intent to rely on two categories of statistical evidence at trial. First, she refers to evidence of the number of minority teachers the District has hired since 1990. In her Pre-Trial Narrative Plaintiff states, "Since the school year 1990-1991, and continuing through the school year 2004-2005, the Defendants have hired thirteen (13) teaching staff from minority groups. . ." (Plaintiff's Pre-Trial Narrative, p. 4). Second, Plaintiff refers to evidence of the number of minority students in the District. "It is reported that as of May 2004 [the District] services more than 4300 students, at least 300 of whom are minorities, but there are few, if any, teachers counselors or administrators of color." (Amended Complaint ¶ 19). None of this evidence is probative; it should be excluded as inadmissible.

In order to be admissible, statistical evidence must be probative of a defendant's discriminatory motive. F.R.E 401; Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527 (3d. Cir. 1992). To satisfy this standard in the context of hiring decisions, the evidence cannot be a mere numerical comparison of the raw hiring numbers. Ezold, 983 F.2d at 527. At a minimum, a plaintiff must present statistical evidence that includes an analysis of the number of qualified, protected class applicants and the number of those individuals hired. For instance, in Ezold, the plaintiff presented

statistical evidence that very few women had been admitted as partners into the defendant law firm. Id. The Court found that this "raw numerical comparison," without a more detailed analysis of the qualifications of the non-admitted women and the total qualified applicant pool, was not probative of the defendant's intent. Id.

Here, Plaintiff's first category of evidence suffers from the same defect as the evidence analyzed in Ezold. Plaintiff has presented nothing more than the total number of "teaching staff" in the District along with the number of "minorities" currently employed as part of that teaching staff. In total, Plaintiff's evidence is that the District has approximately 300 employees in its "teaching staff," of whom approximately 13 are "minorities." Plaintiff has not presented the number of non-Caucasian applicants in the pool for any openings or the qualifications of any applicant for any position. Under well-established law, this type of "raw numerical comparison" is not probative of any material issue and, therefore, should be barred. F.R.E. 401; Ezold, 983 F.2d at 527.

Plaintiff's second category of statistical evidence relating to the number of "minority" students in the District is even less probative. Plaintiff has presented no evidence during discovery, and has disclosed none in her Pre-Trial Narrative, indicating that the racial composition of the District's student body had any impact on the District's hiring decisions in general, or its decision not to hire her. Even if this demographic statistic did play a role in hiring decisions, the statistic itself is not probative of any issue in this case.[2] Because this statistic lacks probative value, it also is inadmissible and should be barred. F.R.E. 401.

---

[2] To the extent Plaintiff is attempting to argue that having a diverse student body requires a school district to employ a similarly diverse teaching staff, this argument is not only unsupported by the law, it runs afoul of the Constitution's restriction on the consideration of race in hiring decisions. Taxman v. Board of Educ. of Tp. of Piscataway, 91 F.3d 1547 1563 (3d Cir. 1996).

3

B. **All Evidence of Hiring Decisions Made and Other Actions Taken by the District After October, 2004 Should be Barred.**

In her Pre-Trial Narrative, Plaintiff indicates that she has applied for various teaching positions from 2002 through 2006. However, her Amended Complaint includes no allegations regarding hiring decisions or actions taken by Defendants after October 8, 2004. Therefore, all evidence regarding hiring decisions made after October 2004 should be barred.

Plaintiff's Amended Complaint did not include any claims regarding hiring decisions made after October 2004. Because these hiring decisions were not part of Plaintiff's Amended Complaint, they have not been litigated through discovery or dispositive motions and are not properly before this Court. The Third Circuit has been clear that a plaintiff's failure to raise a claim in his/her complaint bars him/her from raising that claim at a later point in the case. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 641-42 (3d Cir.1993) (holding that a plaintiff's failure to raise a disparate impact claim in his original complaint, or to amend that complaint to include such a claim, barred the plaintiff from introducing that claim after the close of discovery); see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) (relying on Josey, 996 F.2d at 641-42). Further, Plaintiff never sought to supplement her Amended Complaint to include these additional allegations, as she could have attempted under F.R.C.P. 15(d).

