IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROWENA WAGNER,<br><br>    Plaintiff<br><br>    v.<br><br>CRAWFORD CENTRAL SCHOOL DISTRICT, et al.<br><br>    Defendants | )  Civil Action No. 04-264 ERIE<br>)  Judge Sean J. McLaughlin<br>)<br>)<br>)<br>)  ELECTRONICALLY FILED<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT, CRAWFORD CENTRAL SCHOOL DISTRICT'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**PROPOSED FINDINGS OF FACT**

1. Defendant, Crawford Central School District, is a Pennsylvania Public School District.

2. The District employs "regular," a.k.a. "permanent," ("permanent") teachers, long-term substitutes teachers, and day-to-day substitute teachers, among other employees.

3. Different teaching positions require different certificates issued by the Pennsylvania Department of Education.

4. Plaintiff, Rowena Wagner possesses a Pennsylvania Department of Education certificate for elementary teaching only.

5. All subsequent references to teaching positions herein will be to elementary positions, unless otherwise indicated.

6. Substitute teaching assignments ninety (90) days in duration or longer are considered "long-term" by the District and the Crawford Central Education Association, the teachers' and professional employees' union, ("CEA") at the District. Substitute

assignments of fewer than ninety (90) days are considered "day-to-day" substitute assignments by the District and the CEA.

7. The Court dismissed all of Plaintiff's claims regarding day-to-day substitute assignments in its adjudication of the parties' cross motions for summary judgment.

8. The collective bargaining agreement ("CBA") between the District and the Crawford Central Education Association, generally governs the District's employment of all types of its teachers.

9. The CBA specifies the salaries and benefits the District provides to its permanent teachers, long-term substitute teachers and day-to-day substitute teachers.

10. The CBA requires the District to award vacant permanent teaching positions to current permanent employees if any such employees bid on them.

11. An April 7, 1999 stipulated arbitration award between the District and CEA provides long-term substitute teachers bidding rights while they are in their third or subsequent long-term substitute assignments.

12. The CBA does not dictate how the District is to hire applicants who lack bidding rights for positions that have not been bid on by employees with bidding rights. Instead, the District has exercised its discretion to establish hiring processes, procedures and standards, which it has changed over time. While Plaintiff complains of several of those changes, they have been applied consistently to her and the candidates the District has chosen at all times relevant to her action.

13. Beginning in November 2001, Michael Dolecki became the District's Superintendent. Previously, Dolecki had been the District's Acting Superintendent and Assistant Superintendent.

14. Charles Heller has been the District's Assistant Superintendent since February 18, 2002.

15. Since then, Heller has been responsible for, and active in, the District's interviewing of, and recommending candidates for elementary teaching positions to the District's School Board.

16. Since Heller has been primarily responsibility for the hiring process, (February 18, 2002), he, the committees of administrators who have interviewed candidates and the District generally have applied substantially the same processes and standards to Plaintiff and the candidates actually chosen for all positions at issue.

17. Heller's recommendations of candidates to the Board have been based upon the consensus of the interview committees for all of the positions at issue.

18. The School District's Board has the ultimate authority to approve or disapprove recommendations of the interview committees to hire individuals as teachers, which are presented by Heller.

19. At all relevant times, Plaintiff has been an "outside applicant" for the teaching positions she has sought, i.e. Plaintiff has never obtained bidding rights at the District under the CBA or April 7, 1999 stipulated arbitration award.

20. In August 2001, Plaintiff submitted an application to the Crawford Central School District for employment as a day-to-day substitute teacher with the District.

21. Beginning with the 2002-2003 school year, i.e. in approximately August 2002, Plaintiff began applying for permanent teaching positions with the District, as they arose. (Paragraphs 9 and 15 of the Complaint)

22. From August 2002 through May 2004, the District did not hire any permanent teachers who lacked bidding rights, i.e. it did not hire any "outside" applicants.

23. Beginning in August 2001 through the current date, Franklin Area School District hired 44 regular/permanent elementary teachers who did not have bidding rights under that district's collective bargaining agreement with its teachers' union. Conneaut School District hired several regular/permanent elementary teachers and Penncrest School District hired 15 regular/permanent elementary teachers under the same circumstances during the same period.

24. Rowena Wagner has never applied for employment with any of these three school districts.

25. At relevant times, Rowena Wagner had the qualifications necessary to be considered for these positions.

26. The wages and benefits these districts provide to their teachers are comparable to those provided by Crawford Central School District. The positions at these districts were/are superior to the long term substitute position Plaintiff sought in December, 2002, and are substantially equivalent to the permanent employment she sought with Crawford Central School District.

27. Plaintiff and sixteen (16) other candidates were interviewed for the long-term substitute position necessitated by the December 2002 through June 2003 leave of absence of permanent teacher, Joye Pickens, as well as three other long-term substitute assignments.

