COMMONWEALTH OF PENNSYLVANIA

## GOVERNOR'S OFFICE

## PENNSYLVANIA HUMAN RELATIONS COMMISSION

Rowena Wagner,
    Complainant

       v.

           : PHRC Case No. 200206912
           : EEOC No. 17FA361963

Crawford Central School District,
    Respondent

# FINDINGS OF THE INVESTIGATION

## PARTIES

The Complainant herein is:
    Rowena Wagner,
    166 N. Franklin Street  P.O. Box 781
    Cochranton, PA  16314


The Respondent herein is:
    Crawford Central School District,
    Instructional Support Center 11280 Mercer Pike
    Meadville, PA  16335-9504



DEFENDANT'S
EXHIBIT
EE

CA No 04-264E

# INTRODUCTION

## (Counts 1, 2)

In order to prove unlawful discrimination under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA), an investigation must first establish a prima facie case.

This is achieved when the:

1.    complainant is a member of a protected class; and
2.    complainant applied, bid or otherwise sought the position, housing or commercial property, public accommodation, or educational opportunity; and
3.    a position, housing or commercial property, public accommodation, or educational opportunity was available; and
4.    complainant was as qualified as persons not in complainant's protected class who received the position, housing or commercial property, public accommodation, or educational opportunity; and
5.    complainant was rejected or subjected to techniques to discourage complainant; or
6.    respondent continued to seek applicants, or selected a lesser-qualified candidate.

If a prima facie case is established the respondent must articulate a legitimate non-discriminatory reason for the adverse action.

If the respondent articulates a legitimate non-discriminatory reason for the adverse action, the investigation must show the decision maker's reason is not true but, rather, a pretext for unlawful discrimination.

Unlawful discrimination is proved only when a prima facie case is established AND:

1.    the respondent does not state a legitimate, non-discriminatory reason for the adverse action; OR
2.    the investigation shows the respondent's reason is a pretext for unlawful discrimination.

# INTRODUCTION

## (Counts 3, 4)

In order to prove unlawful discrimination under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA), an investigation must first establish a prima facie case.

This is achieved when the:

1. complainant is a member of a protected class; and
2. complainant was qualified; and
3. complainant was harmed; and
4. others similarly situated not in complainant's protected class were treated more favorably.

If a prima facie case is established, the respondent must articulate a legitimate non-discriminatory reason for the adverse action.

If the respondent articulates a legitimate non-discriminatory reason for the adverse action, the investigation must show the respondent's reason is not true but rather a pretext for unlawful discrimination.

Unlawful discrimination is proved only when a prima facie case is established AND:

1. the respondent does not articulate a legitimate, non-discriminatory reason(s) for the adverse action; OR
2. the investigation shows the respondent's reason is a pretext for unlawful discrimination.

# FINDINGS OF FACT

## (Count 1)

**Hire (refusal to)**                                    **National Origin Discrimination**

1. The Complainant is a member of the protected class.

> 1.1. The Complainant's protected class is national origin, as she was born in the Philippines.

2. The Complainant did apply, bid or otherwise seek the position, housing or commercial property, public accommodation, or educational opportunity.

> 2.1. The Complainant states that she applied for a full-time third grade teaching position at Neason Hill Elementary School that became available on November 12, 2002.

> 2.2. The Complainant further states that she has applied for approximately 20 full-time teaching positions in the past year.

3. A position, housing or commercial property, public accommodation, or educational opportunity was available.

> 3.1. The Respondent posted a position at Neason Hill Elementary School on November 12, 2002.

> 3.2. The Respondent also admits that they have posted a number of elementary positions during the past year.

4. The Complainant contended that he/she was as qualified as persons not in Complainant's protected class who received the position, housing or commercial property, public accommodation, or educational opportunity because ......

> 4.1. The Complainant contends that she was as qualified as persons not in her protected class who received full-time teaching positions because she is a (Pennsylvania) certified teacher with experience and excellent recommendations. Her experience includes two years of substitute teaching.