The parties are on the eve of trial presently, discovery has progressed in this matter and has focused on hiring decisions alleged in the Amended Complaint, i.e. those made prior to October 2004. However, in her Pre-Trial Narrative, Plaintiff has clearly indicated her intent to introduce evidence regarding post-October 2004 hiring

4

decisions. Defendants have not had the opportunity to engage in discovery regarding these previously unraised bases for Plaintiff's claim. These allegations are not properly before the Court and allowing Plaintiff to litigate these matters now, without having included them in any previous pleading, would substantially prejudice Defendants.

In <u>Burka v. Aetna Life Ins. Co.</u>, 945 F.Supp. 313, 318-19 (D.D.C.1996), the District Court addressed a plaintiff's request, under Rule 15(d), to supplement her complaint to include allegations that had not been raised previously. The Court held that allowing the plaintiff to raise these new claims, after the close of discovery, the filing of motions for summary judgment and the filing of statements of material fact, would be prejudicial to the defendants and would not be allowed. <u>Id.</u> This holding is consistent with the Third Circuit's treatment of late-raised theories of liability and claims, as described in <u>Josey</u>, 996 F.2d at 641-42.

The instant case is past almost every pre-trial event and is ripe for resolution. Allowing Plaintiff to now expand her claims to include hiring decisions not previously pleaded or subjected to discovery would severely prejudice Defendants. In addition, Plaintiff has not even attempted to supplement her claims under Rule 15(d), but has simply included arguments regarding post-October 2004 hiring decisions in her Pre-Trial Narrative. If Plaintiff is permitted to raise these new claims, Defendants must be permitted an opportunity to engage in discovery regarding them. Such an undertaking will prejudice Defendants further by delaying the ultimate resolution of this matter in an unnecessary and costly manner. For these several reasons, evidence regarding post-October 2004 hiring decisions should be barred.

### C. All Evidence Regarding Full-Time Elementary Hiring Decisions Made by the District Between January 2002 and April 2004 Should be Barred.

Plaintiff filed her PHRC Complaint on February 20, 2003. The Complaint was necessarily limited to actions occurring within the 300 days preceding its filing. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Therefore, the earliest adverse employment action of which Plaintiff could conceivably complain had to have occurred in or after September 2002.

This temporal restriction also is relevant, and fatal to Plaintiff's claim, because the unrebutted evidence establishes that the District did not hire any "external individual" (i.e. a person who lacked bidding rights under the District's collective bargaining agreement with its teachers, such as Plaintiff) for any full-time elementary position between January 2002 and April 2004. See Heller Aff. ¶14, Ex. 3 to Defendants' MSJ Memorandum. Because the District filled all open full-time elementary positions between January 2002 and April 2004 with individuals who possessed bidding rights, and because Plaintiff did not have bidding rights during that period, the District's non-hire of her for any of those positions was not in favor of a "similarly situated" individual outside of any protected class. Practically, because the applicant pool for all open full-time positions during this period included individuals with bidding rights who sought the open positions, Plaintiff was not eligible to be hired, regardless of her qualifications. Therefore, these hiring decisions cannot form the basis of any of Plaintiff's claims and are not relevant to any other aspect of Plaintiff's case. See Sarullo v. United States Postal Service, 352 F.3d 789, 798 (3d Cir. 2003). (identifying necessity of proof that employer continued to seek individuals, outside of protected class, with

6

qualifications similar to plaintiff). All evidence regarding hiring decisions for full-time elementary positions between January 2002 and April 2004 should be barred based on its irrelevancy.

> D. **All Evidence Regarding Plaintiff's Remaining Retaliation Claims Should be Dismissed Based on Plaintiff's Failure to Exhaust Her Administrative Remedies.**

The Court granted Defendants' summary judgment on Plaintiff's retaliation claim regarding her day-to-day substitute assignments. (October 27, 2006 Order of Court). The Court did not, however, dismiss Plaintiff's other retaliation claims regarding her allegations that she was not hired for full-time or long-term substitute positions because of her filing her administrative charge. (Id.) Defendants did not ask the Court to consider this issue in their motion for summary judgment. All evidence regarding these claims should be barred because Plaintiff has failed to exhaust her administrative remedies.