28.     Plaintiff was deemed by the District's interview committee to be less qualified than all of the candidates recommended by the committee for said long-term assignments.

29.     Therefore, she ceased serving as Pickens' day-to-day substitute in December 2002, at which time the candidate recommended by the interview committee, Amy Szalewicz, began the assignment.

30.     In March of 2004, the District interviewed Plaintiff and approximately 40 other candidates for approximately 8 permanent positions to begin at the start of the 2004-05 school year.

31.     The committee that conducted the interviews rated each candidate separately and then reviewed their ratings as a group.

32.     During the following 5 months, the committee met and decided which of the candidates would be recommended to the Board for each of the approximately 8 vacancies as they arose.

33.     The Plaintiff was deemed by the District's interview committee to be less qualified than all of the candidates recommended by the committee for said permanent positions.

34.     During June or July of 2004, Plaintiff met with Heller and Good and asked if she would ever get a permanent teaching position at Crawford Central School District.

35.     Heller and Good recommended several specific activities Plaintiff could undertake to improve her candidacy.

36.     Thereafter, Plaintiff did not undertake the activities recommended by Heller and Good, or if she did, she did not so advise Heller or Good.

37. Because Plaintiff interviewed so poorly relative to the successful candidates, and virtually all other applicants, during the December 2002 and March 2004 interviews, and because Plaintiff did not follow Heller and Good's suggestions to improve her candidacy, the District has not interviewed Plaintiff since March of 2004.

38. Since the District has not filled long term substitutes or permanent teachers without interviews since Heller assumed his position on February 18, 2002, Plaintiff has not been selected for such positions.

39. All of the candidates who have been selected for long-term substitute and permanent positions since Plaintiff's meeting with Heller and Good were rated as having performed better than Plaintiff did during her 2004 interview.

40. Plaintiff has not identified any other specific positions which she alleges to have been unlawfully denied because of any of her protected characteristics.

41. At no time did former District Board member George Wright make a racist remark to Plaintiff's husband, Bernard Wagner.

42. Wright was not a decision maker in the process that led to recommending candidates other than Plaintiff for hire for any position at issue.

43. At no time did Heller affirm or agree with a racist remark Plaintiff's husband attributed to Wright.

44. In August or September, 2004, then District Principal, Joann Darling, did not deny employment opportunities to Plaintiff because she had previously filed this action or an EEOC/PHRC charge. Rather, she responded to Plaintiff asking her why she had not been hired during the 2004 interview process, which had been coordinated by Heller, by referring Plaintiff to Heller.

**PROPOSED CONCLUSIONS OF LAW**

1.      To the extent any of the foregoing findings of fact may be considered conclusions of law, such findings are incorporated herein.

2.      Plaintiff alleges disparate treatment by Crawford Central School District in its decision to select other candidates for long term substitute and permanent employment, based upon her Asian race and her country of national origin, the Philippines.

3.      A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII.  Unlike the disparate impact theory, proof of the employer's discriminatory motive is critical under this analysis.  Discriminatory intent can either be shown by direct evidence, or through indirect or circumstantial evidence.  See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  If discriminatory intent is shown indirectly, the burden of production can be shifted to the employer once the plaintiff establishes a prima facie case of discrimination.  The employer's burden is to articulate a legitimate, nondiscriminatory reason for the adverse action.  However, the ultimate burden of persuasion on the issue of intent remains with the Title VII plaintiff.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

4.      In the seminal case of McDonnell Douglas, the Supreme Court set forth the by now quite familiar four-prong test for what constitutes a prima facie case:

> (i) that [the complainant] belongs to a racial minority; (ii) that [the complainant] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [the complainant's] qualifications, [the complainant] was rejected; and (iv) that, after his rejection, the position

> remained open and the employer continued to seek
> applicants from persons of complainant's qualifications.

In St. Marys Honor Center v. Hicks, 509 U.S. 502, 510 (1993), the Supreme Court stated that a plaintiff in a Title VII case always bears the burden of proving whether the defendant intentionally discriminated against the plaintiff.

     5.    Under the McDonnell Douglas formula, a plaintiff who proves a prima facie case of discriminatory treatment raises a presumption of intentional discrimination. The defendant then has the burden of production, not persuasion, to rebut the presumption of discrimination by articulating a nondiscriminatory reason for its actions. If the defendant does articulate a nondiscriminatory reason, the plaintiff must prove intentional discrimination by demonstrating that the defendant's proffered reason was a pretext, hiding the real discriminatory motive.

     6.    "[T]he elements of the prima facie case and disbelief of the defendant's proffered reasons are the threshold findings, beyond which the [factfinder] is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066-1067 (3d Cir. 1996).