5. The Complainant was rejected or subjected to techniques to discourage the Complainant.

> 5.1. By way of letter dated December 11, 2002, the Complainant was notified that the third grade position at Neason Hill Elementary no longer existed.

> 5.2. Between February 4, 2002 and July 17, 2002, the Complainant received 18 job vacancy rejection letters.

6. The Respondent did not continue to seek applicants, select a lesser-qualified candidate, or offer housing or services.

    6.1. No third grade teacher was added at Neason Hill Elementary to replace the departing teacher.

7. The decision maker does articulate (a) legitimate, non-discriminatory reason(s).

    7.1. With regard to the November 12, 2002 job posting for a third grade teacher, the Respondent states that the posting was made in error as the school district was under the impression that a departing third grade teacher would need to be replaced.  They further state that after the posting went up, they determined that there were not enough classes graduating in to third grade the following year to warrant replacing the teacher.

    7.2. Consequently, on the very same day that the job posting went up, a second notice went up rescinding the first posting. The Respondent maintains that at this point, the job became non-existent.

    7.3. With respect to the numerous other positions the Complainant has applied for during the past year, the Respondent states that all the vacancies were filled by the internal bidding process, as dictated by the collective bargaining agreement they have with the Crawford County Education Association.  The Complainant is not eligible to participate in the internal bid process because, as a casual substitute, she is not part of the bargaining unit.

    7.4. Although the Complainant was interviewed along with 17 other candidates on December 9, 2002 for a long term substitute teaching position, she was not viewed as one of the better candidates, so she was not selected for any of the available openings.

8. The Respondent does have policies.

    8.1. Article XI of the collective bargaining agreement between the Respondent and the Crawford Central Education Association makes known the  Respondent's policies on Vacancies, Promotions, Transfers and Professional Assignments. Section B.-Vacancies states that "The Board declares its policy of filling vacancies from within its own teaching staff."

    8.2. Article XI, Section B. also contains an internal job posting procedure, and the guideline that qualified applicants are determined by a point system that gives credit for completed years in the district, educational attainment, and completed years teaching in the particular subject area.

9. Evidence does substantiate the decision maker's articulated reason.

    9.1. The Respondent has submitted evidence to show that the November 12 posting for a third grade teaching position was rescinded on the same day.

9.2. The Complainant admits that she is not part of the bargaining unit.

9.3. The Respondent states that the Complainant is only certified in basic elementary education, and that those are the only positions that she is legally eligible to hold. While they admit that they posted a number of elementary education positions over the past year, and that the Complainant applied for most if not all of them, they maintain that all the vacancies were filled by internal bidding and that they did not hire a single new employee. The evidence presented shows that the Complainant was informed that each position was filled internally.

9.4. Asst. Superintendent, C. Heller, visited the Complainant's classroom on November 22, 2002, to observe. His report of the Complainant's teaching skills suggested that improvement was needed some areas.

9.5. In regard to the Complainant having been interviewed on December 9, 2002 for a long term substitute teaching position, the Respondent has provided evidence to show that it was the opinion of six interviewers that the Complainant was not viewed as one of the better candidates to fill an available opening.

10. Respondent did apply its policies for each articulated reason to Complainant.

10.1. In fact, it is the Respondent's collective bargaining agreement and internal policies that justify and enable them to
prevent the Complainant from obtaining a full-time teaching position.

## CONCLUSIONS

### (Count 1)

**Hire (refusal to)**                                   **National Origin Discrimination**

A finding of No Probable Cause is recommended because:

even though a prima facie case was established, the respondent articulated a legitimate, non-discriminatory reason(s) for its action(s) and the investigation did not show the respondent's defense is a pretext for unlawful discrimination.

# FINDINGS OF FACT

## (Count 2)

**Hire (refusal to)**                                                **Race Discrimination**

11. Paragraphs 1 through 10 are incorporated herein by reference as though set forth in full.

12. The Complainant is a member of the protected class.

    12.1. The Complainant's protected class is national origin, as she was born in the Philippines.

13. The Complainant did apply, bid or otherwise seek the position, housing or commercial property, public accommodation, or educational opportunity.