Plaintiff's retaliation claims are all brought under Title VII and the PHRA. (Amended Complaint ¶ 26(h)). It is beyond dispute that claims under Title VII and the PHRA must first be presented to either the PHRC or the EEOC and that a failure to present claims to these administrative bodies results in a failure to exhaust administrative remedies. Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996); Atkinson v. LaFayette College, 460 F.3d 447, 453 (3d Cir. 2006) (holding that plaintiff's Title VII retaliation claims was properly dismissed because it was not included in plaintiff's EEOC complaint or investigation). In her February 2003 dually filed PHRC and EEOC complaint, Plaintiff did not raise any retaliation claims. At no time subsequent to her administrative complaint did Plaintiff file any additional or amended complaints raising retaliation claims. Finally, neither the EEOC nor the PHRC ever included retaliation

claims in their investigations. Therefore, Plaintiff has not presented her retaliation claims to the PHRC or the EEOC and has not exhausted her administrative remedies. Id. Intuitively, Plaintiff could not have alleged retaliation for her filing her February 2003 PHRC/EEOC charge in that charge. A subsequent charge would have been necessary. None was ever filed. Thus, all evidence regarding these claims is irrelevant and should be barred.

### E. Testimony From Plaintiff's Former Professors and Student Teaching Advisors Should be Barred

In her witness list, Plaintiff has identified the following anticipated witnesses to testify regarding Plaintiff's performance as a college student and student teacher:

| | |
|---|---|
| Carole Fisher | Mrs. Fisher was Plaintiff's Cooperating Teacher during her student teacher experience. She will testify as a liability witness about Plaintiff's performance as a student teacher. |
| John Lovett | Professor Lovett will testify about the Plaintiff's performance as a student teacher and the letter of recommendation he wrote for the Plaintiff, especially the "dialect and grammar" concerns. He will testify as a liability witness. He served as Plaintiff's student teaching supervisor. |
| Douglas McCullough | Mr. McCullough served as Plaintiff's Cooperating Teacher during her student teaching experience. He will testify as a liability witness. |

There is no assertion that these individuals had any involvement in, or knowledge of, the District's hiring decisions relevant to Plaintiff's suit. Plaintiff has presented no evidence that these individuals were contacted by the District, provided recommendations to the District or had any other involvement in the District's decision to not hire Plaintiff. Their knowledge regarding Plaintiff is limited to her performance as

8

a student teacher and as a student in college, which is not probative. Beyond her objective performance in college and student teaching, which is documented through her transcripts and degrees, these identified witnesses' opinions regarding Plaintiff's performance are not relevant to any issue before the Court. Therefore, Plaintiff should be barred from introducing any testimony from these witnesses.

### F. All Evidence Regarding Plaintiff's Claim that the District's Hiring Procedure Constitutes an Invalid or Unsubstantiated Testing Should be Barred.

Based on statements made in Plaintiff's Pre-Trial Narrative, Plaintiff appears to intend to assert at trial that the District's hiring practices include an invalid or unsubstantiated test. Evidence regarding this allegation should be barred for at least two reasons.

First, and most striking, this allegation was never included in Plaintiff's Amended Complaint, was not part of any discovery and was not raised in any previous motion or pleading. Plaintiff's attempt to raise this complex and previously unannounced claim in her Pre-Trial Narrative is improper. Josey, 996 F.2d at 641-42. Because this claim was not raised by Plaintiff in her Amended Complaint, it is not properly before the Court. Id. Further, to allow Plaintiff to now pursue this claim would severely prejudice Defendants by preventing them from engaging in any discovery or subjecting the claim to any appropriate pre-trial dispositive motions. Id.