**BUSINESS JUDGMENT**

     7.    On the relevance of "business judgment," see Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), where the court stated that "[b]arring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." The Billet court noted that "[a] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this

doubt, this Court will not interfere in an otherwise valid management decision." The Billet court cited favorably the First Circuit's decision in Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979), where the court stated that "[w]hile an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination."

8. While Plaintiff has presented some evidence that she and several others not employed in decision making positions at the District consider Plaintiff to have been an effective day-to-day substitute, and are optimistic about her ability to succeed as a permanent teacher, Plaintiff has failed to demonstrate more than a disagreement with the District's judgment.

**PRETEXT**

9. The Third Circuit described the standards for proof of pretext in Atkinson v. Lafayette College, 460 F.3d 447, 454 (3d Cir. 2006):

> We have recognized two ways in which a plaintiff can prove pretext. First, the plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). Second, and alternatively, the plaintiff can provide evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. "[T]he nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller v. Orix Credit Allicance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997) (citation omitted). The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." Id. at 1109. "The question is not whether the employer made the best, or even

a sound, business decision; it is whether the real reason is [discrimination]." Id. (citation omitted).

10. Plaintiff has established a prima facie case with respect to the long-term substitute assignment for Joye Pickens that began in December 2002, and the positions filled by the District in conjunction with its March 2004 interviews for permanent candidates, for which she was interviewed.

11. The District has proffered legitimate non-discriminatory reasons for all of the non-hire decisions complained of by Plaintiff.

12. More specifically, the Defendant has stated in its answer, memorandum in support of its motion for summary judgment and associated affidavits, and through testimony and evidence offered at trial, that all candidates it preferred to Plaintiff were chosen because of one or more of the following reasons, et al:

   a. The chosen candidates' interviews were deemed by the District to be better, and were scored higher, than Plaintiff's interviews.

   b. The chosen candidates had more experience than Plaintiff.

   c. The chosen candidates had successfully completed long-term assignments at the District prior to the hire Plaintiff complains of, which Plaintiff has not done.

   d. The chosen candidates were identified by administrators, through observations and otherwise as stronger candidates than was Plaintiff.

   e. The chosen candidates had unique education and/or training that caused the District to consider them more qualified than Plaintiff.

13. The Court credits the testimony of the District's administrators who testified that each time they selected a candidate other than Plaintiff for each of the positions at issue, they did so based upon their good faith assessment that Plaintiff was less qualified than the successful candidates.

14. Plaintiff has filed to identify any unexplained irregularities in the District's hiring processes that would support a finding of pretext.

15. Therefore, Plaintiff has failed to carry her burden of establishing the necessary pretext. Judgment for Defendants is therefore proper.

**MITIGATION**

16. On the question of mitigation that would reduce an award of back pay, see Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995):

> A successful claimant's duty to mitigate damages is found in Title VII: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1); see Ellis v. Ringgold Sch. Dist., 832 F.2d 27, 29 (3d Cir. 1987). Although the statutory duty to mitigate damages is placed on a Title VII plaintiff, the employer has the burden of proving a failure to mitigate. See Anastasio v. Schering Corp., 838 F.2d 701, 707-08 (3d Cir. 1988). To meet its burden, an employer must demonstrate that 1) substantially equivalent work was available, and 2) the Title VII claimant did not exercise reasonable diligence to obtain the employment.
>
> . . .
>
> The duty of a successful Title VII claimant to mitigate damages is not met by using reasonable diligence to obtain any employment. Rather, the claimant must use reasonable diligence to obtain substantially equivalent employment. See Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982). Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated.

17. The Franklin Area, Penncrest and Conneaut Valley School Districts were employers with whom Plaintiff had an obligation to apply, to satisfy her obligation to mitigate her claimed wage loss. Plaintiff has not done so.

11

18. Plaintiff has not offered a valid justification for her failure to attempt to mitigate her wage loss by applying for employment at these three (3) Districts.

19. The non-wage fringe benefits offered by the above three (3) Districts, and the duties of those teaching positions, are more desirable than, or substantially equivalent to the positions Plaintiff sought at the Defendant District.

20. Therefore, had Plaintiff prevailed in this action, she would have been limited to a recovery of a nominal award only.

Wherefore, Judgment shall be entered against Plaintiff, Rowena Wagner, in favor of Defendant, Crawford Central School District, with costs taxed to the Plaintiff.

Respectfully submitted,
KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY: /s/    Mark J. Kuhar
Mark J. Kuhar, Esq.
120 West Tenth Street
Erie, Pennsylvania 16501-1461
Phone: (814) 459-2800
Fax: (814) 453-4530
E-mail: mkuhar@kmgslaw.com
Bar No.: PA71185

Attorneys for Defendant,
Crawford Central School District