    13.1. The Complainant states that she applied for a full-time third grade teaching position at Neason Hill Elementary School that became available on November 12, 2002.

    13.2. The Complainant further states that she has applied for approximately 20 full-time teaching positions in the past year.

14. A position, housing or commercial property, public accommodation, or educational opportunity was available.

    14.1. The Respondent posted a position at Neason Hill Elementary School on November 12, 2002.

    14.2. The Respondent also admits that they have posted a number of elementary positions during the past year.

15. The Complainant contended that he/she was as qualified as persons not in Complainant's protected class who received the position, housing or commercial property, public accommodation, or educational opportunity because ......

    15.1. The Complainant contends that she was as qualified as persons not in her protected class who received full-time teaching positions because she is a (Pennsylvania) certified teacher with experience and excellent recommendations. Her experience includes two years of substitute teaching.

16. The Complainant was rejected or subjected to techniques to discourage the Complainant.

16.1. By way of letter dated December 11, 2002, the Complainant was notified that the third grade position at Neason Hill Elementary no longer existed.

16.2. Between February 4, 2002 and July 17, 2002, the Complainant received 18 job vacancy rejection letters.

17. The Respondent did not continue to seek applicants, select a lesser-qualified candidate, or offer housing or services.

17.1. No third grade teacher was added at Neason Hill Elementary to replace the departing teacher.

18. The decision maker does articulate (a) legitimate, non-discriminatory reason(s).

18.1. With regard to the November 12, 2002 job posting for a third grade teacher, the Respondent states that the posting was made in error as the school district was under the impression that a departing third grade teacher would need to be replaced. They further state that after the posting went up, they determined that there were not enough classes graduating in to third grade the following year to warrant replacing the teacher.

18.2. Consequently, on the very same day that the job posting went up, a second notice went up rescinding the first posting. The Respondent maintains that at this point, the job became non-existent.

18.3. With respect to the numerous other positions the Complainant has applied for during the past year, the Respondent states that all the vacancies were filled by the internal bidding process, as dictated by the collective bargaining agreement they have with the Crawford County Education Association. The Complainant is not eligible to participate in the internal bid process because, as a casual substitute, she is not part of the bargaining unit.

18.4. Although the Complainant was interviewed along with 17 other candidates on December 9, 2002 for a long term substitute teaching position, she was not viewed as one of the better candidates, so she was not selected for any of the available openings.

19. The Respondent does have policies.

19.1. Article XI of the collective bargaining agreement between the Respondent and the Crawford Central Education Association makes known the Respondent's policies on Vacancies, Promotions, Transfers and Professional Assignments. Section B.-Vacancies states that "The Board declares its policy of filling vacancies from within its own teaching staff."

19.2. Art. XI, Section B. also contains an internal job posting procedure, and the guideline that qualified applicants are determined by a point system that gives credit for completed years in the district, educational attainment, and completed years teaching in the particular subject area.

20. Evidence does substantiate the decision maker's articulated reason.

20.1. The Respondent has submitted evidence to show that the November 12 posting for a third grade teaching position was rescinded on the same day.

20.2. The Complainant admits that she is not part of the bargaining unit.

20.3. The Respondent states that the Complainant is only certified in basic elementary education, and that those are the only positions that she is legally eligible to hold. While they admit that they posted a number of elementary education positions over the past year, and that the Complainant applied for most, if not all of them, they maintain that all the vacancies were filled by internal bidding and that they did not hire a single new employee. The evidence presented shows that the Complainant was informed that each position was filled internally.

20.4. Asst. Superintendent, C. Heller, visited the Complainant's classroom on November 22, 2002, to observe. His report of the Complainant's teaching skills suggested that improvement was needed some areas.

20.5. In regard to the Complainant having been interviewed on December 9, 2002 for a long term substitute teaching position, the Respondent has provided evidence to show that it was the opinion of six interviewers that the Complainant was not viewed as one of the better candidates to fill an available opening.

21. Respondent did apply its policies for each articulated reason to Complainant.

21.1. In fact, it is the Respondent's collective bargaining agreement and internal policies that justify and enable them to
prevent the Complainant from obtaining a full-time teaching position.