Second, Plaintiff has not presented any fact or evidence to suggest that the District's hiring procedure involved any "test" as that term is used in cases such as Lanning v. SEPTA, 308 F.3d 286 (3d Cir. 2002). In Lanning, the Third Circuit laid out a seminal and detailed analysis that must be applied to tests that result in a disparate impact on different genders. Id. at 289-93. Those cases relying on Lanning, including

9

the Court's opinion in U.S. v. City of Erie, also have addressed objective tests that have a disparate impact on women or members of certain racial classes. 411 F.Supp.2d 524 (W.D. Pa. 2005) (addressing physical agility test); see also U.S. v. State of Delaware, 2004 WL 609331, *1 (D.Del. Mar 22, 2004) (addressing objective reading comprehension test).

This detailed analysis requiring substantial statistical and scientific support for the validity and business necessity of such tests is not applied to non-objective employment tests. In this case, the District did not utilize any objective test to screen applicants. Instead, the District went through the ubiquitous procedure of reviewing applications and interviewing potential applicants. The applicants were then chosen based on the District's conclusions from this review. At no time are the applicants subjected to any standardized or objective test.[3] Therefore, Plaintiff's attempt to interject a Lanning-type analysis into this case is not only untimely, but is unsupported by the facts. Therefore, any evidence related to the validity or substantiated nature of any aspect of the District's hiring process should be barred.

    **G.**    **All Evidence Relevant to Plaintiff's Claims for Lost Wages or Associated Fringe Benefits She Would Have Earned Had She Been Hired by the District Should be Barred.**

In her Amended Complaint and Pre-Trial Narrative, Plaintiff states a claim for lost wages and benefits associated with the District's decisions not to hire her.[4] Defendants have raised Plaintiff's failure to mitigate her alleged wage and benefit loss in

---

[3] If Plaintiff's argument were accepted, it would expand Lanning's detailed requirements to every hiring process that involved any attempt to objectively compare candidates through interview scores or other subjective and non-standardized means – a process used by employers throughout the Country on a daily basis.

[4] Plaintiff waived all other claims for non-equitable relief on January 12, 2006, to avoid a jury trial.

their Answer.  During her deposition, Plaintiff admitted that she failed to attempt to mitigate her alleged wage and benefit loss.  Defendants have provided Plaintiff with extensive evidence showing that Penncrest School District, Franklin Area School District and Conneaut Valley School District hired numerous individuals for regular full-time elementary teaching positions during the period at issue in Plaintiff's complaint.  These positions are comparable in all material respects to the positions Plaintiff sought with Crawford Central School District.  Through her acknowledged failure to mitigate, Plaintiff has waived her ability to recover lost wages or the value of associated fringe benefits.  In essence, Plaintiff's claim thereby has been reduced to one for injunctive relief only.  Therefore, Defendants request that all evidence relevant to Plaintiff's claims for lost wages or associated fringe benefits that she would have earned had she been hired by the District be deemed inadmissible.

### III.    CONCLUSION

For the reasons discussed above, Defendants, Crawford Central School District, Crawford Central School Board, Superintendent Michael Dolecki and Assistant Superintendent Charles Heller, respectfully request that the Court enter an order in limine excluding the following evidence:

1. Statistical evidence regarding the racial composition of the District's teaching staff and students;

2. All evidence of hiring decisions made and other actions taken by the District after October 2004;

3. All evidence of full-time, elementary hiring decisions made by the District between January 2002 and April 2004;

4. All evidence relating to Plaintiff's retaliation claim (refusal to hire for long-term substitute or regular teaching positions);

5. Testimony from Plaintiff's former professors and student teaching supervisors;

6. All evidence relating to Plaintiff's allegation that the District's hiring procedures constitute invalid or unsubstantiated testing; and

7. All evidence relevant to Plaintiff's claims for lost wages or associated fringe benefits she would have earned had she been hired by the District.

        Respectfully submitted,

        KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY: /s/   Mark J. Kuhar
        Mark J. Kuhar, Esq.
        120 West Tenth Street
        Erie, Pennsylvania 16501-1461
        Phone:  (814) 459-2800
        Fax:  (814) 453-4530
        E-mail:  mkuhar@kmgslaw.com
        Bar No.:  PA71185

        Attorneys for Defendant,
        Crawford Central School District, et al.

# 709775