## CONCLUSIONS

### (Count 2)

**Hire (refusal to)**                                            **Race Discrimination**


A finding of No Probable Cause is recommended because:

even though a prima facie case was established, the respondent articulated a legitimate, non-discriminatory reason(s) for its action(s) and the investigation did not show the respondent's defense is a pretext for unlawful discrimination.

# FINDINGS OF FACT

## (Count 3)

**Discharge**                                                    **Race Discrimination**

22. Paragraphs 1 through 21 are incorporated herein by reference as though set forth in full.

23. The Complainant is a member of the protected class.

    23.1. The Respondent's protected class is National Origin, as she was born in the Philippines.

24. The Complainant was not harmed.

    24.1. The Complainant has been employed as a substitute teacher to replace absent employees on a casual, as needed basis for the past two years.

    24.2. The Complainant began filling in for teacher J. Pickens on November 7, 2002, after Pickens abruptly went on medical leave and requested to have the Complainant as her substitute. Her assignment ceased on December 20, 2002, when the Respondent informed her that another individual had been selected to substitute for Pickens through the end of the 2002-03 school year.

    24.3. Although the Complainant was not permitted to substitute for J. Pickens on a long term basis, she has remained employed by the Respondent as a substitute teacher, and has been placed on other substitute assignments since the event she complains of. Hence, she has never been "terminated" from the only status she has ever had with the Respondent, i.e., that of substitute teacher.

    24.4. The Complainant acknowledges that she has continued to work for the Respondent as a substitute teacher, without interruption, before and after filing this complaint.

25. The Respondent's practices were identified.

    25.1. The Respondent contends that in cases where a long term substitute teacher is
needed to cover for an employee who is going to be absent for an extended period of time, it is their normal practice to solicit applications and conduct interviews from a pool of candidates in order to determine the best available/most appropriate person to fill in.

25.2. The Respondent states that at times, they do permit teachers who will be on extended leave to recommend particular substitutes to serve as their temporary replacements. However, those teachers do not have the authority to actually determine who their replacement will be.

# CONCLUSIONS

## (Count 3)

**Discharge**                                          **Race Discrimination**

A finding of No Probable Cause is recommended because:

the investigation did not establish a prima facie case.

# FINDINGS OF FACT

## (Count 4)

**Discharge**                                  **National Origin Discrimination**

26. Paragraphs 1 through 25 are incorporated herein by reference as though set forth in full.

27. The Complainant is a member of the protected class.

27.1. The Respondent's protected class is National Origin, as she was born in the Philippines.

28. The Complainant was not harmed.

28.1. The Complainant has been employed as a substitute teacher to replace absent employees on a casual, as needed basis for the past two years.

28.2. The Complainant began filling in for teacher J. Pickens on November 7, 2002, after Pickens abruptly went on medical leave and requested to have the Complainant as her substitute. Her assignment ceased on December 20, 2002, when the Respondent informed her that another individual had been selected to substitute for Pickens through the end of the 2002-03 school year.

28.3. Although the Complainant was not permitted to substitute for J. Pickens on a long term basis, she has remained employed by the Respondent as a substitute teacher, and has been placed on other substitute assignments since the event she complains of. Hence, she has never been "terminated" from the only status she has ever had with the Respondent, i.e., that of substitute teacher.

28.4. The Complainant acknowledges that she has continued to work for the Respondent as a substitute teacher, without interruption, before and after filing this complaint.

29. The Respondent's practices were identified.

29.1. The Respondent contends that in cases where a long term substitute teacher is
needed to cover for an employee who is going to be absent for an extended period of time, it is their normal practice to solicit applications and conduct interviews from a pool of candidates in order to determine the best available/most appropriate person to fill in.

29.2. The Respondent states that at times, they do permit teachers who will be on extended leave to recommend particular substitutes to serve as their temporary replacements. However, those teachers do not have the authority to actually determine who their replacement will be.

# CONCLUSIONS

## (Count 4)

**Discharge**                                **National Origin Discrimination**

A finding of No Probable Cause is recommended because:

the investigation did not establish a prima facie case.